**ORIGINAL**

NAME michael w. wilkerson

PRISON NUMBER T-90727

CURRENT ADDRESS OR PLACE OF CONFINEMENT P.B.S.P - Pelican Bay State prison

CITY, STATE, ZIP CODE P.O. BOX-7500 #B-7 # 213
Crescent City C.A. 95531-7500

**FILED**

JUL 10 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

michael w. wilkerson
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

Robert Horel
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

_____

The Attorney General of the State of
California, Additional Respondent.

Civil No 08CV0857 WQH (PCL)
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

# FIRST AMENDED
## PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   San Diego County Superior Court 220 W Broadway

2. Date of judgment of conviction: _____

3. Trial court case number of the judgment of conviction being challenged: _____
   D 042017 (and) Habeas Corpus done by appellant

4. Length of sentence: 57 years _____

CIV 68 (Rev. Jan. 2006)

cv

5. Sentence start date and projected release date: _____

6. Offense(s) for which you were convicted or pleaded guilty (all counts): _Sex with a_ _minor and drug convictions by using a_ _minor to sell drugs and assault on a spouse_

7. What was your plea? (CHECK ONE)
   (a) Not guilty      ☑
   (b) Guilty          ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury        ☑
   (b) Judge only  ☐

9. Did you testify at the trial?
   ☐ Yes  ☑ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☑ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: _I appeal by writing Habeas Corpus [s]_
    (b) Date of result (if known): _____
    (c) Case number and citation (if known): _____
    (d) Names of Judges participating in case (if known) _I believe a Judge_ _name Huff_
    (e) Grounds raised on direct appeal: _a memory deficit support-_ _ed by a Social Security Administration print_ _out please see 'Exhibit-A'_

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: _denied_
    (b) Date of result (if known): _? that portion of Legal material Lost by CDCR_
    (c) Case number and citation (if known): _writ of Habeas Corpus_ _case number not known more than one_
    (d) Grounds raised: _Memory def._

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a)  Result: did not make deadline. due to legal material taken

   (b)  Date of result (if known): _____

   (c)  Case number and citation (if known): _____

        _____

   (d)  Grounds raised: _____

        _____

        _____

        _____

### COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☑ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

   (a)  **California Superior Court** Case Number (if known): I only wrote to appeal

   (b)  Nature of proceeding: Habeas Corpus. appealing I had a memory deficit document with Social Security department

   (c)  Grounds raised: that (one) alledge victum refused to take rape test.(two) the other was returned non conclusive (three) planiff was document disabled at the time of event, with memory problem not in evidence

   (d)  Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☑ No

   (e)  Result: or at Less it was insignificant

   (f)  Date of result (if known): ?

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☑ Yes ☐ No

CIV 68 (Rev. Jan. 2006)

-3-

cv

**17.** If your answer to #16 was "Yes," give the following information:

   (a) **California Court of Appeal** Case Number (if known): appeal numer ?

   (b) Nature of proceeding: Habeas Corpus

   (c) Names of Judges participating in case (if known) _____

   (d) Grounds raised: _____

   (e) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes ☐ No  I dont believe so

   (f) Result: _____

   (g) Date of result (if known): ?

**18.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☑ Yes ☐ No

**19.** If your answer to #18 was "Yes," give the following information:

   (a) **California Supreme Court** Case Number (if known): _____

   (b) Nature of proceeding: Court ansrewed in response to Habeas Corpus "I had supplied no evidene

   (c) Grounds raised: _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes ☐ No  I dont believe so not sure

   (e) Result: _____

   (f) Date of result (if known): _____

CIV 68 (Rev. Jan. 2006)  -4-  cv

20. If you did **not** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

Yes I did. I raised that I was suffering from a memory deficit and recieved Supplemental Security (SSI) but could not produce the record at the time. They said I had no proof

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☑ Yes ☐ No    (IF "YES" SKIP TO #22)
   (a) If no, in what federal court was the prior action filed? _____
   (i) What was the prior case number? _____
   (ii) Was the prior action (CHECK ONE):
      ☐ Denied on the merits?
      ☐ Dismissed for procedural reasons?
   (iii) Date of decision: _____
   (b) Were any of the issues in this current petition also raised in the prior federal petition?
      ☐ Yes ☐ No
   (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
      ☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present **all** other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Arguments at appellant request "not" pre-sented, by Counsels unwillingness to present, Functioned to abridge defendants right to Counsel

Supporting FACTS: On page 1783 Exhibit "J" Mr Bennett says he gave defendant a copy of the latest psychiatric report, and that the defendant did "not" want to Free it up to the court. Why would I, when it was untrue. Exhibit "A" is a Supplemental Security Income "SSI" for the disabled signed by Service Representative "Karen Kelly" of "SSI" Administration dated April 1, 2008. It states no one Knows "who" or what office recieved my application for that number. It also does not Know the exact day that number was originally issued. Since the state does not seem to Know why "no ones Knows" Plaintive must be the one to offer. The "eye witness" of why this is, "at a date plaintiff can give" which gives "a change" in the "applicable facts" offered as evidence in this conviction. The SSI

Did you raise GROUND ONE in the California Supreme Court?

☑ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): habeas petition

(2) Case number or citation: ___?___

(3) Result (attach a copy of the court's opinion or order if available): denied

**(b)** GROUND TWO: The Defendent is entitled to a fair trial and an intelligent defense in light of all relevant and reasonabley accessable information "it was not given"

**Supporting FACTS:** When relevant evidence is unimpeach able concerning the charged offense because of prosecutor failure to disclosure, this violales the defendants right to fundamentally fair trial Based on the proposition that the defendant is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessable imform-ation. The fact that the trial Judge Ms Has told plaintiff "Today did not come as a surprize to you" by any strech of anyones imagination" I don't believe for one second that suddenly having these revelations, and the bottom line is I think you would manipulate this case to stall your sentencing until west January if you thought that would be effective" That render Gudge Hayse bias and prejudice as a matter of Law. in United States v. Bourque 541 F.2d 290 (1 Cir. 1976) That how Exhibit was not viewed, to show the State plaintiff suffered from post traumatic syndrome, with out investigation it also contrive a convic tion through pretense of a trial, which in truth

**Did you raise GROUND TWO in the California Supreme Court?**

☐ Yes ☒ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

**(c)  GROUND THREE:** _____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

**(d)    GROUND FOUR:** _____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

If yes, answer the following:

(1)    Nature of proceeding (i.e., petition for review, habeas petition): _____

(2)    Case number or citation: _____

(3)    Result (attach a copy of the court's opinion or order if available): _____

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes   ☐ No

24. If your answer to #23 is "Yes," give the following information:

    (a)  Name of Court: _____

    (b)  Case Number: _____

    (c)  Date action filed: _____

    (d)  Nature of proceeding: _____
_____

    (e)  Name(s) of judges (if known): _____

    (f)  Grounds raised: _____
_____
_____
_____
_____

    (g)  Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes   ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing: _____
_____

    (b)  At arraignment and plea: _____
_____

    (c)  At trial: _____
_____

    (d)  At sentencing: _____
_____

    (e)  On appeal: _____

    (f)  In any post-conviction proceeding: _____
_____

    (g)  On appeal from any adverse ruling in a post-conviction proceeding: _____
_____

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes ☐ No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☐ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b) Give date and length of the future sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes ☐ No

**28.** Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

June 30, 2008.

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

7-3-08

(DATE)

SIGNATURE OF PETITIONER

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  MICHAEL WILKERSON,                         Civil No.    08cv0857-WQH (PCL)

12                              Petitioner,
                                              **ORDER DISMISSING CASE**
13                  v.                         **WITHOUT PREJUDICE**

14  DONOVAN STATE PRISON, et al.,

15                             Respondents.

16

17          Petitioner, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas

18  Corpus pursuant to 28 U.S.C. § 2254, but has failed to pay the $5.00 filing fee and has failed to

19  move to proceed in forma pauperis.   In addition, Petitioner has failed to name a proper

20  Respondent and has failed to submit the Petition on a proper form as required by the Local Rules

21  of the Southern District of California.

22              **FAILURE TO SATISFY FILING FEE REQUIREMENT**

23          Because this Court cannot proceed until Petitioner has either paid the $5.00 filing fee or

24  qualified to proceed in forma pauperis, the Court **DISMISSES** the case without prejudice. <u>See</u>

25  Rule 3(a), 28 U.S.C. foll. § 2254. If Petitioner wishes to proceed with this case, he must submit,

26  **no later than <u>July 14, 2008,</u>** a copy of this Order with the $5.00 fee or with adequate proof of

27  his inability to pay the fee. The Clerk of Court shall send a blank Southern District of California

28  In Forma Pauperis Application to Petitioner along with a copy of this Order.

## FAILURE TO NAME PROPER RESPONDENT

In addition, review of the Petition reveals that Petitioner has failed to name a proper respondent. On federal habeas, a state prisoner must name the state officer having custody of him as the respondent. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (citing Rule 2(a), 28 U.S.C. foll. § 2254). "Typically, that person is the warden of the facility in which the petitioner is incarcerated." Id. Federal courts lack personal jurisdiction when a habeas petition fails to name a proper respondent. See id.

The warden is the typical respondent. However, "the rules following section 2254 do not specify the warden." Id. "[T]he 'state officer having custody' may be 'either the warden of the institution in which the petitioner is incarcerated . . . or the chief officer in charge of state penal institutions.'" Id. (quoting Rule 2(a), 28 U.S.C. foll. § 2254 advisory committee's note). If "a petitioner is in custody due to the state action he is challenging, '[t]he named respondent shall be the state officer who has official custody of the petitioner (for example, the warden of the prison).'" Id. (quoting Rule 2, 28 U.S.C. foll. § 2254 advisory committee's note).

Here, Petitioner has incorrectly named "Donovan State Prison and San Diego Sheriff Department" as Respondents. In order for this Court to entertain the Petition filed in this action, Petitioner must name the warden in charge of the state correctional facility in which Petitioner is presently confined or the Director of the California Department of Corrections and Rehabilitation. Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992) (per curiam).

## FAILURE TO USE PROPER FORM

Additionally, a Petition for Writ of Habeas Corpus must be submitted in accordance with the Local Rules of the United States District Court for the Southern District of California. See Rule 2(d), 28 U.S.C. foll. § 2254. In order to comply with the Local Rules, the petition must be submitted upon a court-approved form and in accordance with the instructions approved by the Court. Id.; S. D. CAL. CIVLR HC.2(b). Presently, Petitioner has submitted an application for writ of habeas corpus on a non-approved form.

/ / /

/ / /

## CONCLUSION AND ORDER

Accordingly, the Court **DISMISSES** the Petition without prejudice due to Petitioner's failure to satisfy the filing fee requirement, failure to name a proper respondent and failure to use a court-approved form. To have this case reopened, Petitioner must satisfy the filing fee requirement <u>and</u> file a First Amended Petition no later than July 14, 2008 in conformance with this Order. The Clerk of Court shall send Petitioner a blank petition form and a blank in forma pauperis application along with a copy of this Order.

**IT IS SO ORDERED.**

DATED: May 16, 2008

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

-3-

08cv0857

MC–275

Name **Michael Wilkerson**

Address **PBSP, PO Box 7500**
**Crescent City, Calif**

COPY

CDC or ID Number **T69072 7**

**Southern District Court**

_____
(Court)

PETITION FOR WRIT OF HABEAS CORPUS

**Michael Wilkerson**
Petitioner
                    vs.

**Donavan State Prison and**
Respondent **San Diego Sheriff department**

No. _____
(To be supplied by the Clerk of the Court)

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

MC–275

This petition concerns:

- [✓] A conviction
- [ ] Parole
- [ ] A sentence
- [ ] Credits
- [✓] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other (specify): _____

1. Your name: Michael Wilkerson

2. Where are you incarcerated? Pelican Bay State Prison

3. Why are you in custody? [✓] Criminal Conviction   [✓] Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   court has commited me insane some way by using another court hearing for a different offense paid by doctor

   b. Penal or other code sections: The State lost all my legal material

   c. Name and location of sentencing or committing court: San Diego California and I think Fresno County is the unlaw civil commit

   d. Case number: I don't get to see any legal litigation on it

   e. Date convicted or committed: sentence commitment and civil lost by prise

   f. Date sentenced: prison lost the litigation even transcript

   g. Length of sentence: 52 years

   h. When do you expect to be released? through litigation soon

   i. Were you represented by counsel in the trial court? [✓] Yes. [ ] No. If yes, state the attorney's name and address:

   John Feilding San Diego California

4. What was the LAST plea you entered? (check one)

   [✓] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [✓] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF                                                                    MC-275

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

① That the merits of the factual dispute were not resoled in the State court hearing, and that the application did not receive a full, fair and adequate hearing in the state court proceeding, that the applicant was otherwise dinied due process of law in the State court proceeding.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Plaintiff filed a petition to contest, being made insane without telling plaintiff why and nor is plaintiff able to contest the contention without seeing "in prison" or the "social security office" what are they diagnosising "without plaintiff conversing" with them! Gary D. Hoff of Fresno, "actaully" said that, if plaintiff could not show, how it effects plaintiff, in a adverse way "in prison", it did not matter, irrespective. It's fraud! It's being done because, I've been shot stabbed, and tortured in the worst way since my arrest and incarserated in jail and prison though not at this prison "so far!" I have enclude a Letter from the California Innocence project exhibit and human judgement is plaintiffs prima facie cas

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

79 F.3d, at 832, n120   and the Courts' human judgement as to meet the State's prima facie case for relief in a district court. And plaintiff human judgement as a prima facie case for relief

7. Ground 2 or Ground ___2___ *(if applicable):*

② That the fact finding procedure employed by the State Court was not adequate to afford a "full" and fair hearing and that material facts were not adequately developed at the State court hearing.

a. Supporting facts:

While at the San Diego Jail plaintiff had illegal operations on plaintiff to cover up a wound illegally recieved that was covered up! and a plastic surgeon can access plaintiffs body and tell if this is true plaintiff asks that this be done in a evidentiary hearing. Plaintiff asking this court accept jurisdiction over this case Because it has been covered up, more than one prison Plaintiff ask this court require the respondents to answer the allegations in this Petition and hold such evidentary hearing as this court may deem necessary or appropriate and issue an "order" that this Court will grant a writ of Habeas Corpus unless the State holds a new trial within a specified time. Because no way did plaintiff recieve a fare and impartail trial with in the condition and more! It is also alledge plaintiff will not get a fair hearing if plaintiff rens to be heard in San Diego County. and people may not want to bring evidence to that county! you can hold the hearing Here if you want.

b. Supporting cases, rules, or other authority:

United States V. Browner, 471 F 2d 969 (1972) that rule proved that Durham V. United States, 214 F. 2d 862 1954 to be too vague and led to too much power being given psychiatric experts As a result in United State V. Browner, 471 F2d 969 (1972) the Durham experiment was abandoned as plaintiff asks the court to do with doctors options in this case

MC–275

8. Did you appeal from the conviction, sentence, or commitment?  ☑ Yes.  ☐ No.  If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

     San Diego California

   b.  Result  denied        c.  Date of decision:  ?

   d.  Case number or citation of opinion, if known:

   e.  Issues raised:  (1)

             (2)

             (3)

   f.  Were you represented by counsel on appeal?  ☑ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

     Ms Rebecca P. Jones

9. Did you seek review in the California Supreme Court?  ☑ Yes  ☐ No.  If yes, give the following information:

   a.  Result  denied        b.  Date of decision:  ?

   c.  Case number or citation of opinion, if known:  ?

   d.  Issues raised:  (1)  ?

             (2)  ?

             (3)  ?

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   she did not raise that I had a memory problem from trauma, because she did not check with the Social Security Office

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

   I did not seek administrative remedies because this time the prison has went to far... and have violated plaintiffs First Amendment protection with "non speech" elements that are combined puts plaintiffs life in danger. and plaintiff beleaves that a sufficient important government interest in regulating this nonspeech element can justify merits to not seek any farther remedies with that or those prisons.

   b.  Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
      *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☑ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

MC–275

13. a. (1) Name of court: I wrote writs of Habeas Corpus all the way up.

(2) Nature of proceeding (for example, "habeas corpus petition"): Complain of prior memory probl

(3) Issues raised: (a) memory problem I got paid for

(b) and murders that where hid

(4) Result (Attach order or explain why unavailable): Mule Creek and Corcoran withheld litigatior

(5) Date of decision: ? See Exhibit

b. (1) Name of court: San Diego California and Fresno California

(2) Nature of proceeding: criminal in San Diego and I think Fresno illegal dic Civi

(3) Issues raised: (a)

(b)

(4) Result (Attach order or explain why unavailable):

(5) Date of decision:

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 4/29/08

▶ Michael Wilkerson
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 2007]

PETITION FOR WRIT OF HABEAS CORPUS

Page 6 of 6

It is plan to see in each of these murders the murderer was always set free by psychiatric help a doctor assessing the insanity defense... plaintiff in this case seek exactly the opposite!

Because psychi doctors are
1 straining, twisting and deleting information, plaintiff
2 has either wrote on paper and gave them... or conveyed
3 to them... plaintiff decisions of what he says is not
4 being regarded... and so the psychi doctors are being
5 contary to court Law. The court noted, for exsample
that the decision maker is for all Legal purposes the
the decision of the patient himself "79 F.3d at 832, n120";
whenever I talk to a California
department of Correction and re hap psychiatric Doc
it becomes a much broader License... [to embellish]
what I'm saying here and now! It has become extremily
difficult to have even a rudimentary [watch] with what
they are trying to say! Let alone contain what they are
saying about what I write to them! So I refuse to speak
10 to them at all... because they all contenue to Lie, to
11 support the prior doctor story! and the first two
12 Doctors deleted actoul writing of children being killed
13 trying to run and get help when these incidents took
14 place... what reason could it be? other than CDCR
15 Doctors have a "vested interest" in what plaintiff is
16 seeking to perfer. they are hiding the cuitten details
17 because they own money interests in some of the places
18 places plaintiff wrote about. just like other CDCR work

Page ①

California role does not allow it to prohibit words or some
1 expression, and niether expressive conduct critical of its
2
3 misdiagnosing.
                        Psychiatric criteria right now excludes
4
5 from diagnosis with depressive disorder, those who
6 within the "Last two months suffered the Loss" of
7 someone they Love. But disregard the many people
8 who have "been in my Life" that died "trying to help
9 me". I don't care, if I Know them or not! it's "just as"
10 a Love one died! Because they saught to help! and
11 it's not open for discussion... to a CDCR doctor, any
12 more"... I will talk to the court... and court appointed
13 doctors.
14
                        "I may feel grief after remembering"
15 any American citizen, that has help me... especially
16 those who have "given their Life." Some had been treated
17 "so bad" they would had died... than Live! They were
18 not gay!... I would like to end this and be called
19 to court in a evidentry hearing to present my
20 evidence. Please view every exhibit so you may get
21 a idea of my situation. and be aware it's "no one way"
22 these events have occurred! even though I might
23 describe only "certain events". I have "some how" Lost
24 a document. but I can have different people! fax it
25 to your court. Please enclude all the, Letters I wrote
26 to you "with this writ" and I believe, with my teeth grinde
27 down to enemel and bullet wounds, I've made my cas
28 to start... a court hearing.

                        Page ②

Plaintiffs Lawyer failed to explore, investigate and then put on in trial...the record of plaintiffs "Social security income record...therefore failed to seek a motion to compel the court for discovery of the social security mental health record.

It's farther offed that had plaintiff Lawyer investigated...the documents, retrieved and substain from the Social Security department...would had open a whole new area for the defence.... See plaintiff had told his attorney that he had been hypnotized and beat and drugged at the social

2 security department, plaintiff even wrote these

3 allegations down in notes...and even tried to get

4 the judge to read..to try and get a comprehensive

5 grasp of appellants version and facts of his case

6 no one understood! Plaintiff has since contacted

17 the social security...see Exhibit [A] that show

18 that no one knows "who" or "where" and "when"

19 plaintiff got that social security card...but

20 "plaintiff". That is to escape "a law suit" now you

21 see why I must have a immunity agreement

22 to all witnesses...nothing they can have done can

23 be brought up against them for "truthful testimoni"

24 See at that office. some one was killed and com-

25 mandedred by the killer. the body was taken

26 out side and made to look like some one else

27 did the killing. This brings into question a Evidention

28 Hearing...where plaintiff will be required to be presen

1 It's plain to see that when Steve Wilkerson also
2 known by "AKA Michael Wilkerson" actions are
3 "Symbolic Speech" in this case. He has managed
4 to get out of murder after murder. By attacking
5 me. and using hypnosis along with drugs and
6 alcohol on me "against my will". and the "ramming
7 and "battering" the top of "head" into a wall.. while
8 attacking me. I would like to put on the record
9 that being raped was my worst fear I know
10 since I was a child.. until my present age!
11 I had such a fear... I would Lose exsistance about
12 my surroundings... if they told me "I better smile"
13 are they would Kill all my family.. "I could only
14 hear them".. and have no sense of sight! I would
15 feel so unsafe!   This was done to me when I
16 "could not run" after they Kill someone! I have
17 been electricfied with electric currents, with tazers and
18 burnts.. and had illegal operations to cover bullet
19 wounds! and my body is "spreaded with all sort of
20 wounds" that they tried to cover up! which add to
21 "Human right" violations, not just eighth admend
22 -ments violations, but a "human right" indifference
23 I actaully Lost my memory...from suffering the
24 Likes...if it wasn't for certain officers, I would have
25 been hurt, even more... every since certain murde
26 in and out of prison... I have been tortured, by
27 gourds and people they use! I can prove it with
28 the dead bodys and something I can give to you

through people who can bring it to the court and I can show you how to track the people down right from your court on computer. I'm not trained in Law...and I get very uncomfortable to write about these issues. I ask only for a immunity agreement for the people I call and their family...so there is no motive to Lie.

It must also be mentioned that California Department of Corrections and Rehab has Lost my Legal paper material over and over please see Exhibit "C" then the actions I've started in writs and Certiorari "they can start"...themselfs with falsified court actions...with what they call peace makers! but are really manipulators and con artists.

I ask this court to consider plaintiffs present and future potential hard ship may be considered...by the department of Correction here in California and Rehab. Losing plaintiff material Legal Evidence...and give plaintiff what ever adjustment and safe gaurds it might deem reasonable in these situations of "compelling" examples of unfairness.

I also ask this court if the allegations of being shot...in a Sheriffs car "were the Sheriff" died and had his body moved...and set up another crime scene "is deemed true" in a Level of certainty demonstrated by sufficient evidence...to support plaintiff had been shot while going to trial...plaintiff case set aside

1 | HC07CRWR678603-GDH-cm

FILED

SEP 1 9 2007

FRESNO SUPERIOR COURT

By_____

DEPT. 71 - DEPUTY

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

9                          CENTRAL DIVISION

11 | In re                          ) No. 07CRWR678603      Dept. 71
                                    )
12 | MICHAEL WILKERSON,             )
                                    )        ORDER
13 |          Petitioner            )
                                    )
14 | On Habeas Corpus.              )
                                    )
   |_____)

16          Having considered the petition for habeas corpus dated

17 | August 23, 2007, the court finds that petitioner has failed to

18 | state a prima facie case for relief.

19          The petition appears to be virtually identical to a

20 | previous petition filed by petitioner on August 14, 2007.  (See

21 | Fresno County case no. 07 CRWR678589.)   The court has already

22 | denied the previous petition.

23          "It has long been the rule that absent a change in the

24 | applicable law or the facts, the court will not consider repeated

25 | applications for habeas corpus presenting claims previously

26 | rejected. [Citations omitted.]   The court has also refused to

27 | consider newly presented grounds for relief which were known to

28 | the petitioner at the time of a prior collateral attack on the

COUNTY OF FRESNO
Fresno, CA

1   judgment. [Citations.]    The rule was stated clearly in *In re*
2   *Connor, supra,* 16 Cal.2d 701, 705: 'In this state a defendant is
3   not permitted to try out his contentions piecemeal by successive
4   proceedings attacking the validity of the judgment against him.'"
5   (*In re Clark* (1993) 5 Cal.4th 750, 767-768.)    Therefore, because
6   the new petition is merely duplicative of the original petition
7   and adds no new facts or law, it is without merit.

8          Consequently, the petition is denied.

9          DATED this $\underline{19}$ day of September, 2007.

11                              **GARY D. HOFF**
                              _____
12                              GARY D. HOFF
                              Judge of the Superior Court



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964-0001
Telephone (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Rachel Farbiarz
Penny Godbold
Megan Hagler
Alison Hardy
Vibeke Martin
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

1/7/2008

Michael Wilkerson, T-90727
MCSP
PO Box 409000
Ione, CA 95640

Dear Mr. Wilkerson:

    I write in response to your letter received 12/26. You indicate that your last blood pressure check read 106/160. You also inform us that you do not trust the health care staff currently providing you with medical care and so you will not take medications. I am sorry to hear of your situation, but with regards to requesting new primary care providers, our office is unable to dictate how the institution distributes its staff and which medical care professionals are hired.

    If you are concerned about your blood pressure, please be sure to cooperate with medical care staff when they administer blood pressure checks, and keep a brief log of the dates and readings. If you have been prescribed blood pressure medications, not taking these medications may affect your blood pressure. If your readings continue to seem high to you, please forward your brief log to our office for review. Please also file a 602 requesting treatment if a yard doctor diagnoses you with high blood pressure. I am enclosing some basic information about the Plata class action case, which I hope helps to clarify the circumstances under which our office can and cannot act on behalf of prisoners with difficulty receiving medical treatment.

    I am forwarding your letter to the attorneys in our office who work on the Coleman case for additional review. They will determine whether they can offer you assistance with regards to your mental health concerns.

    Take care.

Sincerely,

Pui Yee Yu
Litigation Assistant Under Zoe Schonfeld

Enclosures: PLA Plata 1;

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Exhibit C



# CALIFORNIA WESTERN
## S C H O O L   O F   L A W

## CALIFORNIA INNOCENCE PROJECT

April 2, 2008

Michael Wilkerson T-90727
Housing B-7-232
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA
95551

Mr. Michael Wilkerson:

According to our records, your documents were sent back on March 4, 2008. Unfortunately, it looks as though they were sent to your prior address at Mule State Prison. We will send them to your current address when they are returned to us. Thank you for your patience.

Sincerely,
California Innocence Project

S157322

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re MICHAEL WILKERSON on Habeas Corpus

---

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Clark* (1993) 5 Cal.4th 750.)

SUPREME COURT
FILED

APR – 9 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
GEORGE
Chief Justice



State of California
## Commission on Judicial Performance
455 Golden Gate Avenue, Suite 14400
San Francisco, CA  94102-3660
(415) 557-1200
FAX (415) 557-1266

June 4, 2003

Michael Wilkerson, #T90727
Fac 4-17-250
480 Alta Road
San Diego, CA  92179

Dear Mr. Wilkerson:

Your further correspondence concerning a California judge has been considered in order to determine whether there is any basis for action by this commission.

It has been concluded that the contents of the letter do not provide grounds for proceeding further.  No facts of judicial misconduct within the jurisdiction of this commission have been set forth.  As previously advised, this commission cannot reverse or relitigate judicial decisions.

Very truly yours,

Donna M. Vargas
Staff Counsel

DV:ej/l0604wil

*Please contact this commission and get all letters and files sent to them... Sent to Mr Bennet 619-23?-50 71 as well*

Confidential under California Constitution,
Article VI, Section 18, and Commission Rule 102

IVINSON MEMORIAL HOSPITAL
LARAMIE, WYOMING
**EMERGENCY DEPARTMENT PHYSICIAN REPORT**

**Patient:** WILDERSON, MICHAEL
**Hosp #:** 581409
**Date:** 11/11/00
**DOB:** 09/27/55

**PHYSICIAN:** None.

**CHIEF COMPLAINT:** "Back and knee injury."

**HISTORY OF PRESENT ILLNESS:** Mr. Wilderson is a 45-year-old black male who injured himself on the steps of a Greyhound bus at approximately 9:15 a.m. this morning. He states he slipped and fell backwards landing on his back and also somehow injuring his left knee underneath him. He did not have immediate pain and took a brief nap after the injury. He woke up with severe back pain as well as knee pain. He presents after an episode of diaphoresis related to this pain. The patient denies increased pain with cough or sneeze but any attempts at movement cause quite severe back pain.

**PAST MEDICAL HISTORY:** The patient is currently under treatment for Helicobacter gastritis and peptic ulcer disease. He has had an extensive facial laceration in the past and denies other operations or illnesses.
**CURRENT MEDICATIONS:** Cimetidine, amoxicillin, Biaxin, and Prilosec.
**ALLERGIES:** None.
**FAMILY HISTORY:** Positive for diabetes and heart disease.
**SOCIAL HISTORY:** The patient works remodeling homes. He smokes one pack of cigarettes daily. He is traveling with his significant other.

**REVIEW OF SYSTEMS:**
**CONSTITUTIONAL:** No fever or chills.
**HEENT:** Eyes: The patient denies visual disturbance. **ENT:** The patient denies eye, ear, nose, or throat complaints.
**RESPIRATORY:** The patient denies cough, cold, or dyspnea.
**CARDIAC:** The patient denies chest pain or palpitations.
**GI:** The patient is currently under treatment for H. pylori gastritis. He had one episode of diarrhea after the fall. He denies vomiting or abdominal pain.
**GU:** No dysuria or frequency.
**GENERAL:** The patient denies other complaints.

**PHYSICAL EXAMINATION:**
**VITAL SIGNS:** Temperature 98.3°, blood pressure 163/94, and pulse 110.
**GENERAL:** Very husky, well-muscled, black male appearing his stated age. Obviously quite uncomfortable with movement with back and knee pain.
**HEENT:** Throat: No erythema, edema, or exudate.
**NECK:** Supple.
**LUNGS:** Clear to percussion and auscultation.
**HEART:** Regular rate and rhythm without ectopy.
**ABDOMEN:** Soft and nontender. No masses or megaly. Bowel sounds are active.
**BACK:** Acute left-sided thoracolumbar pain and spasm. Limitation of truncal range of motion.
**EXTREMITIES:** Acute tenderness of left knee particularly along the medial

3RD DISTRICT COURT - SALT LAKE COURT
SALT LAKE COUNTY, STATE OF UTAH

| | | |
|---|---|---|
| MICHAEL W WILKERSON, | : | NOTICE OF |
| Plaintiff, | : | ORDER TO SHOW CAUSE |
| | : | |
| vs. | : | Case No: 010910089 PI |
| | : | |
| GREYHOUND BUS LINES INC, | : | Judge:   ANTHONY B. QUINN |
| Defendant. | : | Date:    September 5,2002 |

ORDER TO SHOW CAUSE is scheduled.
    Date: 10/07/2002
    Time: 01:30 p.m.
    Location: Third Floor - W33
            THIRD DISTRICT COURT
            450 SOUTH STATE
            SLC, UT  84114-1860
 Before Judge: ANTHONY B. QUINN

On its own motion, the Court orders the parties to appear on said
date and time and show cause why this case should not be dismissed
for failure to prosecute.  By failing to appear, the Court will
enter an order of dismissal without further notice.

Dated this ___9___ day of ___Sept___, 20_02_ .

_____
District Court Deputy Clerk

Since plaintiff models were forced into and there was a home invasion... plaintiff asks the court to view "that being held by gun point, while Lakiah Olden proformed oral sex. That was "not" a "consenteul" part, on plaintiff behalf, or given his approval... the act was a act to black mail the manager... by saying Lakiah was raped! The motel manager, bulk and refused to pay!... he was did the same way. Also plaintiff was given some sort of shot..... and I still don't know every thing that happen to me. But I do know that the motel clerk was white. and he was killed at that motel in Chula Vista San Diego Califor -nia and his body was moved! put in a white car! I truly believe that every time this sort of thing happen... I become more and more less alert and understanding of what went on around me. I was actaully told I better not come in her mouth! I was hit in the head, because I did!

This is a Fourth Amendment violation whic states "the right of the people to be secure in thei persons, houses, papers, and effects and against unreasonable "seizures", shall not be violated!

We return your original letter
and any docs we received.
*No copies kept.*

We return your original letter and any docs we received. *No copies kept.*

RECEIVED
JAN 1 4 2008
By

You sent me a letter
1/7/2007 in the letter you said I
could request free manuals which
provide information about how to file
state habeas petitions and federal civil
rights complaints. You said If I want
one or both of these manuals, you should
send a written request to the Prison Law
Office. I want both manuals please

Here is my situation. I was
shot badly to the point I watch my
guts fall out! CDC covered it up.
I can't get my Prison review! even
after "602 appeals" that are not answer-
ed, and when they do answer they kept
the 602 until the time "almost out"
on it!! or say they can't understand
it and rewrite it! but "that" is only
because they don't want to deal with
the issues! So given what I have just
describe "no individual" medical complain
will never be exhausted administrative
remedies received at the Director's level for
response to a 602... they apply Booth V.
Churner (2001) 531 US. 956 in a unconstit-
-ational way "as applied" by hindering the
compliant, as I said "up above" I talked
to a "a-Doctor"

I showed them my complaint, I had shot'in' some scares, the main thing that I find a medical emergency is that there was a medical operation for a umbilical Hernia I was shot with gas and other weapons right before the operation, right before the operation I could n't pose a threat it was a personal attack!! By guards and inmates 'corrupt guards' I have not seen the film or nothing of the operation and everyone avoid speaking of what happen! I can't get a Olson review! I believe my high blood pressure to be from a "Staff infection" in my stomache! from that operation and attack!

Right before that the above mentioned occurrence I was given meds that were suppose to be for infection, that greatly had a bad effect on me. That is why I don't take meds from CDC though there are good medical staff and officers. When I say what happen they strain twist and ignore the evidence... So why keep complaining to them? I need you to come with a outside doctor Pui Yee Yu. Please me the reviews Auden Court and mmm

1 also plaintiff trial lawyer and appeal lawyer
2 failed to explore, investigate and put on in a defence
3 male battered syndrome and child battered
4 syndrome. And for the record plaintiff has
5 additional scares on plaintiffs body...to show
6 from one attact his guts fail out...do to weapon
7 plus black buck shots marks from being
8 electricfied by electricity .... from torture! Your
9 honor you may have no Idea what's happen to me
10 my shin can show some radiation..."burns". i'll stop
11 there. they actually Kept me in the show with cold
12 water...and a good plastic surgeon can tell I had
13 shin grafts. and you Look at my teeth you will
14 see they grinded them down. and see the teeth was
15 Knocked out. my prima facie case for relief is your
16 human judgement and my human judgement.
17 and there is no rule that human judgement can
18 not meet a state prima facie case for relief in
19 a district court. Also with investigation, I can
20 produce that there are witnesses to say that
21 LaKiah Olden Knew who I was... and had prior
22 dealing with plaintiff...on a number of
23 occassion before the year 2000. and the
24 person plaintiff Knows as Steve Wilkerson
25 Beat plaintiff in the head with a bat, because
26 plaintiff was stopping the person Know as
27 Steve Wilkerson from raping this young girls
28 family. With the immunity... she can shred
29 Light on what plaintiff has been saying





U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

MAR **2 4** 2008

Mr. Michael Wilkerson
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

Dear Mr. Wilkerson:

The U.S. Immigration and Customs Enforcement (ICE) received your letter to the U.S. Department of Homeland Security (DHS), concerning an alleged violation under the jurisdiction of ICE. ICE is the largest investigative branch of DHS that protects our national security and public safety through enforcement of our immigration laws.

The information you provided was forwarded to our field office for any action deemed appropriate. If you have any new information you may call our public tipline at 1-866-DHS-2ICE. This tipline was established to allow the public to provide information that may be of potential interest to ICE and its investigatory mission. For further information related to ICE, please visit our Web site at www.ice.gov.

Sincerely,

Dr. Char F. Wittenberg
Chief of Staff
Office of Detention and Removal Operations

RECEIVED
APR 3 - 2007
OFFICE OF THE CLERK
SUPREME COURT, U.S.

Dear US. Supreme Court and Clerk

I'm writing you desiring to file a writ. against a California department of Corrections and California

On 7/25/2005 I was given my legal property. In part you must sign for your property in 4 word A2R for your property before you can recieve it. then you are taken back to you cell. Thats the procedure of recieving our property. when once in your cell you discover whats deleted or taken. Once I discovered that addresses on envelopes and different paper with wittnesses was taken. along with pencel drawing. I wrote a inmate appeal about the policy.

On 8-1-05 please see "C" inform level (Date Recieved and Date Returned to inmate it's dated 8-1-05. inmate/Parolee appeal form "green sheet of paper". After that, in and around 8-17-05 which puts it out of time that a appeal is appropriately answered. according to these appeals procedures. Now at "B" the date the inmate signature and date was 7/25/20.05

The reason I'm writing now of this issue at the top of the green form in heavy Black marker is "O T C" meaning Out to Court so I'm just getting it as follows. I mail You yourself the Clerks office send me a writit for your court. saying I should use your writ and not a "Habeas Corpus" at time I was in the County Jail Fresno. Thats why the staff err in not allow me to arrange the item for the court they were part of a writ. they had to be labeled "exsibits" one was a addressed envelop

officers take "vacations"... the envelope was from a bitterness in my case... that I'm presently persuing to appeal to your court... the person also worked and managed another "Inn" called "Hacaian Garner where both "caretakers" were robbed and places were taken over! This witteness was claiming the caretakers owed him money... for working for them... it's not true "I can prove it". In order to prove what I'm saying. Look at the paper labeled "Exibit A" where it say in the middle of paragraph. "Single cell status is based on "pending" Archive review for discharged prison California Department of Corrections number J 79494 the files can't be found! they want me to see and show the rapes of staff and inmates "at these prisons" where they can't find my records... all these prisons had "money" "missing" when the event occurred! Also I can give you high up "Sergents" and up people who lived up "above their means"! automobiles paid for! 30,000 dollars how do I know? That's where California Department of Corrections pension fund go... I can prove it over what in the "Prison "Industry" on prison grounds and they get it by deception and fraud and black mail. The same as the motels... Hotel and Inn in my transcripts. Check and see who was the one appointed by federal officer to be over "the departments" of California Department of Correction in the years 95 an 1996 and you will know what and why I'm saying what I'm saying! Check and see who killed the man at the old down town San Diego California... the man who "ran the jail" was killed in the jail... while hand cuffed it had to had shown on his wrist! the man who did it got to get away... and I was tortured for it. it was a plan! and money came up missing again, there's more!

Exhibit-A



www.socialsecurity.gov

---

Michael Wilkerson
Housing B8 128
Pelican Bay State Prison
PO Box 7500
Crescent City, CA 95532

560 E Hoover Ave
Crescent City, CA 95531
Phone: (707)465-5943
Fax: (707)465-5415
Office Hours: 9:00 a.m.–4:00 p.m.
April 1, 2008

Mr. Wilkerson,

Your Social Security number was originally issued prior to 1971. Our computer records do not show the exact date your number was issued, nor do those records show what office received your application for a number. The most recent card was applied for at the San Diego Social Security office and issued March 29th, 1999.

You received Supplemental Security Income (SSI) for the disabled beginning July of 1998 and ending in June of 2001. All checks were mailed directly to you at the address you reported to us, 1007 9th St, Imperial Beach, San Diego, CA You may re apply for benefits when you are released from prison. To apply, bring release documents to any Social Security office.

The Social Security Administration has never been involved in medical insurance although you may have received medical coverage from the State of California. Our records show that you have never received, nor qualified for, Medicare benefits.

Sincerely,

*Karen Kelley*

Service Representative, Crescent City Field Office
Social Security Administration

from a psychosis. I mean to say that the drugs produced the psychosis in the sense that without the drugs she would have been left, for all we can determine here, as a person simply with personality deficits.

'. . ..e b

'And there is evidence here that the psychosis, characterized by the doctors as schizophrenia, was operating on this defendant from some time in November, at least though December and beyond the date of December 7.

'. . ..re

'Certainly, she had intervals of acting out, I think is the word that they use to express some anti-social conduct. And that is as far, really, as you could find. But, in any event, on the date of the crime, December 7th, because of the psychosis that existed then, and had for a little while on both sides of the date of the crime, such a condition of the mind that she was not capable of understanding that her act was wrong. And the record *183_ is full of references to out of touch with reality and so forth.

'. . ..o f

'And so I would say that in the face of the finding that In lay terms she did not know what she was doing close quote on December 7th, she nevertheless must be held criminally responsible for her acts on that day, because the psychosis, which I would have to find to be characterized as schizophrenia on December 7th, was not of a settled and permanent nature, and, in addition, was produced by the voluntary ingestion of hallucinatory drugs.

'Now, that is a legal decision and not a medical decision, because I have attempted to make findings here from this evidence which meets directly what counsel have argued to me as their view of the issues involved. And I think the evidence has been that on December 7, and for some time before and sometime after, she was suffering this psychosis.

'I do not believe it more than a temporary psychosis, when measured by testimony of the doctors as to her condition, from time to time, beginning back in 1968 to the present, and when measured by the testimony concerning the duration of effects from voluntary ingestion of LSD.

'When measured by those things, it is temporary although certainly, in terms of elapsed time, a less temporary thing than Mountain Red. And so, In spite of the fact that she did not know that what she was doing was wrong on December 7th, despite the fact that the reason she did not know was infliction with a mental condition described as schizophrenia, despite the fact that that condition had endured prior to the crime at least back into November and endured thereafter, certainly the rest of the month of December and probably longer,--parenthetically, it is hard to tell because they began dosing her up with other things at Patton, so you don't really know--Despite those facts, I hold that the law does not admit of a defense to the crime charged by reason of legal insanity, because the schizophrenia is not of a settled, permanent nature, and was produced in the first place by the ingestion of hallucinatory drugs and other drugs. . . .' (Italics added.)

*183_    (FN12.)    Section 22 provides: 'No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.'

(FN13.)    CALJIC No. 4.30 provides: 'Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime. ( ) This rule of law applies only to cases of the unconsciousness of persons of sound mind, such as somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind.'

(FN14.)    This rule was reiterated in People v. Hood (1969) 1 Cal.3d 444, 452--459, 82 Cal.Rptr. 618, 462 P.2d 370, which applied the rule to a charge of assault with a deadly weapon upon a police officer (s 245, subd. (b)). It also applies to the crime with which defendant is charged here, assault with a deadly weapon. (People v. Parks (1971) 4 Cal.3d 955, 960, 95 Cal.Rptr. 193, 485 P.2d 257; People v. Rocha (1971) 3 Cal.3d 893, 896--900, 92 Cal.Rptr. 172, 479 P.2d 372; People v. Seals

PROPERTY OF FACILITY LAW LIBRARY

(1970) 1 Cal.3d 574, 575, 82 Cal.Rptr. 873, 462 P.2d 993).

(FN15.) This rule may have been misunderstood since in attempting to clearly distinguish between intoxication and insanity, we have in dicta previously implied that the defendant must be chronically or permanently insane. Thus, in People v. Fellows, Supra, 122 Cal. at pp. 239--240, 54 P. at p. 832, this court stated: 'A sane man, therefore, who voluntarily drinks and becomes intoxicated is not excused because the result is to cloud his judgment, unbalance his reason, impair his perceptions, derange his normal faculties, and lead him to the commission of an act which in his sober senses he would have avoided. Upon the other hand, if one, by reason of longcontinued indulgence in intoxicants, has reached that stage of Chronic alcoholism where the brain is permanently diseased, where the victim is rendered incapable of distinguishing right from wrong, and where Permanent general insanity has resulted, then, and in such case, he is no more legally responsible for his acts than would be the man congenitally insane, or insane from violent injury to the brain.' (Italics added.) Later cases have not mentioned the permanent nature of the insanity. (See, e.g., People v. Griggs, Supra, 17 Cal.2d at p. 625, 110 P.2d 1031.)

(FN16.) Of course, the burden is on the defendant to establish by a preponderance of the evidence that the offense occurred during a period of insanity. (See People v. Baker (1954) 42 Cal.2d 550, 564, 268 P.2d 705, and cases cited therein.)

(FN17.) We note that in the instant case defendant took mescaline the day before the offense. Defendant does not lose the defense of insanity because she may also have been intoxicated at the time of the offense. (La Fave & Scott, op. cit. Supra, at p. 348; Clark & Marshall, op. cit. Supra, s 6.09, at p. 388.)

(FN18.) Penal Code section 1026 states in part: 'If the verdict or finding be that the defendant was insane at the time the offense was committed, the court unless it shall appear to the court that the defendant has fully recovered his sanity shall direct that the defendant be confined in the State hospital for the criminal insane, or if there be no such State hospital, then that he be confined in some other State hospital for the insane. If, however, it shall appear to the court that the defendant has fully recovered his sanity such defendant shall be

remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law. . . .'

The trial court in this case found that defendant was not psychotic at the time it rendered judgment. However, since it erroneously found that defendant was legally sane at the time of the offense, it did not follow the procedures outlined above. Therefore, on remand it will be the duty of the trial court to decide whether 'defendant has fully recovered (her) sanity.' If it determines that she Has not fully recovered her sanity, it should direct that she be confined in a state hospital as prescribed by section 1026. (See generally In re Franklin (1972) 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465.) If, on the other hand, it determines that defendant Has in fact fully recovered her sanity, it should remand her to the custody of the sheriff until her sanity is finally determined 'in the manner prescribed by law.' We have interpreted the latter phrase to encompass proceedings of involuntary civil commitment which are now governed by Welfare and Institutions Code section 5000 et seq. (Lanterman-Petris-Short Act). (In re Slayback (1930) 209 Cal. 480, 484, 288 P. 769; see also Witkin, Cal. Criminal Procedure (1963) s 507, at p. 514.) Under these procedures, a person may be detained up to 72 hours for evaluation, and if the person is deemed dangerous or refuses voluntary treatment, he may be certified for not more than 14 days of involuntary intensive treatment. (Welf. & Inst.Code, s 5250; see the more complete discussion of these procedures in Thorn v. Superior Court (1970) 1 Cal.3d 666, 668--672, 83 Cal.Rptr. 600, 464 P.2d 56.)

*183_ (FN1.) 'To what extent is a lunatic's spelling even of his own name to be deemed an authority?' asked Justice Frankfurter in his book, Of Law and Life and Other Things (1965) page 3. He commented on the variorum of Deniel M'Naughten:

1. The original Gaelic--Mhicneachdain.

2. The defendant himself, signing a letter at the trial--M'Naughten.

3. The State Trials--Macnaughton.

4. Clark and Finnelly--M'Naghten.

5. Archbold--Macnaughton, Macnaughten or Macnaghten.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

PROPERTY OF FACILITY LAW LIBRARY

*v. Woodford* (9th Cir. 2001) 275 F.3d 769, 773, rev'd on other grounds, *Woodford v. Garceau* (2003) 538 U.S. 202; *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1384.)

In *Garceau*, the defendant attacked an instruction permitting the jury to infer the defendant's propensity to commit murder from proof of his prior drug and murder convictions. (*Garceau v. Woodford, supra*, at p. 773.) Although that evidence was admitted under Evidence Code section 1101, the Ninth Circuit held it nonetheless violated federal due process to allow the jury to use the evidence as proof the defendant's criminal propensity. (*Id.* at pp. 777-778.) The Ninth Circuit reversed Garceau's death penalty conviction and remanded for a new trial, even though the evidence at trial showed Garceau had confessed his culpability to several people.

The importance of *Garceau v. Woodford* is that the federal court determined the use of other crimes evidence to prove propensity violated federal constitutional guarantees of due process. The California Supreme Court previously had determined that the propensity instruction in *Garceau* was improper. (*People v. Garceau* (1993) 6 Cal.4th 140, 186.) But the California Supreme Court rejected the instruction on state law grounds, i.e., that it violated the limitations placed on propensity evidence by Evidence Code section 1101. It also found the error to be harmless. (*Id.* at p. 187.)

The Ninth Circuit's position in *Garceau v. Woodford* is consistent with the long-held view that criminal defendants should not be convicted based on propensity evidence, even though the U.S. Supreme Court has never directly addressed the question. (*Spencer v. Texas* (1967) 385 U.S. 554, 572-574 (Warren, J., dissenting in part).) This position follows the common law.

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States*, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

(*Michelson v. United States* (1948) 335 U.S. 469, 475-476.)

Finally, in *Estelle v. McGuire* (1992) 502 U.S. 62, 74, although the court expressly declined to address the question of whether a propensity instruction would violate due process (*id.* at p. 75, fn. 4), it nonetheless took pains to explain that an instruction regarding the proper consideration of other

32

it to be used to prove criminal disposition, violated appellant's federal constitutional rights to due process and a fair trial. (U.S. Const., amends. 6 and 14.) It was erroneous and merits reversal of his convictions on all counts.

**B.    Standard of Review**

An appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. (E.g., *People v. Alvarez* (1996) 14 Cal.4th 155, 203.)   When claimed instructional error implicates the proper application of legal principles, the trial court's ruling is reviewed *de novo*. (*People v. Berryman* (1994) 6 Cal.4th 1048, 1089, overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800.)

**C.    Evidence Code section 1108 Unconstitutionally Permits Juries To Convict Defendants Using Criminal Propensity Evidence.**

Evidence Code section 1108 is an exception to the usual bar on the use of "criminal propensity" evidence explained in section 1101.  Since section 1108 allows jurors to consider evidence of other bad acts as evidence of criminal propensity (e.g., *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1028), it violates federal constitutional guarantees of due process. Although the California courts have found that section 1108 does not violate due process (*People v. Falsetta* (1999) 21 Cal.4th 903, 911), the federal courts have stated several times that the use of "other crimes" evidence to prove criminal propensity violates federal constitutional guarantees of due process. (*Garceau*

would have supported a mistake of age defense and appellant was not permitted to use or argue that defense. The prosecution cannot show that the failure to permit this defense was harmless beyond a reasonable doubt. Therefore, the error merits reversal of all the counts of conviction under section 288(c)(1).

### III.

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE INTRODUCTION OF "OTHER ACTS" EVIDENCE UNDER EVIDENCE CODE SECTION 1108 AND BY PERMITTING THE JURY TO CONSIDER THAT EVIDENCE AS PROOF OF APPELLANT'S PROPENSITY TO HAVE SEX WITH MINORS**

**A.    Introduction**

Over defense objection [RT 14], the prosecution introduced evidence that appellant had a prior long-term sexual relationship with a minor, Yolanda Jackson, with whom he fathered two children. Jackson testified she met appellant while she was in high school and began having sex with him when she was 16 and he was 32. [RT 1361.] Jackson also testified that appellant would sometimes force her to have sex with him and would strike her. [RT 1363.] Jackson got a restraining order against appellant. [RT 1365.]

The evidence was admitted under Evidence Code sections 1108 and 1109. [RT 15-16.]

The introduction of this evidence, along with the instructions allowing

29

Here, the court's ruling and instructions denied appellant his right to present a defense (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302) and lightened the prosecution's burden of proof by removing the mens rea requirement from the crime of lewd conduct with a teenager aged 14 or 15. It also shut down an entire possible – and likely probable – line of defense before the first witness was even called. Although appellant defended on the ground that he had no sexual contact with Lakiah, it would be unreasonable to expect any other defense given the trial court's ruling and the fact that *Olsen* and *Paz* certainly seemed to control the trial court's decision. In other words, once appellant was told mistake of age could not be a defense, he had no reason to tell the court that he was planning to admit having had sexual relations with Lakiah under the mistaken belief she was an adult, for doing so would simply admit guilt.

It is impossible to say within the confines of a direct appeal whether appellant would have presented additional evidence relevant to that defense. What is clear is that Lakiah lied to appellant about her age and told him she was older than 15, the threshold age for the application of section 288(c)(1), and that the age she gave him would have made his conduct with her legal. Whether Lakiah's lie was credible would have been a jury determination.

The bottom line, then, is that there was evidence on the record that

28

in which defendants face minimal penalties. The failure to require proof that appellant knew Lakiah was 14 or 15, and the affirmative denial of his right to show he reasonably believed her to be an adult, violate due process and merit reversal of all the section 288(c)(1) convictions.

**E.    Appellant Was Prejudiced by the Error.**

"Since principles of due process protect the accused against conviction except upon proof beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] ), an instruction to the jury which has the effect of reversing or lightening the burden of proof constitutes an infringement on the defendant's constitutional right to due process. (*People v. Serrato* (1973) 9 Cal.3d 753, 766-767 [109 Cal.Rptr. 65, 512 P.2d 289, overruled on other grounds by *People v. Fosselman* (1983) 33 Cal.3d 572]; *People v. Hardy* (1948) 33 Cal.2d 52, 66 [198 P.2d 865]; *Smith v. Smith* (5th Cir.1971) 454 F.2d 572, 578.)" (*People v. Saddler* (1979) 24 Cal.3d 671, 679-680.) An error in instruction which significantly misstates the requirement that proof of guilt be beyond a reasonable doubt "compels reversal unless the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.' (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-711, 24 A.L.R.3d 1065].)" (*People v. Serrato, supra*, 9 Cal.3d at p. 767.)

27

arouse the passions of the perpetrator or the victim, but it does not explicitly require proof that the defendant knows the age of his victim. Yet "[e]xcept in those rare circumstances where strict criminal liability may be imposed, even a general intent crime ordinary requires scienter, i.e., *guilty knowledge of the facts which make the act a crime*. [Citations.]" (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1468 [emphasis added].)  A defendant cannot have the intent to commit an act proscribed by the relevant law if he or she lacked knowledge of the facts which brought his or her actions within that law. (See, e.g., *People v. Rubalcava* (2000) 23 Cal.4th 323, 331-332; *People v. Coria* (1999) 21 Cal.4th 868, 879; *People v. Laster, supra,* 52 Cal.App.4th at p. 1468.)

Thus, the prosecution must prove that a defendant charged with resisting arrest know he or she is resisting a law enforcement officer (*People v. Lopez* (1986) 188 Cal.App.3d 592, 599); that a defendant charged with making a false affidavit know the affidavit was false when made (*People v. Calban* (1978) 65 Cal.App.3d 578, 584-585); and that a defendant charged possessing a machine gun know that the weapon is a machine gun (*Staples v. United States* (1994) 511 U.S. 600, 619.)

In *Staples*, the Supreme Court noted that

'The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as

25

universal and persistent in mature systems of law as belief in
freedom of the human will and a consequent ability and duty of
the normal individual to choose between good and evil.'

(*Id.* at p. 605, quoting *Morissette* v. *United States* (1952) 342 U.S. 246, 250.)

That is because it is simply unfair to subject a person to a lengthy prison term

without proving he knew the facts that rendered his conduct illegal.

The Ninth Circuit has affirmed the federal constitutional basis for

requiring proof of mens rea beyond a reasonable doubt. (*Keating v. Hood* (9th

Cir. 1999) 191 F.3d 1053, 1061, overruled on another ground by *Payton v.*

*Woodford* (9th Cir. Oct. 20, 2003) 2003 U.S. App. LEXIS 21112 [*"Keating*

*II"*] ("instruction that relieves the state of the burden of proving *mens rea*

beyond a reasonable doubt contradicts the presumption of innocence . . .

violating due process."). In *Keating*, the trial court erred by failing to require

the jury to find that the defendant knew false statements were being made to

sell securities. While the parties agreed that the instructions violated *Simon*,

the Ninth Circuit had to determine whether the error violated federal due

process guarantees. It did.

Neither the majority opinion in *Olsen* nor the opinion in *Paz*

acknowledges that those cases make section 288 a strict liability offense in

violation of defendants' federal due process rights. The federal constitution

requires that strict liability offenses be limited to those public welfare offenses

26





## CALIFORNIA WESTERN
### S C H O O L   O F   L A W

### CALIFORNIA INNOCENCE PROJECT

April 2, 2008

Michael Wilkerson T-90727
Housing B-7-232
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA
95551

Mr. Michael Wilkerson:

According to our records, your documents were sent back on March 4, 2008. Unfortunately, it looks as though they were sent to your prior address at Mule State Prison. We will send them to your current address when they are returned to us. Thank you for your patience.

Sincerely,
California Innocence Project



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964-0001
Telephone (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Rachel Farbiarz
Penny Godbold
Megan Hagler
Alison Hardy
Vibeke Martin
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

1/7/2008

Michael Wilkerson, T-90727
MCSP
PO Box 409000
Ione, CA 95640

Dear Mr. Wilkerson:

I write in response to your letter received 12/26. You indicate that your last blood pressure check read 106/160. You also inform us that you do not trust the health care staff currently providing you with medical care and so you will not take medications. I am sorry to hear of your situation, but with regards to requesting new primary care providers, our office is unable to dictate how the institution distributes its staff and which medical care professionals are hired.

If you are concerned about your blood pressure, please be sure to cooperate with medical care staff when they administer blood pressure checks, and keep a brief log of the dates and readings. If you have been prescribed blood pressure medications, not taking these medications may affect your blood pressure. If your readings continue to seem high to you, please forward your brief log to our office for review. Please also file a 602 requesting treatment if a yard doctor diagnoses you with high blood pressure. I am enclosing some basic information about the Plata class action case, which I hope helps to clarify the circumstances under which our office can and cannot act on behalf of prisoners with difficulty receiving medical treatment.

I am forwarding your letter to the attorneys in our office who work on the Coleman case for additional review. They will determine whether they can offer you assistance with regards to your mental health concerns.

Take care.

Sincerely,

*Pui Yee Yu*

Pui Yee Yu
Litigation Assistant Under Zoe Schonfeld

Enclosures: PLA Plata 1;

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC 20543-0001

February 14, 2007

Michael Wilkerson
T-90727
Salinas Valley State Prison
P.O. Box 1020
Soledad, CA 93960-1020

  RE: Wilkerson v. CA

Dear Mr. Wilkerson:

  The papers were received on February 13, 2007. These papers fail to comply with the Rules of this Court and are herewith returned.

  You may seek review of a decision only by filing a timely petition for writ of certiorari. The papers you submitted are not construed to be a petition for writ of certiorari. Should you choose to file a petition for writ of certiorari, you must submit the petition within the 90 day time limit allowed under Rule 13 of the Rules of this Court. A Copy of the Rules of this Court and a sample petition for a writ of certiorari are enclosed.

                                 Sincerely,
                                   William K. Suter, Clerk
                                 By:

                                 Erik Fossum
                                 (202) 479-3392

Enclosures

1  HC07CRWR678603-GDH-cm

FILED

SEP 1 9 2007

FRESNO SUPERIOR COURT

By_____

DEPT. 71 - DEPUTY

8  SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

9  CENTRAL DIVISION

11  In re                          )   No. 07CRWR678603      Dept. 71
                                   )
12  MICHAEL WILKERSON,             )
                                   )        ORDER
13           Petitioner           )
                                   )
14  On Habeas Corpus.              )
    _____)

16       Having considered the petition for habeas corpus dated
17  August 23, 2007, the court finds that petitioner has failed to
18  state a prima facie case for relief.

19       The petition appears to be virtually identical to a
20  previous petition filed by petitioner on August 14, 2007.   (See
21  Fresno County case no. 07 CRWR678589.)   The court has already
22  denied the previous petition.

23       "It has long been the rule that absent a change in the
24  applicable law or the facts, the court will not consider repeated
25  applications for habeas corpus presenting claims previously
26  rejected. [Citations omitted.]   The court has also refused to
27  consider newly presented grounds for relief which were known to
28  the petitioner at the time of a prior collateral attack on the

1  judgment. [Citations.]    The rule was stated clearly in *In re*

2  *Connor, supra,* 16 Cal.2d 701, 705: 'In this state a defendant is

3  not permitted to try out his contentions piecemeal by successive

4  proceedings attacking the validity of the judgment against him.'"

5  (*In re Clark* (1993) 5 Cal.4th 750, 767-768.)    Therefore, because

6  the new petition is merely duplicative of the original petition

7  and adds no new facts or law, it is without merit.

8       Consequently, the petition is denied.

9       DATED this ___19___ day of September, 2007.

10

11                    **GARY D. HOFF**
                   _____

12                       GARY D. HOFF
                Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  HC07CRWR678564-GDH-nar

FILED

AUG 10 2007

FRESNO COUNTY SUPERIOR COURT

By _____
                            DEPUTY

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

9                         CENTRAL DIVISION

11  In re                        )   No. 07CRWR678564    Dept. 71
                                  )
12  MICHAEL WILKERSON,            )
                                  )   ORDER
13          Petitioner            )
                                  )
14  On Habeas Corpus.             )
    _____)

16          Having considered the petition for writ of habeas corpus

17  filed July 30, 2007, the court finds that petitioner has not

18  stated a prima facie case for relief.

19          It is difficult to determine what petitioner is alleging

20  or what relief he seeks, since his petition is rambling and

21  incoherent.  However, it appears that petitioner complains that he

22  has been declared mentally ill without any written statement

23  explaining why.  Petitioner also apparently complains about being

24  "double celled" when the doctor instructed that petitioner should

25  be "singled celled" only.

26          However, petitioner has not supplied any documents or

27  other evidence to support his assertion that he needs to be placed

28  on single status.  Decisions regarding placement of inmates are

1   generally left to the discretion of the institution.

2           Also, to the extent that petitioner complains about the

3   determination that he is mentally ill, he has not shown that the

4   determination has affected his conditions of confinement in such a

5   way as to warrant court intervention.

6           Finally, since petitioner is currently incarcerated at

7   Corcoran State Prison, which is located in Kings County, he is not

8   within the jurisdiction of the Fresno County Superior Court.

9           Therefore, the petition is denied.

10          DATED this _10_ day of AUGUST 2007

11

12                                      _Gary D. Hoff_

13                              _____
                                      GARY D. HOFF
14                              JUDGE OF THE SUPERIOR COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28



State of California
## Commission on Judicial Performance
455 Golden Gate Avenue, Suite 14400
San Francisco, CA 94102-3660
(415) 557-1200
FAX (415) 557-1266

June 4, 2003

Michael Wilkerson, #T90727
Fac 4-17-250
480 Alta Road
San Diego, CA 92179

Dear Mr. Wilkerson:

Your further correspondence concerning a California judge has been considered in order to determine whether there is any basis for action by this commission.

It has been concluded that the contents of the letter do not provide grounds for proceeding further. No facts of judicial misconduct within the jurisdiction of this commission have been set forth. As previously advised, this commission cannot reverse or relitigate judicial decisions.

Very truly yours,

Donna M. Vargas
Staff Counsel

DV:ej/l0604wil

*Please contact this commission and get all letters and files sent to them... Sent to Mr Bennet 619-235071 as well*

Confidential under California Constitution,
Article VI, Section 18, and Commission Rule 102

State of California                                                    Department of Corrections
                                                                        CDC-128-B

---

**No:**  T90727                      **Name:**  **WILKERSON**

---

On 12-4-07, I interviewed Inmate WILKERSON, T-90727, in regards to his request to relinquish his Sensitive
Needs Yard (SNY) placement. During the interview, WILKERSON indicated that he did not want to be around
rapists and child molesters. He continued to say he did not trust some SNY staff or inmates. He believes some
SNY staff are corrupt and he wishes to remove his SNY status. Inmate Wilkerson is ***NOT*** a participant in the
Mental Health Services Delivery System (MHSDS), refer to CDC 128-C dated 11-8-07. WILKERSON states
he does not trust his assigned clinician or doctor and refuses to participate. WILKERSON was adamant about
not returning to Facility A or a SNY facility and requests an endorsement to a General Population (GP) facility.
He believes he can safely program at a GP facility without problems. As a result, WLKERSON was informed
that if he develops any new safety concerns, he would be re-interviewed and re-evaluated for appropriate
placement, which could include re-establishing a need for SNY housing. I advised WILKERSON to alert staff
immediately if any safety concerns or problems should occur on a GP setting. He is not a first termer and has
programmed at GP facilities while he was serving his prior CDC # B-93362 and J-79494. WILKERSON'S
SNY placement is based on his instant offense (sex related crimes). He has been SNY endorsed since 8-20-03.
As a result, WILKERSON was informed that this information would be documented and included in his Central
File for review by the CSR.


I,_____CDC#_____, request that the SNY placement be
removed from my file. I am requesting transfer to a GP institution. I am aware of the expectations that are
required at the GP institutions. I can safely program in a GP institution.


                                          _____
                                          E. Lamb
                                          Correctional Counselor I

cc:    C-File

       Inmate

Date: 12-4-07                    **(REMOVE SNY ENDORSEMENT)**

COPY FoR l/M

1          (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

2     COURT; THE DEPUTY DISTRICT ATTORNEY IS NOW PRESENT.)

3          MR. BENNETT:  CAN I ADD ONE OTHER THING, YOUR

4     HONOR?  I DID NOT RECEIVE THE PAPERS FROM

5     MR. WILKERSON THIS LAST TIME.  I GAVE HIM A COPY OF

6     THE LATEST PSYCHIATRIC REPORT, AND HE DIDN'T WANT TO

7     FREE IT UP TO THE COURT.

8          THE COURT:  THAT'S WHERE WE ARE.  I HAVE MADE THAT

9     FINDING FOR THE RECORD.  I THINK ANY REASONABLE PERSON

10    LOOKING AT THIS RECORD WOULD SAY GET ON WITH IT.

11    THAT'S WHERE WE ARE.

12         MR. BENNETT:  WELL, THE COURT DIRECTED ME TO

13    PREPARE A MITIGATION REPORT, AND THE MATTERS I HAD TO

14    WORK WITH, I DON'T HAVE.

15         THE COURT:  MR. BENNETT, NO ONE CAN ASK YOU TO DO

16    THE IMPOSSIBLE.  IF YOU HAVE A CLIENT WHO IS

17    ATTEMPTING TO MANIPULATE THE SYSTEM TO AVOID

18    SENTENCING, THEN YOU CANNOT BE EXPECTED TO PRODUCE

19    SOMETHING FROM NOTHING.  THAT'S WHERE WE ARE.

20              MR. WILKERSON KNEW TODAY WAS THE DAY FOR

21    SENTENCING, KNEW TODAY WAS THE DAY WHEN THE COURT

22    NEEDED TO HAVE IT PREPARED, AND MADE A CONSCIOUS

23    DECISION NOT TO COOPERATE, NOT TO PROVIDE INFORMATION.

24              UNDER THESE CIRCUMSTANCES, IT IS

25    MR. WILKERSON'S DECISION TO PROCEED.

26              ARE YOU READY TO PROCEED TO SENTENCING?

27         MS. ROBINSON:  YES, YOUR HONOR.

28         THE COURT:  ALL RIGHT.  DO YOU WISH TO BE HEARD?

1664

```
 1    THEIR NOTES, THERE WILL BE HONEST GIVE AND TAKE BACK
 2    AND FORTH, AND THEY ARE NOT GOING TO DECIDE THIS CASE
 3    BASED ON WHAT THE LAWYERS SAY.
 4              FIRST OF ALL, I ADMONISH THEM THAT THE
 5    STATEMENTS OF THE LAWYERS ARE NOT EVIDENCE.  AND
 6    SOMETIMES VERY LONG ARGUMENTS DON'T CARRY THE SAME
 7    WEIGHT AS THE SHORTER ARGUMENTS.  BOTTOM LINE, I DON'T
 8    THINK, HONESTLY, IF IT SETS YOUR HEART TO REST, I
 9    DON'T THINK THE ARGUMENTS ARE GOING TO DECIDE THIS
10    CASE.
11              THESE JURORS HAVE ENOUGH TO DECIDE
12    CREDIBILITY, AND THERE WAS SIGNIFICANT IMPEACHMENT OF
13    EVERY ONE OF THESE WITNESSES.
14        THE DEFENDANT:  OKAY.  ONLY THING I JUST WANT TO
15    SAY AND YOU DO NOT HAVE TO READ THIS RIGHT NOW, YOU
16    CAN DO IT AT YOUR LEISURE TIME WHEN WE COME BACK TO
17    COURT OR ANYTHING, BUT THESE THINGS WERE NOT PUT INTO
18    EVIDENCE, THOUGH THEY ARE FACTS DONE BY HER
19    INVESTIGATOR THAT SHOW SOME GROSS -- I MEAN, THESE
20    THINGS NEED TO BE LOOKED AT.  I WROTE THEM DOWN.  I
21    ALSO BROUGHT THE THINGS THAT YOU CAN LOOK AT.  I JUST
22    CAN'T SIT WITHIN MYSELF AND JUST SIT HERE AND SAY IT'S
23    ALL RIGHT.
24              BECAUSE ONE THING IS THAT BELGROVE SAYS A
25    COUPLE WEEKS PASSED BY, SHE LEFT THE HOUSE AFTER THE
26    INCIDENT.  LAKIAH SAYS THE NEXT DAY.  THOSE ARE THINGS
27    THE JURY DIDN'T HEAR.  THERE IS MORE AND MORE.
28        THE COURT:  HERE'S WHERE WE ARE AT THIS POINT.
```

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1    DE PAUL, MY MEDICAL RECORDS.  THAT STATES THAT I HAVE

2    A MEMORY PROBLEM.  I SEEN A PSYCHOLOGIST, A

3    PSYCHIATRIST FOR MY MENTAL PROBLEM.  I ASKED HIM TO

4    GET IT.  I ASKED MR. FIELDING TO GET IT.  AM I LYING?

5    I ASKED YOU FOR THE MEDICAL RECORDS AT ST. VINCENT AND

6    I ASKED FOR THE MEDICAL RECORDS OF A LADY NAMED

7    MISS SANCHEZ OR CHAVEZ AT UCSD.  SHE GOES TO

8    ST. VINCENT.

9           I'VE TRIED TO FIND OUT WHY I COULDN'T

10    REMEMBER.  I KNOW WHY NOW:  I HAVE BEEN ASSAULTED ALL

11    THESE TIMES, AND EVERY TIME DO I -- I CANNOT REMEMBER.

12    I LOSE MY MEMORY FROM IT.  IT'S NOT I AM JUST WALKING

13    AROUND LOSING MY MEMORY.

14           AND I TELL YOU GUYS, THESE PEOPLE ARE

15    ATTACKING THIS PLACE.  THEY ARE.  AND IF IT'S

16    INVESTIGATED, WE'LL FIND OUT THAT WHY IS MR. WILKERSON

17    CONSTANTLY HERE IN ALL THESE MURDERS.

18    THE COURT:  ALL RIGHT.

19    THE DEFENDANT:  AND THE JURY SHOULD KNOW THAT,

20    THEY SHOULD SEE THIS, AND YOU'LL KNOW SOMETHING'S

21    WRONG.

22    THE COURT:  ALL RIGHT.  HERE'S WHERE WE ARE.

23           ANYTHING FURTHER FROM EITHER SIDE?

24    MR. BENNETT:  NO.

25    THE COURT:  I FIND THAT THERE IS NO CAUSE TO

26    RELIEVE MR. BENNETT AT THIS TIME.  HE WILL CONTINUE AS

27    ATTORNEY OF RECORD.

28           I MAKE THE FOLLOWING FINDINGS:

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1    AFFILIATED WITH ALL THESE GUYS, ALL THESE PEOPLE, A

2    RIDE TO THE PLACE.

3            THE POLICE CAME.  I WAS BEAT UP AND

4    ASSAULTED.  WHEN I SAY "ASSAULTED," I MEAN SEXUALLY

5    ASSAULTED.  EVERY LAST ONE OF THESE WITNESSES, THESE

6    WITNESSES, HAVE BEEN SEXUAL ASSAULTED BY THIS MAN.

7    THE MAN ALSO STAYED BEHIND US.  BEHIND US.  HE DOESN'T

8    HAVE ANY MORE ARMS, NO LIMBS.  THE GUY ACTUALLY TRIED

9    TO CUT HIS LIMBS OFF AND TRANSPLANT HIS LIMBS.

10            DR. SALONE (PHONETIC), I TOLD HIM ABOUT IT.

11    DR. SALONE OFFICE I WAS ATTACKED, SEXUALLY ATTACKED AS

12    WELL.

13            LAKIAH OLDEN IS SCARED TO DEATH.  SHE IS NOT

14    GOING TO SAY NOTHING.  BUT IF YOU TAKE THE

15    FINGERPRINTS AND TAKE HER SALIVA, THERE IS A -- WHAT

16    DO YOU CALL IT?  WHAT'S THE NAME OF THIS? -- A

17    RECYCLING CENTER RIGHT BY NEWTON STREET, AND THERE IS

18    A TEXACO.

19            MISS OLDEN ORALLY COPULATE THE MAN AT THE

20    TEXACO, AND HE WENT OUTSIDE AND SAID HE SHOT HIMSELF.

21    HE DIDN'T SHOOT HISSELF.  HE WRESTLED WITH STEVE.

22            BEN BIGGS WAS THE GUY SEEN IT AS WELL AS I

23    DID.  IF THEY TAKE THE POLICE, I REMEMBER HIM SAYING,

24    ASK HER WIFE DID YOU JUST HAVE SEX WITH YOUR HUSBAND

25    OR WHATEVER IS THIS, SO THEY KNOW SOMEBODY JUST HAD

26    IT, AND HER SALIVA WAS MORE THAN LIKELY ON THAT MAN.

27            AT THE MOTEL 6 THE FIRST TIME BEFORE I MET

28    HER, BEFORE I COULD REMEMBER THAT I MET HER, THE SAME

1765

1    THING SHE DID TO ME.

2              THESE ARE A BUNCH OF CRIMINALS, WHETHER YOU

3    WANT TO LIKE IT OR BELIEVE IT OR NOT, THE SAME

4    WITNESSES, AND THEY ARE ALL CONNECTED TO STEVE, TO

5    THAT GUY.

6              I KEEP TRYING TO TELL THEM I'LL TAKE A LIE

7    DETECTOR TEST.  THEY CAN DRUG INDUCE ME, ANYTHING.

8    I'M NOT IMAGINING ANYTHING.  I DON'T HEAR VOICES.  AND

9    I'M TELLING YOU THE TRUTH.  IF SOMEBODY WILL

10   INVESTIGATE AND LOOK AT THESE THINGS, THEY WILL FIND

11   OUT WHY IS MR. WILKERSON KEEPS BEING HERE WITH ALL

12   THESE MURDERS?  WHAT'S GOING ON?  WHY DO THE POLICE

13   LET HIM GO?  IT'S NOT HIM DOING IT.  WHY ARE THESE

14   PEOPLE?

15             OVER THERE AT HORTON PLAZA THEY ATTACKED

16   HORTON PLAZA, JUST STRAIGHT ATTACKED HORTON PLAZA.

17   THERE WERE POLICE OFFICERS, BLACK POLICE OFFICERS,

18   WHETHER YOU LIKE IT OR NOT, TOOK THE INFORMATION.

19   WHEN THEY TOOK THE INFORMATION, THEY DIDN'T TURN SOME

20   OF IT IN AND WHATEVER, AND THE ATTACKS WERE BEHIND

21   THIS ONE POLICE OFFICER, A LADY, AN ARROGANT POLICE

22   OFFICER.  THE GUY AT THE OFFICE WAS ATTACKED AND

23   EVERYTHING.  THEY SAID HE WAS LYING.  I COULDN'T

24   REMEMBER.

25        THE COURT:  MR. WILKERSON.  MR. WILKERSON, THE

26   PURPOSE OF THIS HEARING --

27        THE DEFENDANT:  OKAY.

28        THE COURT:  -- IS TO DETERMINE WHETHER OR NOT YOU

1767

1         THE DEFENDANT:  YES.  I'M SAYING NOT JUST MY

2    SENTENCE.  I'M SAYING THAT THE EVIDENCE I HAVE TOLD

3    HIM ABOUT THE MOTEL 6 MURDER OF THE GUY AT THE MOTEL,

4    THAT LAKIAH AND THEM WERE INVOLVED IN, THAT SHOULD

5    HAVE BEEN IN THE MOTION FOR -- WHAT DO YOU CALL IT? --

6    FOR A NEW TRIAL.  BUT THERE IS MORE I'VE GIVEN TO HIM.

7         I TRIED TO GO TO THE POLICE DEPARTMENT.  THEY

8    SAY THEY ONLY SAID A LITTLE BIT.  BUT YOU LISTEN TO

9    THE TAPE AND WHAT THE POLICE INVESTIGATOR SAID THAT I

10   SAID, IF YOU LISTEN TO THE TAPE IT'S A LIE.  HE KNOWS

11   IT'S A LIE.  DO YOU KNOW WHAT I'M SAYING?  SO I MEAN,

12   THIS HAS TO COME OUT IN ORDER FOR ME TO HAVE A FAIR

13   TRIAL.  AND OTHERWISE, WHAT YOU ARE DOING IS TELLING

14   THEM GO AHEAD, YOU GUYS ARE PRETTY SMART, YOU CAN

15   CONTINUE DOING WHAT YOU'RE DOING.  AND DOING THAT,

16   THEY ARE GOING TO FRAME SOMEBODY ELSE, THEY ARE GOING

17   TO DO SOMETHING ELSE.

18         AND I AM NOT SAYING -- I'M JUST SAYING WHAT'S

19   GOING ON IS A LIE AND IT'S JUST A FRAUD.  IT'S A LIE.

20   AND IT CAN BE PROVED, AND NOBODY WANTS TO LISTEN OR

21   INVESTIGATE IT.

22         I TOLD MR. -- MY OTHER, MR. FIELDING, SOME OF

23   THIS STUFF ABOUT GETTING MY PRISON RECORD.  I AM NOT

24   JUST SAYING TODAY THAT MR. HARTLESS WAS KILLED AND

25   THEN YOLANDA JACKSON WAS INVOLVED.  I SAID IT IN

26   PRISON.  AND IT'S RECORDS THAT SHOW MY CONFIDENTIAL

27   FILE.  I ASKED MR. FIELDING TO GET IT.

28         I TOLD HIM TO GET MY RECORDS FROM ST. VINCENT

1779

1    SAN DIEGO, CALIFORNIA; WEDNESDAY, FEBRUARY 26, 2003; 9:06 A.

2                        - 0-

3        (FOLLOWING IS A MARSDEN HEARING WITH THE COURT,

4    DEFENSE COUNSEL, AND DEFENDANT PRESENT.)

5        THE COURT:  MR. WILKERSON, GO AHEAD.

6        THE DEFENDANT:  YES.  I HAVE GIVEN MY ATTORNEY

7    NUMEROUS THINGS, NOTES, MEMORANDUMS, WHATEVER YOU

8    WOULD WANT TO CALL IT, AND TODAY HE STILL DIDN'T BRING

9    THEM.

10            I ALSO WANTED, WHEN WE HAVE THE MARSDEN --

11   NOT MARSDEN.  WHAT WAS THE MOTION?  THE MOTION WAS FOR

12   A NEW TRIAL.  I WANTED WITNESSES TO BE HERE, I ASKED

13   HIM FOR THAT, AND I WANTED THE PROSECUTION WITNESSES

14   HERE, AND IT DIDN'T HAPPEN.

15            SO I FEEL THAT, YOU KNOW, I HAVE A

16   CONSTITUTIONAL GUARANTEED RIGHT TO EVIDENCE AND FOR

17   THEM TO BE HERE, AND THE STUFF THAT I GAVE HIM, HE

18   DOESN'T HAVE IT ALL.  LIKE I GAVE IT TO HIM BEFORE HE

19   HAD THE DEATH IN HIS FAMILY.  SO WHEN HE CAME BACK, I

20   WASN'T SO MUCH TRYING TO PUSH IT ON HIM, BUT STILL I

21   WANTED THAT.  THAT'S THE REASON WHY I GAVE IT TO HIM.

22            AND THERE IS SOME MORE STUFF WHICH I HAVE

23   HERE THAT I WOULD LIKE TO TALK TO A LEGAL ADVISOR AND

24   BEFORE I SAY ANYTHING RIGHT NOW.

25       THE COURT:  MR. WILKERSON, THIS IS YOUR

26   OPPORTUNITY TO BE HEARD, SO IF YOU'VE GOT SOMETHING,

27   YOU BETTER SAY IT.

28       THE DEFENDANT:  OKAY.  BUT I MEAN, I'M SAYING I

1780

1    WOULD LIKE TO REPRESENT MYSELF AND I WOULD LIKE TO,

2    LIKE ANY OTHER PRO PER, TALK TO A LEGAL ADVISOR ON IT.

3        THE COURT:  ALL RIGHT.  MR. BENNETT, DO YOU WISH

4    TO BE HEARD AT ALL?

5        MR. BENNETT:  YOUR HONOR, I HEARD THE COMMENTS

6    MADE BY MR. WILKERSON HERE A MOMENT AGO, AND I

7    RECEIVED OVER THE COURSE OF MY REPRESENTATION OF HIM

8    LOTS OF LETTERS, IF YOU WILL, AND ENVELOPES, IN ANY

9    SIZE OR SHAPE.  I THINK I'VE GOT MOST OF THEM.

10        AND AS FAR AS LAST TIME WANTING WITNESSES

11    SUBPOENAED, I DON'T HAVE A RECOLLECTION OF WHO HE

12    WANTED OR WHATEVER.  I'VE GOT MY NOTES AND THAT'S IT.

13        THE COURT:  ALL RIGHT.

14        MR. BENNETT:  AND --

15        THE COURT:  DID MR. WILKERSON PROVIDE YOU WITH THE

16    MATERIALS THAT WE DISCUSSED IN COURT LAST TIME?

17        MR. BENNETT:  NO.  HE DECLINED TO GIVE IT TO ME

18    LAST TIME IN COURT.  AND I WAS OVER TO SEE HIM

19    YESTERDAY, AND HE SAID HE WOULD HAVE IT HERE WITH HIM

20    IN COURT TODAY.

21        THE COURT:  ALL RIGHT.  IS THERE ANYTHING YOU

22    WANT -- OR LET'S TAKE ONE THING AT A TIME.  AT THIS

23    POINT, MR. WILKERSON, LET ME STATE FOR THE RECORD WHAT

24    I OBSERVED IN COURT AT LEAST ON OUR LAST APPEARANCE.

25        I WATCHED YOU AND LISTENED TO WHAT WAS

26    HAPPENING IN THE COURTROOM.  IT CERTAINLY WAS NO

27    CONFIDENTIAL COMMUNICATION BETWEEN YOURSELF AND YOUR

28    ATTORNEY.  YOU HAD STATED ON THE RECORD ON SEVERAL

1781

1    OCCASIONS IN OUR LAST APPEARANCE THAT THERE WERE

2    MATERIALS THAT YOU WISHED THIS COURT TO CONSIDER IN

3    REGARD TO YOUR SENTENCING HEARING; THAT YOU HAD

4    NUMEROUS NOTES AND PAPERS YOU WANTED YOUR ATTORNEY TO

5    GO THROUGH; THAT HE HAD IN SOME FASHION FAILED YOU IN

6    REFUSING TO GO THROUGH ON YOUR BEHALF.

7            YOU HAD IN YOUR HAND SEVERAL ITEMS THAT YOU

8    HAD REFERRED TO AS THOSE ITEMS WHICH MR. BENNETT HAD

9    NEGLECTED TO REVIEW AND USE FOR PURPOSES OF EITHER A

10   MOTION FOR NEW TRIAL OR A STATEMENT IN MITIGATION, AND

11   WHAT I OBSERVED AT THE END OF OUR LAST PROCEEDING WAS

12   THAT YOU, IN EFFECT, REFUSED, AFTER STATING YOU WERE

13   GOING TO GIVE THOSE TO MR. BENNETT AND AFTER I

14   ENCOURAGED YOU TO COOPERATE TO THE FULLEST WITH HIM,

15   YOU THEN REFUSED TO GIVE HIM THOSE DOCUMENTS, WHICH

16   CAUSES ME TO CONCLUDE, AND I THINK ANY REASONABLE

17   PERSON ON THIS PLANET OR ANY OTHER, LOOKING AT THAT

18   STATE OF AFFAIRS, WOULD CONCLUDE FROM THE NATURE OF

19   YOUR STATEMENTS VERSUS THE NATURE OF YOUR ACTIONS THAT

20   YOU ARE MANIPULATING THE SYSTEM TO AVOID SENTENCING.

21           THAT'S MY CONCLUSION.  YOU WILL NOT BE

22   SUCCESSFUL IN THAT REGARD.

23           MR. BENNETT CONTINUES AS YOUR ATTORNEY OF

24   RECORD.  TODAY IS THE DAY SET FOR SENTENCING.

25           YOU HAVE OCCASIONED, IN EFFECT, THE FACT THAT

26   YOU HAVE NO STATEMENT IN MITIGATION.  THAT IS YOUR

27   DECISION.  TODAY WAS NOT A SURPRISE.  THIS HAS BEEN

28   HANGING FIRE FOR OVER A YEAR.  AND TODAY'S THE DAY FOR

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

```
 1              IT'S INTERESTING TO NOTE THAT AT NO TIME DOES

 2     HE, IN FACT, DENY THE BASIC ALLEGATIONS THAT WERE

 3     BROUGHT FORTH BY THESE YOUNG WITNESSES, AND WITH THAT

 4     IN MIND, I WILL NOT EXCUSE MR. BENNETT.  HE WILL

 5     CONTINUE AS ATTORNEY OF RECORD.

 6              PLEASE ASK COUNSEL TO RETURN FOR A NEW DATE.

 7         THE CLERK:  I'LL HAVE TO PAGE HER.

 8         THE BAILIFF:  I'LL GRAB THE PROBATION OFFICER.

 9         (MARSDEN HEARING CONCLUDES.  GO TO VOLUME 16,

10     PAGE 1771.)

11                          *     *     *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

1          MR. WILKERSON HAS BEEN STUDIED BY A

2    PSYCHOLOGIST AND PSYCHIATRIST ON AT LEAST TWO, IF NOT

3    MORE OCCASIONS.  THEY HAVE FOUND THAT HE IS, IN FACT,

4    COMPETENT.  HOWEVER, THAT DOES NOT MEAN THAT HE

5    DOESN'T HAVE PSYCHOLOGICAL ISSUES, WHICH ARE APPARENT

6    TO THIS COURT.  HE AT LEAST HAS SOME KIND OF CHARACTER

7    DISORDER AS WELL, PERSONALITY DISORDER, AS WELL AS

8    POSSIBLY SOME PSYCHOTIC FEATURES.  BUT I AM NOT A

9    PSYCHOLOGIST AND I AM NOT GOING TO TRY AND DIAGNOSE

10   HIM.

11         WHAT I HAVE OBSERVED, HOWEVER, AS A LAY

12   PERSON, AND I BELIEVE IT TO BE TRUE, IS THAT HE IS

13   EXTRAORDINARILY MANIPULATIVE AND IS ATTEMPTING, IN HIS

14   WAY, TO DELAY THE SENTENCING PROCESS AND TO DELAY THE

15   PROCESS BY WHICH HIS MOTION FOR NEW TRIAL WOULD BE

16   ULTIMATELY RESOLVED.

17         THE EVIDENCE THAT HE OFFERS IS IN THE NATURE

18   OF LOOSE RAMBLINGS THAT ARE NOT PARTICULARLY EASY TO

19   UNDERSTAND, NOR ARE THEY LOGICALLY ORGANIZED IN ANY

20   WAY.  THE NATURE OF THIS NEW INFORMATION IS NOT SUCH

21   THAT IT WOULD REQUIRE A NEW TRIAL.

22         FOR THE MOST PART, IT'S CONCLUSIONARY AND, IF

23   AT ALL, WOULD BE RELEVANT TO THE ISSUE OF CREDIBILITY,

24   BUT IN WHAT WAY CAN'T BE DETERMINED INASMUCH AS THE

25   WITNESSES HE REFERS TO ARE SIMPLY INVOLVED IN VARIOUS

26   AND SUNDRY OTHER CRIMINAL MATTERS IN HIS OPINION.

27         SO AT THIS POINT THE INFORMATION THAT HE IS

28   OFFERING ISN'T RELEVANT TO THIS PROCESS.

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1729

1    OTHER DAY, AND I TOLD HIM, THE PSYCHIATRIST THAT I

2    SEEN THAT HE SENT ME TO.  I JUST LIKE RIGHT NOW CANNOT

3    REMEMBER EVERYTHING ON THESE PAPERS.  I WENT IN THERE

4    AND TOLD HIM SOME THINGS AND I COULDN'T REMEMBER THE

5    MAJORITY OF IT.  THERE IS SOMETHING ABOUT -- I CAN'T

6    EXPLAIN IT.  THAT'S THE BOTTOM LINE.  BUT THE

7    PSYCHIATRIST I'VE BEEN SEEING IN THE JAIL AND THE

8    SOCIAL WORKER, THEY HAVE VERIFICATION I'VE BEEN SAYING

9    THIS, AND I NEVER THOUGHT TO EVEN TELL HIM TILL THE

10    OTHER DAY.  I DON'T KNOW WHAT TO SAY.

11        THE COURT:  MR. BENNETT, WHAT EXACTLY ARE YOU

12    ASKING THIS COURT TO DO?

13        MR. BENNETT:  I'M ASKING THE COURT ON BEHALF OF

14    MR. WILKERSON TO, ONE, ORDER THE DEFENDANT EXAMINED

15    BEFORE WE GO MUCH FURTHER.  HE HAS BEEN EXAMINED BY A

16    JAIL PSYCHIATRIST, AND APPARENTLY, I AM RECEIVING THIS

17    INFORMATION FROM HIM YESTERDAY AFTERNOON THAT HE HAD

18    NOT TOLD A PSYCHIATRIST PREVIOUSLY, DR. MACSPEIDEN,

19    INFORMATION THE JAIL PSYCHIATRIST TOLD HIM HE SHOULD

20    WRITE DOWN AND GIVE DR. MACSPEIDEN.

21        THIS IS SOME OF THE DOCUMENTS HE WROTE DOWN

22    AND PRESENTED TO ME -- YESTERDAY?

23        THE DEFENDANT:  YES.  BUT THERE IS MORE THAT I

24    HAVE BEEN GIVEN TO MR. FIELDING, TO ALL OF THEM AS HE

25    GOES ON, AND NOBODY HAS PRESENTED IT TO YOU.

26        YOU TOLD ME BEFORE, WELL, THERE WILL COME A

27    TIME I'LL LET YOU PRESENT IT, BUT NOW THAT'S WHAT I AM

28    TRYING TO DO.

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1728

1    OFF AND LEFT WITH THE GUY.  AGAIN, THIS STEVE GUY.

2              THEY SAID THAT THEY WERE AFRAID OF ME, THAT

3    THEY WERE SCARED TO DEATH.  BUT NOW THAT I SEE THESE

4    THINGS, HOW CAN THAT BE THAT THEY WERE IN THERE BEING

5    AFRAID?  HOW COULD IT BE THAT THEY COULDN'T GO NOWHERE

6    OR DIDN'T?  WHAT WAS GOING ON IS I WAS BEING A VICTIM.

7              AND THE STORIES IN THE OPENING BRIEF,

8    MRS. ROBINSON SAYS THAT THE GIRLS SAID THAT THEY WERE

9    THREATENED THESE TIMES.  ERIKA SAID ONE TIME SHE HEARD

10   A THREAT.  THAT THREAT CAME ONLY AFTER I WAS BEATEN UP

11   AND THEN I DIDN'T EVEN REMEMBER ANYMORE.

12             BUT SHE MAKES IT APPEAR TO YOU AND TO THE

13   JURY THAT THEY ARE SEEING IT.  BUT IN THE TRANSCRIPTS,

14   I FOUND IT IN THERE THAT IT'S NOT THEY, IT'S LAKIAH

15   OLDEN SEEING IT.  IT'S NOT COLLABORATED AS SHE SAYS IN

16   THE OPENING BRIEF.  AND THERE IS A WHOLE BUNCH MORE.

17             NOW, WHEN I COME TO RIGHT HERE, I JUST GET

18   WHERE I LOSE THOUGHT OF IT.  I JUST CAN'T KEEP IT ALL

19   IN FOCUS IN MY MIND NOW.  BUT I WROTE IT DOWN TO MAKE

20   SURE THAT I COULD, AND YOU VIEWING THIS WILL SEE THAT

21   WHAT SHE HAS SAID IN TRIAL AND WHAT WAS PUT IN TRIAL

22   IS NOT TRUE EVEN BY THEIR ADMISSION, NOT BY MINE.

23             I DON'T KNOW WHAT ELSE TO SAY TO YOU OTHER

24   THAN THAT.

25        THE COURT:  ALL RIGHT.  MR. BENNETT.

26             HAVE YOU BEEN EXAMINED BY A PSYCHIATRIST IN

27   THE LAST COUPLE DAYS?

28        THE DEFENDANT:  I HAVE SEEN A PSYCHIATRIST THE

```
 1    SAN DIEGO, CALIFORNIA; WEDNESDAY, FEBRUARY 26, 2003; 9:05 A.

 2                          - 0 -

 3         (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

 4    COURT.)

 5         THE COURT:  IN THE WILKERSON MATTER, I'D NOTE FOR

 6    THE RECORD THE PRESENCE OF BOTH COUNSEL AND THE

 7    DEFENDANT.

 8              THIS MORNING I RECEIVED A PLEADING,

 9    HANDWRITTEN, FROM MR. WILKERSON, WHICH READS AS

10    FOLLOWS:

11              "MOTION FOR LOPEZ WAIVER, CASE TO THE

12              CLERK OF THE COURT.  PLEASE BE ADVISED

13              THAT MICHAEL WILKERSON AM MAKING A

14              FORMAL MOTION FOR A LOPEZ WAIVER TO

15              REPRESENT MYSELF IN PRO PER."

16              ALL RIGHT.  DO YOU WISH TO BE HEARD ON THAT?

17         THE DEFENDANT:  YES.

18         THE COURT:  MR. WILKERSON.

19              DEPUTY DISTRICT ATTORNEY, STEP OUTSIDE.  I'LL

20    TREAT IT AS A MARSDEN MOTION.

21         MR. BENNETT:  ME TOO?

22         THE COURT:  NO, YOU STAY.

23         (THE DEPUTY DISTRICT ATTORNEY LEFT THE COURTROOM.)

24         (A MARSDEN HEARING WAS HELD, PAGE 1779 THROUGH

25    1782 PER COURT ORDER.)

26    /////

27    /////

28    /////
```

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

```
 1        THE DEFENDANT:  I COULD NOT RECALL WHAT HAPPENED.
 2     THE SAME INDIVIDUAL WHO TOOK OVER THE JAIL WAS THERE
 3     AGAIN.
 4     WHEN I LEFT OUT, THE DISTRICT ATTORNEY KILLED
 5     HISSELF.  THIS IS HOW YOU WILL BE ABLE TO FIND ABOUT
 6     IT, I BELIEVE.  IF HE DIDN'T KILL HISSELF, THEN THE
 7     INDIVIDUAL KILLED HIM.  I DID NOT HAVE RECOLLECTION.
 8     THE SITUATION CREATED WHERE THEY STARTED
 9     PUTTING, YOU KNOW, THE BARS OR WHATEVER YOU CALL THEM,
10     YOU KNOW -- WHAT DO YOU CALL IT?  THE METAL DETECTORS.
11     THEY DIDN'T HAVE METAL DETECTORS BEFORE THAT.  THAT
12     SITUATION CREATED THAT.  THEY PUT THEM THERE
13     AFTERWARDS.
14     AFTER WE WENT ON, THEY SEARCHED ME AND ALL
15     THAT AND THEY LET ME GO.
16     I COULD NOT RECALL.  POLICE CAME TO ME AND
17     SAYS I KNOW YOU KNOW SOMETHING.  CALLED ME PIECES OF
18     CRAP AND EVERYTHING BECAUSE THEY THOUGHT THAT I KNEW.
19     I DID SEE THAT SITUATION, AND THAT SITUATION DID
20     HAPPEN TO ME, BUT I DID NOT REMEMBER.
21     BUT I AM GOING TO GO ON, AND THE THINGS THAT
22     I HAVE SAID I GAVE TO MY LAWYER.
23     I CAN'T GET ON THE PHONE AND CALL TO FIND OUT
24     THESE THINGS.
25     AT THE MOTEL AT EL CAMINO MOTEL, THE OWNER
26     WAS KILLED WHILE ME, ERIKA, AND LAKIAH WAS THERE.  IT
27     CAN BE VERIFIED, I HAVE THE NUMBER FOR YOU.
28     THE POLICE CAME AGAIN.  I GOT BEAT UP.  ERIKA
```

1    HELPED ME OFF THE GROUND.  I DID NOT REMEMBER THIS

2    DURING THE TRIAL.  THIS CAN BE VERIFIED.

3         ERIKA TELLS ME --

4         THE COURT:  WAIT A MINUTE.  YOU WERE BEATEN UP BY

5    THE POLICE?

6         THE DEFENDANT:  NO.  BY THESE INDIVIDUALS.

7         THE COURT:  WHAT INDIVIDUALS?  WHAT ARE YOU

8    TALKING ABOUT?

9         THE DEFENDANT:  AT THE EL CAMINO MOTEL, THE MOTEL

10   THAT WAS HELD IN THE TRIAL.

11        PLEASE TRY TO HEAR ME OUT.  DON'T DRAW NO

12   PRESUPPOSED THOUGHTS AND YOU ARE GOING TO UNDERSTAND.

13        THE COURT:  I AM NOT, BUT I AM GOING TO INTERRUPT

14   YOU JUST BECAUSE IF I DON'T UNDERSTAND WHAT YOU ARE

15   SAYING, THEN I REALLY CAN'T CONSIDER IT.  OKAY?

16        THE DEFENDANT:  OKAY.  I UNDERSTAND.

17        THE COURT:  WHAT I WANT YOU TO DO IS TAKE A DEEP

18   BREATH.  IT'S VERY CLEAR TO ME THAT YOU ARE VERY

19   NERVOUS.

20        THE DEFENDANT:  BECAUSE OF WHAT HAPPENED.

21        THE COURT:  BE QUIET FOR JUST A MINUTE.  THANK

22   YOU.

23        THE DEFENDANT:  OKAY.

24        THE COURT:  TAKE A DEEP BREATH.  OKAY.  NOW YOU

25   CAN START, BUT I NEED YOU TO BE MORE SPECIFIC AS TO

26   WHO DID WHAT TO WHOM AND HOW IT AFFECTED YOUR CASE.

27        THE DEFENDANT:  OKAY.

28        THE COURT:  BECAUSE WHAT YOU ARE TELLING ME ARE A

1725

1    LOT OF CONCLUSIONS BUT IT'S HARD FOR ME TO FOLLOW.

2    REMEMBER, I WASN'T THERE, SO I DON'T KNOW WHAT

3    HAPPENED.  OKAY?

4        THE DEFENDANT:  OKAY.  THIS IS THE SAME GUY AGAIN

5    THAT WAS AT THE COURTHOUSE THAT'S AT EL CAMINO MOTEL.

6    THIS GUY IS ERIKA'S BOYFRIEND.  HE IS LAKIAH'S

7    STEPDADDY, AND HE IS AT THE EL CAMINO MOTEL.

8            THERE IS NOBODY ELSE KNEW THAT WE WERE AT THE

9    EL CAMINO MOTEL.  THAT GUY, WHATEVER, THAT OWNER,

10   MR. MCGOWAN, HE WAS TOOKEN TO JAIL, THE ONE THAT SAYS

11   YES, THAT'S HIM, I SEEN TWO AFRICAN-AMERICAN GIRLS

12   WITH HIM.  ERIKA'S NOT AFRICAN-AMERICAN.  SHE LOOKS AS

13   A MEXICAN.  HE WAS TOOKEN TO JAIL AND HE TOOK SOME

14   PLEA BARGAIN.  DURING THE TRIAL I COULD NOT REMEMBER

15   THIS.  THIS CAN BE VERIFIED WHAT I'M SAYING.

16       THE COURT:  WELL, WAIT A MINUTE.  WHO WAS KILLED

17   AT THE MOTEL?

18       THE DEFENDANT:  THE OWNER OF THE MOTEL.

19       THE COURT:  ARE YOU SAYING THAT THIS GUY KILLED

20   HIM?

21       THE DEFENDANT:  EXACTLY.  IN THE FRONT THERE IS A

22   BAR.  YOU CAN LAUGH, BUT IF YOU CALL, I HAVE THE

23   NUMBER HERE, YOU CAN FIND OUT WHAT I'M SAYING IS NOT

24   EXAGGERATED OR NOTHING.  I HAVE TOLD MY LAWYER.

25           NOBODY GOES FIND OUT.  ALL THEY DO IS LOOK

26   AND WHATEVER, BUT NOBODY IS FINDING OUT.

27       THE COURT:  JUST DON'T GET EMOTIONAL BECAUSE I AM

28   GOING TO ASK YOU THESE QUESTIONS.  OKAY?  ALL RIGHT.

```
 1            YOU ARE SAYING THAT YOU STAYED AT THE MOTEL?
 2       THE DEFENDANT:  EXACTLY.
 3       THE COURT:  AND YOUNG WOMEN WHO WERE WITH YOU --
 4       THE DEFENDANT:  YES.
 5       THE COURT:  -- ONE OF THEM HAD A RELATIVE WHO CAME
 6  TO THE MOTEL?
 7       THE DEFENDANT:  HE WAS A STEPDAD, BUT HE WAS THE
 8  OTHER GIRL'S BOYFRIEND.
 9       THE COURT:  OKAY.  SO HE CAME TO THE HOTEL.  AND
10  THEN WHAT HAPPENED?
11       THE DEFENDANT:  AS I WAS WALKING TO THE MOTEL,
12  THEY JUMPED ME, ROBBED ME.  POLICE CAME --
13       THE COURT:  "THEY" BEING?
14       THE DEFENDANT:  THEY BEING, AGAIN, THE SAME GUY.
15  THE GUY'S NAME IS STEVE.  SO WHEN I SAY STEVE.
16       THE COURT:  OKAY.
17       THE DEFENDANT:  STEVE AND THE OTHER PEOPLE WITH
18  HIM ROBBED ME, BUT THEY ALSO HAD ROBBED AND KILLED THE
19  OWNER OF THE MOTEL WHILE THE -- WE WERE THERE, AT THE
20  DATE AND TIME THAT WE WERE AT THE MOTEL.
21            THE POLICE CAME AND ASKED ME.  I HAD NO
22  RECOLLECTION OF WHAT HAPPENED.
23       THE COURT:  OKAY.  BUT WHAT WOULD THAT HAVE TO DO
24  WITH WHETHER OR NOT YOU WERE STAYING AT THE MOTEL WITH
25  THE YOUNG GIRLS?
26       THE DEFENDANT:  OKAY.  I AM SAYING I DID STAY
27  THERE, BUT I'M SAYING THAT THEY SAID THAT THEY LEFT
28  BECAUSE THEY WERE BEAT UP OR LAKIAH WAS BEAT UP.
```

Case 3:08-cv-00857-WQH-PCL    Document 3    Filed 07/10/2008    Page 81 of 157

1727

1       THE POLICE OFFICER TALKED TO THEM.  THERE WAS

2   NO MARKINGS OR ANYTHING ON HER.  ALSO, THEY HAD LEFT

3   AND WENT WITH THOSE GUYS.  THEY WASN'T WITH ME.

4       DO YOU UNDERSTAND WHAT I'M SAYING?

5     THE COURT:  OKAY.  GO AHEAD.

6     THE DEFENDANT:  THERE IS A NUMBER OF GROUP OF

7   OTHER THINGS.  I HAVE GIVEN THE LIST TO MY ATTORNEY

8   BECAUSE I HAVE A PROBLEM OF TRYING TO REMEMBER ALL

9   THIS, BUT THIS IS ANOTHER KEY THING ABOUT IT.

10      THAT MONICA RYAN, LAKIAH OLDEN'S MOTHER, WENT

11  TO THE HOSPITAL FOR THE SAME TYPE OF THING FROM THE

12  SAME GUY, WHICH SHE COULD NOT REMEMBER.

13      I TOLD MY ATTORNEY THAT THIS MAN HAS

14  ABILITIES --

15     THE COURT:  STEVE?

16     THE DEFENDANT:  STEVE -- TO HYPNOTIZE PEOPLE.  I

17  PUT THE THING ON THERE, AND EVERY VICTIM THAT HE'S

18  EVER HAD HAS THE SAME CONCLUSION.  AND IT'S JUST I'VE

19  GIVEN IT ALL TO MY ATTORNEY TO GIVE TO YOU, HOPING

20  THAT WHEN WE CAME HERE, THAT IT WOULD BE GIVEN TO YOU

21  SO THAT YOU CAN VIEW IT AND SEE IF IT'S VERIFIED OR

22  WHAT.

23      NO ONE'S VERIFIED IT.  NO ONE'S -- BECAUSE I

24  CAN'T REMEMBER IT ALL.  BUT EVERYTHING I HAVE SAID IS

25  DOCUMENTED BY SOME POLICE OR SOMETHING.  IT'S NOTHING

26  THAT I'VE MADE UP.

27      AND THERE IS ALSO AT THE TEXACO OVER BY THE

28  NEWTON, THERE WAS A ROBBERY.  IT'S IN THERE.  LAKIAH

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1800

```
 1          WE ARE OFF THE RECORD AT THIS POINT.

 2     (RECESS.)

 3     THE COURT:  LET'S GO ON THE RECORD.  AT THIS POINT

 4  AS THE RECORD STANDS, IT'S 57 YEARS, SIX MONTHS.

 5     MR. BENNETT:  DEFENDANT ASKS THAT THE MATTER BE

 6  INVESTIGATED WHETHER THE JURY FOREMAN WAS --

 7     THE DEFENDANT:  WHETHER HE HAD A CITATION ON

 8  EUCLID AND ORANGE, AND I WAS THERE.  THAT'S ALL I ASK.

 9     THE COURT:  ALL RIGHT.  AGAIN, I THINK THIS

10  HEARING HAS CONCLUDED.  THE MATTER IS UNTIMELY BROUGHT

11  BEFORE THIS COURT.  NO FURTHER ACTION WILL BE TAKEN.

12          COURT'S IN RECESS.

13     (PROCEEDINGS CONCLUDED.)

14     (TIME NOTED:  9:59 A.M.)

15                    *    *    *

16

17

18

19

20

21

22

23

24

25

26

27

28
```

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1784

1    MS. ROBINSON:  YOUR HONOR, I JUST WOULD ASK THE

2    COURT TO FOLLOW THE PROBATION OFFICER'S

3    RECOMMENDATION, AND AT THE TIME THE PROBATION

4    OFFICER'S REPORT WAS WRITTEN, THE STRIKE ALLEGATION

5    HAD NOT YET BEEN DETERMINED, SO THE PROPOSED SENTENCE

6    WAS NOT DOUBLED AS IT IS LAWFULLY REQUIRED TO DO SO

7    WHEN A STRIKE IS ALLEGED AND PROVEN.  THAT STRIKE HAS

8    BEEN ALLEGED AND PROVEN, AND SO I ASK THE COURT TO

9    FOLLOW THE PROBATION OFFICER'S REPORT AND HAVE IT

10   DOUBLED FOR A TERM OF -- ACCORDING TO THE PROBATION

11   OFFICER'S REPORT IT'S 51 YEARS, EIGHT MONTHS.

12           BY MY CALCULATIONS, THE TOTAL --

13       THE COURT:  THAT'S BEFORE IT'S DOUBLED.

14       MS. ROBINSON:  CORRECT.  I'M ASKING THE COURT TO

15   APPLY THE STRIKE PRIOR, NOT TO STRIKE THE STRIKE

16   PRIOR, AND TO DOUBLE IT.

17           THIS MAN'S A PREDATOR.  HE'S TAKEN ADVANTAGE

18   OF THE FEMALES THAT ARE IN NEED AND ARE LOOKING TO

19   SURVIVE, RUNAWAYS, HOMELESS WOMEN WITH CHILDREN.  HE

20   TAKES THEM IN, HE TREATS THEM LIKE HIS OWN PERSONAL

21   PROPERTY.  NOT ONLY DOES HE MANIPULATE THEM, BUT HE

22   COMMITS ACTS OF EXTREME VIOLENCE WITH THEM AND THEN

23   DISCARDS THEM LIKE PROPERTY.  THERE ARE NO MITIGANTS.

24   THERE IS NOTHING TO SUPPORT ANYTHING OTHER THAN THE

25   MAXIMUM SENTENCE.

26           HE HAS LED A CONTINUOUS LIFE OF CRIME SINCE

27   HE WAS A TEENAGER, AS EVIDENCED BY HIS MULTIPLE,

28   ONGOING PRIORS.  HE HAS EXHIBITED CRIMES OF VIOLENCE

1    THAT PARTICULAR ISSUE.

2         MR. BENNETT:  SUBMIT IT, YOUR HONOR.

3         THE COURT:  SO LET'S GO FORWARD, THEN, WITH OUR

4    MOTION FOR NEW TRIAL.

5              MR. BENNETT, DO YOU WISH TO BE HEARD IN THAT

6    REGARD?

7         MR. BENNETT:  BEFORE PROCEEDING, YOUR HONOR,

8    MR. WILKERSON HAS INDICATED THAT HE DESIRES FOR

9    PERMISSION OF THE COURT TO ADDRESS THE COURT.

10        THE COURT:  ALL RIGHT.  MR. WILKERSON, GO AHEAD,

11   SIR.

12        THE DEFENDANT:  MISS HAYES, YOUR HONOR, THERE ARE

13   SOME THINGS THAT HAVE CAME TO MY MIND.  YOU SAID THAT

14   IF I COULD PROVE THAT I HAD A MEMORY PROBLEM.  THIS

15   WILL TAKE AT LEAST FIVE OR TEN MINUTES, AND I ASK YOU

16   JUST TO HEAR IT OUT, AND YOU WILL UNDERSTAND AND YOU

17   WILL SEE AND YOU CAN VERIFY WITH A PHONE CALL WITH

18   AUTHORITIES THAT I HAVE HAD A MEMORY PROBLEM AND YOU

19   WILL UNDERSTAND WHY.

20             I WAS AT THE CHULA VISTA COURTHOUSE.  WHILE

21   BEING AT THE CHULA VISTA COURTHOUSE, SOMEONE TOOK OVER

22   THE COURTHOUSE.  TWO INDIVIDUALS THAT I KNOW OF.  IT

23   WAS THE THIRD OR FOURTH, I DON'T KNOW WHO THEY WERE.

24   WHILE I WAS THERE, I AND A LADY WAS ABDUCTED.  WHILE

25   WE WERE, THE DISTRICT ATTORNEY CAME UP TO THE TOP

26   FLOOR.  WHILE HE CAME UP TO THE TOP FLOOR, HE WAS

27   TRYING TO NEGOTIATE LETTING US GO OR WHATEVER.  I WAS

28   THERE.  I WAS ASSAULTED.

1722

1          AFTERWARDS --

2          THE COURT:  OKAY.  NOW, WHEN WAS THIS?

3          THE DEFENDANT:  YOU WOULD HAVE TO CALL.  I TOLD MY

4     LAWYER ABOUT IT.  I DON'T HAVE ACCESS TO A PHONE.

5          THE COURT:  MR. WILKERSON, LISTEN TO ME.  I AM NOT

6     GOING TO HOLD YOU TO SOME HYPERTECHNICAL STANDARD.

7     I'M JUST ASKING YOU WAS IT YESTERDAY OR --

8          THE DEFENDANT:  IT'S IN THE PAST.

9          THE COURT:  BY YEARS?  YEARS AGO?

10         THE DEFENDANT:  YES.

11         THE COURT:  MAYBE FIVE, TEN YEARS AGO?

12         THE DEFENDANT:  MORE THAN THAT PROBABLY.

13         THE COURT:  OKAY.

14         THE DEFENDANT:  SOMEONE CAN VERIFY IT THROUGH THE

15    DISTRICT ATTORNEY'S OFFICE BECAUSE IT WAS THE HEAD

16    DISTRICT ATTORNEYS.

17         THE COURT:  OKAY.

18         THE DEFENDANT:  I WAS IN HIS OFFICE BECAUSE HE HAD

19    CALLED ME AGAIN ABOUT THE INCIDENT.  I HAD NO

20    RECOLLECTION OF IT.

21         THE COURT:  YOU WERE IN WHOSE OFFICE?

22         THE DEFENDANT:  THE DISTRICT ATTORNEY.  THE SAME

23    DISTRICT ATTORNEY THAT TRIED TO NEGOTIATE THE

24    SITUATION.

25         THE COURT:  NOW, YOU ARE TALKING ABOUT THE

26    SITUATION BACK THEN?

27         THE DEFENDANT:  YES.

28         THE COURT:  OKAY.

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

1763

1    TIME I WENT TO COURT.  EVERY TIME, I KEEP TELLING HIM,

2    AND IT'S MORE AND MORE.  BUT THESE THINGS ARE

3    DOCUMENTED.'

4            AND IF THESE THINGS ARE NOT PRESENTED TO YOU,

5    THAT'S WHY MY CASE IS, YOU KNOW, WELL, JUST LET'S GET

6    ON WITH THE SENTENCING.

7            BUT EVERY SINGLE PERSON THAT THE D.A. HAS FOR

8    A WITNESS IS BASICALLY A MURDER PARTICIPANT.  THEY ALL

9    ARE CONNECTED WITH THIS ONE GUY, AND IT CAN BE FOUND

10   BY THE POLICE RECORDS.

11           HE HAD TOLD ME THAT HE WAS GOING TO TELL YOU

12   ABOUT SOME OCCURRENCES AND WE WOULD GET AN

13   INVESTIGATION, BUT YOU STOPPED THAT.  SO WHEN YOU

14   STOPPED THAT, ALL WE ARE DOING IS OVERRIDING THIS.

15   I'M GOING TO GO TO PRISON, THEY ARE GOING TO KILL ME,

16   AND THEN IT'S SHUT DOWN, AND THEN EVERYBODY, IF IT

17   COMES UP ON THEM, WILKERSON DID IT.  AND I CAN'T SIT

18   HERE AND ALLOW THAT.

19           AT LEAST PROBABLY ABOUT 25, 26 PAGES THERE.

20   I HAVE ALWAYS KEPT TRYING TO GIVE YOU THE PAPERWORK TO

21   SHOW YOU THINGS.  I'M SORT OF GLAD THAT IT DIDN'T

22   HAPPEN AND WE CAME TO THIS POINT, BECAUSE NOW MORE HAS

23   CAME TO MY MIND.

24           THERE ARE SO MANY MURDERS IN MY MIND, AND YOU

25   SAID THAT MR. ECHOLS, YOU DIDN'T BELIEVE THAT ABOUT

26   HIM?  THERE IS A PLACE OUT THERE ON 13TH STREET IN

27   IMPERIAL BEACH AT -- WHAT DO YOU CALL IT? -- A LIQUOR

28   STORE.  MR. ECHOLS GAVE THAT SAME GUY THAT'S

1    SINCE HE WAS A TEENAGER.  HE HAS MADE A CHOICE NOT TO

2    CONFORM TO THE RULES OF SOCIETY.

3            THERE IS NO DOUBT IN MY MIND THAT IF HE'S

4    ALLOWED OUT OF JAIL, OUT OF PRISON AT SOME POINT, HE

5    WILL CONTINUE ON WITH HIS LIFE OF CRIME, AND SOCIETY

6    WILL BE PLACED AT DANGER AGAIN.

7            I ASK THE COURT TO IMPOSE THE FULL-TERM

8    CONSECUTIVE SENTENCES, PLUS THE COURT ALSO ASKED ME TO

9    DO AN ANALYSIS OF THE PRISON PRIOR.  I DID SO AND

10   SUBMITTED A SUPPLEMENTAL.  THAT AUTHORIZES AN

11   ADDITIONAL FIVE YEARS.

12       THE COURT:  THAT'S THE NICKEL PRIOR.

13       MS. ROBINSON:  CORRECT.

14       THE COURT:  ALL RIGHT.  MR. BENNETT.

15       MR. BENNETT:  YES, YOUR HONOR.  MR. WILKERSON JUST

16   HANDED ME TWO PACKAGES OF PAPERS, AND YESTERDAY HE

17   INDICATED HE WOULD LIKE TO READ THESE PAPERS TO THE

18   COURT OR ADDRESS THE COURT WITH THEM AND BE HIS

19   COUNSEL FOR THIS HEARING, AND I WOULD SUGGEST THAT

20   SINCE HE KNOWS WHAT HE IS TRYING TO DO, THAT THE COURT

21   PERMIT HIM TO DO THIS IN ANSWER TO THE DISTRICT

22   ATTORNEY'S --

23       THE COURT:  HERE'S WHERE WE ARE, MR. BENNETT.  AS

24   ATTORNEY OF RECORD, I'LL ASK YOU TO REVIEW THOSE

25   MATERIALS, TO ADVISE MR. WILKERSON AS TO THE PROPRIETY

26   OF HIS MAKING COMMENTS.

27           IF HE WISHES TO DO THAT, HE HAS A RIGHT OF

28   ALLOCUTION AND CAN BE HEARD, BUT I WOULD ASK YOU FIRST

1786

1    TO, IF YOU WOULD, ACT AS A FILTER FOR THOSE MATERIALS

2    SO HE DOES NOT INADVERTENTLY WORSEN HIS SITUATION.

3        MR. BENNETT:  YES, YOUR HONOR.  RIGHT NOW?

4        THE COURT:  RIGHT NOW.  TAKE YOUR TIME.  THIS IS

5    NOT A RUSH TO JUDGMENT.

6        (RECESS.)

7        THE COURT:  ALL RIGHT, MR. BENNETT, ADVISE THE

8    COURT WHEN YOU ARE FINISHED.  I AM GOING TO LEAVE THE

9    BENCH FOR A MINUTE.

10        MR. BENNETT:  EXCUSE ME, YOUR HONOR?

11        THE COURT:  LET THE CLERK KNOW WHEN YOU ARE

12    FINISHED, MR. BENNETT.

13        MR. BENNETT:  THANK YOU.

14        THE COURT:  THANK YOU.

15        (RECESS.)

16        THE COURT:  MR. BENNETT, DO YOU WISH TO BE HEARD?

17        MR. BENNETT:  VERY BRIEFLY, YOUR HONOR.  I HAVE

18    READ THE PAPERS THAT MR. WILKERSON HANDED TO ME, AND

19    IT IS A RENDITION OF ACCUSATIONS AGAINST HIS FORMER

20    FRIEND, HER MOTHER, AND SAID THAT HE HAD BEEN BEATEN

21    AND THINGS OF THIS NATURE.  AND I'M TRYING TO FIGURE

22    OUT HOW THIS APPLIES TO THE MITIGATION, IF YOU WILL.

23    AND HE FEELS THAT HE WAS JUST ABUSED.

24        SO I THINK FOR HIM TO COMMUNICATE -- HE

25    HASN'T COMMUNICATED TO ME, SO FOR HIM TO COMMUNICATE,

26    IT WOULD BE BEST FOR HIM TO COMMUNICATE DIRECTLY TO

27    THE COURT.

28        THE COURT:  GO AHEAD, MR. WILKERSON.

                    *PAM DENNIS-LARA, RMR, CSR NO. 8662*

1717

```
 1    DOCUMENTS THEMSELVES, NO.
 2        MR. BENNETT:  NOTHING FURTHER.
 3        THE COURT:  ANYTHING FURTHER OF THIS WITNESS?
 4        MS. ROBINSON:  NO, YOUR HONOR.
 5        THE COURT:  THANK YOU, SIR.  YOU MAY STEP DOWN.
 6        THE WITNESS:  THANK YOU.
 7        THE COURT:  ADDITIONAL WITNESSES FOR THE PEOPLE?
 8        MS. ROBINSON:  NO, YOUR HONOR.
 9        THE COURT:  GO AHEAD.
10        MS. ROBINSON:  PEOPLE WOULD ASK TO HAVE ITEMS 1
11    THROUGH 6, WHICH ARE CERTIFIED COPIES OF THE DOCUMENTS
12    DESCRIBED, ADMITTED TO EVIDENCE PURSUANT TO PUBLIC
13    RECORDS EXCEPTION OF THE HEARSAY RULE.
14        THE COURT:  ANY OBJECTION?
15        MR. BENNETT:  YES, YOUR HONOR.  I HAVE NOT SEEN AN
16    OFFER OF PROOF AS TO WHAT THESE DOCUMENTS -- WHAT THE
17    RELEVANCE IS OF THESE DOCUMENTS.
18        THE COURT:  ALL RIGHT.  LET ME SEE THE DOCUMENTS,
19    PLEASE.
20            YOUR RESPONSE?
21        MS. ROBINSON:  YOUR HONOR, THEY SUPPORT AND PROVE
22    UP THE PRIOR STRIKE CONVICTION OF THE DEFENDANT, WHICH
23    IS ALLEGED IN THE INFORMATION.  SPECIFICALLY, IF THE
24    COURT WOULD LOOK AT ITEM 4, IT IS A CERTIFIED COPY OF
25    A PRISON PRIOR THAT THE DEFENDANT SUFFERED, SHOWING
26    THAT HE WAS CONVICTED OF ARMED ROBBERY WITH A
27    SAWED-OFF SHOTGUN.  THERE WAS A FINGERPRINT CONTAINED
28    ON THAT ITEM NUMBER 4 WHICH WAS EXAMINED BY MR. BOVE
```

1718

1    AND COMPARED WITH ALL THE OTHER DOCUMENTS THAT WERE

2    RECEIVED BY THE COURT, AND IN COMPARING ALL OF THE

3    DOCUMENTS, WE CAN SHOW THAT HE SUFFERED THAT PRIOR

4    CONVICTION AND IT COMPARES AND IS IDENTICAL TO THE

5    FINGERPRINTS WHICH MR. WILKERSON SUBMITTED IN THE

6    BOOKING PRINTS, BOOKING SHEET FOR THE CASE THAT HE --

7    THAT IS CURRENTLY BEFORE THE COURT.

8        THE COURT:  ALL RIGHT.  ANYTHING FURTHER ON THAT

9    ISSUE?

10        MR. BENNETT:  NOTHING FURTHER.

11        THE COURT:  ALL RIGHT.  IT DOES APPEAR THAT THESE

12   ARE CERTIFIED RECORDS.  AND THEY ARE OFFICIAL RECORDS

13   RELATING TO THE INCARCERATION OF THIS DEFENDANT AT THE

14   PRESENT TIME, IN OTHER WORDS, ON THESE CHARGES, AS

15   WELL AS INCARCERATION ON PREVIOUS CHARGES THAT ARE

16   ALLEGED IN THE INFORMATION TO CONSTITUTE A STRIKE, AS

17   WELL AS THE PRISON PRIOR.  AND SO THESE DOCUMENTS ARE

18   RELEVANT, SO 1 THROUGH 6 ARE RECEIVED.

19        (PEOPLE'S EXHIBIT 1, CERTIFIED COPY OF BOOKING AND

20   PROPERTY RECORD, NUMBER 01-123282A, RECEIVED INTO

21   EVIDENCE.)

22        (PEOPLE'S EXHIBIT 2, CERTIFIED COPY OF BOOKING AND

23   PROPERTY RECORD, NUMBER 00-121593A, RECEIVED INTO

24   EVIDENCE.)

25        (PEOPLE'S EXHIBIT 3, CERTIFIED COPY OF BOOKING AND

26   PROPERTY RECORD, NUMBER 99-170442A, RECEIVED INTO

27   EVIDENCE.)

28        (PEOPLE'S EXHIBIT 4, CERTIFIED COPY OF BOOKING

*PAM DENNIS-LARA, RMR, CSR NO. 8662*

```
1    CARD PRINTS, DATED 2-13-73, RECEIVED INTO EVIDENCE.)
2         (PEOPLE'S EXHIBIT 5, DEPARTMENT OF CORRECTIONS
3    DOCUMENTS, CDC NO. B93352, RECEIVED INTO EVIDENCE.)
4         (PEOPLE'S EXHIBIT 6, DEPARTMENT OF CORRECTIONS
5    DOCUMENTS, CDC NO. J79494, RECEIVED INTO EVIDENCE.)
6         MR. BENNETT:  THANK YOU.
7         THE COURT:  ANYTHING FURTHER FROM THE PEOPLE?
8         MS. ROBINSON:  ON THIS ISSUE, NO, YOUR HONOR.
9         THE COURT:  AFFIRMATIVE EVIDENCE FROM THE DEFENSE
10   AT THIS TIME?
11        MR. BENNETT:  NONE, YOUR HONOR.
12        THE COURT:  VERY WELL.  ARGUE OR SUBMIT?
13        MS. ROBINSON:  SUBMIT, YOUR HONOR.
14        MR. BENNETT:  SUBMIT.
15        THE COURT:  ALL RIGHT.
16        (THE COURT REVIEWS EXHIBITS.)
17        THE COURT:  ALL RIGHT.  I HAVE NOW REVIEWED THE
18   INFORMATION TO LOOK AT THE DATES AND THE NATURE OF THE
19   PRIORS CHARGED.  I HAVE NOW HAD AN OPPORTUNITY TO
20   EXAMINE 1 THROUGH 6.  I HAVE CHECKED THE DATES, THE
21   COUNTY ALLEGED, AND THE NATURE OF THE CRIME, AS WELL
22   AS THE DEPARTMENT OF CORRECTIONS RECORD TO SEE IF THE
23   DEFENDANT WAS SENT TO STATE PRISON AND HAS FAILED TO
24   REMAIN FREE OF PRISON CUSTODY AND FREE OF THE
25   COMMISSION OF AN OFFENSE RESULTING IN A FELONY
26   CONVICTION FOR FIVE YEARS AFTER HIS RELEASE ON HIS
27   MOST RECENT PRISON COMMITMENT.
28             IT DOES APPEAR THAT THE PEOPLE HAVE
```

1    ESTABLISHED ONE PRISON PRIOR AND THE STRIKE PRIOR.

2         NOW, THE QUESTION I HAVE FOR YOU IS:  ARE YOU

3    ALLEGING AS WELL THAT THIS STRIKE PRIOR, FOR PURPOSES

4    OF SENTENCING, WILL CONSTITUTE A SERIOUS AND VIOLENT

5    FELONY?  IN OTHER WORDS, A NICKEL PRIOR.  BECAUSE I

6    THINK IT DOES.  I DON'T THINK THEY WASH OUT.

7         MS. ROBINSON:  I'LL SUBMIT TO THE COURT, BUT IT

8    CERTAINLY QUALIFIES AS A SERIOUS AND VIOLENT FELONY,

9    AS WELL AS THE CRIMES TO WHICH HE IS CURRENTLY

10   CONVICTED.

11        THE COURT:  WHAT'S YOUR POSITION ON THAT,

12   MR. BENNETT?  DO YOU UNDERSTAND WHAT I'M SAYING?  HE'S

13   GOT THAT ROBBERY FROM '73 THAT THEY ALLEGED, AND I'LL

14   FIND THAT IT'S TRUE THAT THAT CONSTITUTES A STRIKE,

15   AND A PRISON PRIOR HAS BEEN PROVEN AS WELL BY WAY OF

16   A -- IT APPEARS TO BE, A YEAR 2000 STAY IN STATE

17   PRISON.

18        BUT THE QUESTION I HAVE IS THAT WHETHER THAT

19   STRIKE PRIOR CONSTITUTES A SERIOUS AND VIOLENT FELONY

20   FOR PURPOSES OF SENTENCING; A NICKEL PRIOR, IN OTHER

21   WORDS.  SEE WHAT I'M SAYING?  I DON'T THINK THOSE WASH

22   OUT.  I DON'T THINK, I KNOW THEY DON'T WASH OUT.  I

23   KNOW THIS WAS -- OR I BELIEVE THIS WAS A JUVENILE

24   CONVICTION.  I DON'T THINK THAT HAS AN EFFECT ON IT.

25   BUT THAT'S CERTAINLY A QUESTION THAT I HAVE.

26        MY RESEARCH WOULD SEEM TO INDICATE THAT IT'S

27   THERE, BUT NOBODY CALCULATED THAT INTO THEIR EQUATION.

28        MS. ROBINSON:  I'LL SUBMIT THAT TO THE COURT ON

- Lack of training of custody staff in mental health issues.[41]

**Medical Billing**

Many prisons across the country charge inmates for basic medical care as a way to cut costs and discourage prisoners who abuse sick call. The government, however, still has an obligation to provide medical care for prisoners.[42]  One court has expressed the belief that medical billing policies requiring prisoners to pay for care may be unconstitutional.[43]  But most courts have found co-pay and over-the-counter (OTC) policies constitutional as long as prisoners are not deprived of needed care because of their inability to pay.[44]  When a billing policy prevents a prisoner from receiving adequate health care because the prisoner cannot pay, courts will be more likely to conclude that the policy is unconstitutional.[45]

---

[41] Olsen v. Layton Hills Mall, 312 F.3d 1304, 1319-20 (10th Cir. 2002).

[42] Estelle, 429 U.S. 97 (1976); see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.").

[43] See Collins v. Romer 962 F.2d 1508 (10th Cir. 1992).

[44] See Reynolds v. Wagner, 128 F.3d 166 (3rd Cir. 1997) (charging inmates for medical care is not per se unconstitutional; deterrent effect did not violate the Eighth Amendment or Due Process Clause); Gardner v. Wilson, 959 F. Supp. 1224, 1228 (C.D. Cal. 1997); Bihms v. Klevenhagen, 928 F.Supp. 717, 718 (S.D. Tex. 1996) (no constitutional right is implicated by the state seeking compensation for costs of maintaining prisoners); Hudgins v. De Bruyn, 922 F.Supp. 144 (S.D. Ind. 1996); Johnson v. Department of Public Safety & Correctional Servs., 885 F.Supp. 817 (D. Md. 1995) (co-pay system bore rational relationship to legitimate prison goal of efficient use of resources and promoting inmate responsibility, and therefore was not unconstitutional).

[45] See, e.g., Martin v. DeBruyn, 880 F.Supp. 610, 615 (N.D. Ind. 1995) ("[a] prison official violates the Eighth Amendment by refusing to provide [over-the-counter] medicine for a serious medical need only if the inmate lacks sufficient resources to pay for the medicine.  If the inmate can afford the medicine but chooses to apply his resources elsewhere, it is the inmate, and not the prison official, who is indifferent to serious medical needs.").

8

Last updated 11/05

- Failure to follow up on prisoners with known or suspected mental health disorders.[35]
- Failure to provide adequate numbers of qualified mental health staff.[36]
- Housing mentally ill prisoners in segregation or "supermax" units.[37]
- Failure to transfer seriously mentally ill prisoners to more appropriate facilities.[38]
- Improper use of restraints.[39]
- Excessive use of force against mentally ill prisoners.[40]

---

290 F.3d 1175, 1189 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003); Inmates of Occoquan v. Barry, 717 F.Supp. 854, 868 (D.D.C. 1989); Inmates of the Allegheny County Jail v. Pierce, 487 F.Supp. 638, 642, 644 (W.D. Pa. 1980).

[35] Woodward v. Correctional Medical Servs., 368 F.3d 917 (7th Cir. 2004) (failure to respond to signs that prisoner was suicidal); De'Lonta v. Angelone, 330 F.3d 630 (4th Cir. 2003) (failure to treat prisoner's compulsion to self-mutilate); Olsen v. Bloomberg, 339 F.3d 730 (8th Cir. 2003) (failure to take reasonable steps to prevent prisoner suicide); Cavalieri v. Shepard, 321 F.3d 616, 621-22 (7th Cir.), cert. denied, 540 U.S. 1003 (2003) (failure to respond to warnings that prisoner was suicidal); Comstock v. McCrary, 273 F.3d 693 (6th Cir. 2001), cert. denied, 537 U.S. 817(2002); Sanville v. McCaughtrey, 266 F.3d 724, 738 (7th Cir. 2001); Waldrop v. Evans, 871 F.2d 1030, 1036 (11th Cir. 1989); Arnold v. Lewis, 803 F.Supp. 246, 257-58 (D. Ariz. 1992).

[36] Waldrop v. Evans, 871 F.2d 1030, 1036 (11th Cir. 1989) (non-psychiatrist was not qualified to evaluate significance of prisoner's suicidal gesture); Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 (9th Cir. 1988), vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir. 1989); Wellman v. Faulkner, 715 F.2d 269, 272-73 (7th Cir. 1983) ("a psychiatrist is needed to supervise long term maintenance" on psychotropic medication); Ramos v. Lamm, 639 F.2d 559, 577-78 (10th Cir. 1980).

[37] Jones'El v. Berge, 164 F.Supp.2d 1096 (W.D. Wis. 2001); Ruiz v. Johnson, 37 F.Supp.2d 855, 913-15 (S.D. Tex. 1999), rev'd on other grounds, 243 F.3d 941 (5th Cir. 2001), adhered to on remand, 154 F.Supp.2d 975 (S.D. Tex. 2001); Coleman v. Wilson, 912 F.Supp. 1282, 1320-21 (E.D. Cal. 1995); Madrid v. Gomez, 889 F.Supp. 1146, 1265-66 (N.D. Cal. 1995); Casey v. Lewis, 834 F.Supp. 1477, 1549-50 (D. Ariz. 1993); Finney v. Mabry, 534 F.Supp. 1026, 1036-37 (E.D. Ark. 1982); see also Gates v. Cook, 376 F.3d 323, 343 (5th Cir. 2004) (noting evidence that "the isolation and idleness of Death Row combined with the squalor, poor hygiene, temperature, and noise of extremely psychotic prisoners create an environment 'toxic' to the prisoners' mental health").

[38] Morales Feliciano v. Rossello Gonzalez, 13 F.Supp.2d 151, 209, 211 (D.P.R. 1998); Madrid, 889 F.Supp. at 1220; Coleman, 912 F.Supp. at 1309; Arnold v. Lewis, 803 F.Supp. 247, 257 (D. Ariz. 1992).

[39] Wells v. Franzen, 777 F.2d 1258, 1261-62 (7th Cir. 1985); Campbell v. McGruder, 580 F.2d 521, 551 (D.C. Cir. 1978).

[40] Coleman, 912 F.Supp. at 1321-23; Kendrick v. Bland, 541 F.Supp. 21, 25-26 (W.D. Ky. 1981).

7

Last updated 11/05

proven by circumstantial evidence.  For example, it may be inferred from "the very fact that the risk was obvious."[7]  This circumstantial proof may be shown by deterioration in prisoners' health, such as obvious conditions like sharp weight loss.  A prison official cannot "escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist."[8]

Officials' knowledge can also be proven by direct evidence.  For example, prisoners might present sick call requests, medical records, complaints, formal grievances or other records reflecting: the nature of the complaint, the date of the complaint, the individuals to whom the complaint was made, the treatment provided, the adequacy of the treatment, the date the treatment was provided, the medical staff seen, the nature of follow-up care ordered and whether it was carried out, the effects of any delay in obtaining treatment, and any additional information relating to the complaint.

### What is a serious medical need?
The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain."[9] Some factors courts have considered in determining whether a "serious medical need" is at issue are  "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain."[10]  Additionally, courts will be likely to find a "serious medical need" if a condition "has been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity of a doctor's attention."[11]

A serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of

---

[7] Farmer, 511 U.S. at 842.

[8] Id. at 843 n.8.

[9] Estelle v. Gamble, 429 U.S. at 104.

[10] Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003) (internal quotation marks omitted).

[11] Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotation marks, citation omitted).

2

Last updated 11/05

# KNOW YOUR RIGHTS
# MEDICAL, DENTAL AND MENTAL HEALTH CARE

### ACLU National Prison Project

**Important Note:** The law is always evolving.  If you have access to a prison law library, it is a good idea to confirm that the cases and statutes cited below are still good law. The date at the bottom of this page indicates when this information sheet was last updated.

## Medical Care
Prison officials are obligated under the Eighth Amendment to provide prisoners with adequate medical care.[1]  This principle applies regardless of whether the medical care is provided by governmental employees or by private medical staff under contract with the government.[2]

In order to prevail on a constitutional claim of inadequate medical care, prisoners must show that prison officials treated them with "deliberate indifference to serious medical needs."[3]

### What is deliberate indifference?
A prison official demonstrates "deliberate indifference" if he or she recklessly disregards a substantial risk of harm to the prisoner.[4]   This is a higher standard than negligence, and requires that the official *knows of and disregards* an excessive risk of harm to the prisoner.[5] The prison official does not, however, need to know of a specific risk from a specific source.[6]

Proof of prison officials' knowledge of a substantial risk to a prisoner's health can be

---

[1] Estelle v. Gamble, 429 U.S. 97, 103 (1976).

[2] West v. Atkins, 487 U.S. 42, 57-58 (1988); Richardson v. McKnight, 521 U.S. 399 (1997).

[3] Estelle, 429 U.S. at 104.

[4] Farmer v. Brennan, 511 U.S. 825, 836 (1994).

[5] Id. at 837.

[6] Id. at 843; Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998).

1

Last updated 11/05

- Reliance on non-medical factors in making treatment decisions.[24]
- Judgment so egregiously bad that it really isn't medical.[25]

## Dental Care

Dental care of prisoners is governed by the same constitutional standard of deliberate indifference as is medical care.[26]

"Dental care is one of the most important medical needs of inmates."[27]  Dental care that consists of pulling teeth that can be saved is constitutionally inadequate.[28]  Delays in dental care can also violate the Eighth Amendment, particularly if the prisoner is suffering pain in the interim.[29]  Prolonged deprivation of toothpaste can violate the Eighth Amendment.[30]  One court has held that some minimal level of prophylactic dental care is constitutionally required.[31]

---

request to admit the prisoner and take x-rays); Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing changes).

[24] Boswell v. Sherburne County, 849 F.2d 1117, 1123 (8th Cir. 1988) (budgetary restrictions); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (same); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704-05 (11th Cir. 1985) (refusal to provide specialty consultations without a court order); Wilson v. VanNatta, 291 F.Supp.2d 811, 816 (N.D. Ind. 2003) (cost).

[25] Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (treatment "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [plaintiff's] condition"); id. at 655 ("doggedly persist[ing] in a course of treatment known to be ineffective"); Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience" constitutes deliberate indifference); Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991) (evidence that medical staff treated the plaintiff "not as a patient, but as a nuisance").

[26] Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).

[27] Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980); accord Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989).

[28] Chance v. Armstrong, 143 F.3d 698, 700-02 (2nd Cir. 1998); Dean v. Coughlin, 623 F. Supp. 392, 405 (S.D.N.Y. 1985); Heitman v. Gabriel, 524 F. Supp. 622, 627 (W.D. Mo. 1981).

[29] Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004) (six weeks); Canell v. Bradshaw, 840 F. Supp. 1382, 1387, 1393 (D. Or. 1993), aff'd, 97 F.3d 1458 (9th Cir. 1996) (several days); Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984) (three weeks); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003) (fifteen-month delay in providing dentures).

[30] Board v. Farnham, 394 F.3d 469 (7th Cir. 2005).

5

Last updated 11/05

**Mental Health Care**
Mental health care of prisoners is governed by the same constitutional standard of deliberate indifference as is medical care. A "severe" mental illness is one "that has caused significant disruption in an inmate's everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself."[32]

**Elements of an adequate mental health care system**
The Eighth Amendment requires that prison officials provide a system of ready access to adequate mental health care. First, there must be a systematic program for screening and evaluating inmates in order to identify those who require mental health treatment. Second, treatment must entail more than segregation and close supervision of the inmate patients. Third, treatment requires the participation of trained mental health professionals, who must be employed in sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders. Fourth, accurate, complete, and confidential records of the mental health treatment process must be maintained. Fifth, prescription and administration of behavior-altering medications in dangerous amounts, by dangerous methods, or without appropriate supervision and periodic evaluation, is an unacceptable method of treatment. Sixth, a basic program for the identification, treatment and supervision of inmates with suicidal tendencies is a necessary component of any mental health treatment program.[33]

Some examples of actionable harm from inadequate mental health care include:

- Lack of adequate mental health screening on intake.[34]

---

[31] Barnes v. Government of Virgin Islands, 415 F.Supp. 1218, 1235 (D.V.I. 1976).

[32] Tillery v. Owens, 719 F.Supp. 1256, 1286 (W.D. Pa. 1989), aff'd, 907 F.2d 418 (3rd Cir. 1990).

[33] Ruiz v. Estelle, 503 F.Supp. 1265, 1339 (S.D. Tex. 1980) (citations omitted), aff'd in part and rev'd in part on other grounds, 679 F.2d 1115 (5th Cir.), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982); accord Balla v. Idaho State Bd. of Corrections, 595 F.Supp. 1558, 1577 (D. Idaho 1984); Coleman v. Wilson, 912 F.Supp. 1282, 1298 n.10 (E.D. Cal. 1995).

[34] Woodward v. Correctional Medical Servs., 368 F.3d 917 (7th Cir. 2004); Gibson v. County of Washoe,

6

Last updated 11/05

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC 20543-0001

July 25, 2007

Michael Wilkerson
1702193
BKG0706014, T-907
P.O. Box 872
Fresno, CA 93712-0872

RECEIVED

AUG 2 2007

OFFICE OF THE CLERK
SUPREME COURT, U.S.

RE: Wilkerson v. SD, CA

Dear Mr. Wilkerson:

The above-entitled petition for writ of certiorari was postmarked July 17, 2007 and received July 24, 2007. The papers are returned for the following reason(s):

The petition fails to comply with the content requirements of Rule 14. A guide for in forma pauperis petitioners and a copy of the Rules of this Court are enclosed. The guide includes a form petition that may be used.

The appendix to the petition does not contain the following documents required by Rule 14.1(i):

The lower court opinion(s) must be appended.

It is impossible to determine the timeliness of the petition without the lower court opinions.

Please correct and resubmit as soon as possible. Unless the petition is received by this Office in corrected form within 60 days of the date of this letter, the petition will not be filed. Rule 14.5.

A copy of the corrected petition must be served on opposing counsel.

When making the required corrections to a petition, no change to the substance of the petition may be made.

Sincerely,

William K. Suter, Clerk

By:

Erik Fossum
(202) 479-3392

Enclosures

RECEIVED

AUG - 7 2007

OFFICE OF THE CLERK
SUPREME COURT, U.S.

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region ___ Log No. ___ Category ___
2. ___  1. ___

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| (Wilkerson)M | 790727 | | B-13 |

**A. Describe Problem:** When writer was transferred from Corcoran His legal property...thats at less "8 inches high"...was not tranfered with writer 790727...it contains material that is evidence and helps gives writer access to the courts such as appeal numbers...dated materials, addresses and drawn pictures...to be presented as 'evidence. The property officer here Called Corcoran but to success as of this date...I need all my legal work and material to me date.

RECEIVED NOV 12 2006

If you need more space, attach one additional sheet.

**B. Action Requested:** That my property legal work and papers be sent now. If not...than the penatlies...that are set and prescribed for people...that deny people access to the courts be set for "those involved" be set.

Inmate/Parolee Signature: Michael Wilkerson       Date Submitted: RECEIVED NOV 14 2006

**C. INFORMAL LEVEL** (Date Received: Nov. 16, 06)  Partially Granted

Staff Response: RECEIVING AND RELEASE (R&R) HAS NOT RECEIVED ANY PROPERTY FOR THE APPELLANT FROM CSP-COR. THE APPELLANT IS ENCOURAGED TO WRITE R&R AT CSP-COR TO INQUIRE OF THE STATUS OF ANY/ALL PROPERTY MATTERS RELATING TO THE TRANSFER TO SUSP FROM CSP-COR. DELIVERED NOV 10 2006

Staff Signature: ___ LT   DELIVERED JAN 23 2007   Date Returned to Inmate: Nov 27, 06

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Writer is dissatisfied with day of Nov 17, 06 said to be date writer recieved inmate Appeal it was today the 11-30-06 it was recieved and writer has written CSP Cor to inquire no response it is not 8 inch and my property it legal material property

Signature: Michael Wilkerson       Date Submitted: 11-30-06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.

REC'D DEC 06 2006      CDC Appeal Number: ___

REC'D DEC 27 2006

First Level  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 12·11·06 _____ Due Date: 1·24·07

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved: _____ Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO
Criminal Department, Central Division
1100 Van Ness Avenue
Fresno, California 93724-0002
(559) 488-3388

FOR COURT USE ONLY

PLAINTIFF: **THE PEOPLE OF THE STATE OF CALIFORNIA**
DEFENDANT: **Michael Wayne Wilkerson Aka Roy Dean/Roy King/Mike W. Wilkerson/Michael Wayne Wilmerson**

CASE NUMBER: **F05100406-8**

☐ **Amended**
**ORDER FOR COMMITMENT AND DELIVERY TO STATE HOSPITAL**
(Penal Code 1370, Penal Code 1370.01)

HEARING DATE
**July 10, 2006**

Judge: **Gary Orozco**

DEPARTMENT:  TIME:
**95**

Court Clerk: E. Reyes                    Reporter: K. Fries

District Attorney: **N. Lambert**          , Deputy  Counsel: E. Garcia          ☒ Public Defender

Charged with the following violation(s) on (date): 10/31/05-Ct. 1, PC 4501.5, a felony. Defendant also suffered the following prior convictions: On 5/10/02, San Diego Court case No. 159400: PC 261(a)(2); PC 288(a)(c)(2); PC 288(c)(1) 25 counts

A doubt having arisen as to the mental competency of the defendant, on May 17, 2006, the Court ordered criminal proceedings suspended pursuant to Penal Code section 1368 and appointed the following doctors to examine said defendant pursuant to Penal Code section 1369:
    **Doctor(s): Norman Hendricksen And Harold Seymour.**

On June 21, 2006, the Court having received and read the report(s) of the doctor(s), the Court found that the defendant is a mentally incompetent person within the meaning of Penal Code section 1370, and defendant's mental competency is such that (s)he is unable to cooperate with counsel in his/her defense. The matter was referred to the Fresno/Madera Regional Conditional Release Program for report and recommendation.

The report and recommendation of Fresno/Madera Regional Conditional Release Program was read, considered, and adopted by the Court on July 10, 2006.

**IT IS ORDERED THAT:**

Criminal proceedings remain suspended and the defendant is committed to Atascadero State Hospital, Atascadero, California for restoration of competency (Penal Code section 1370). The Director of **Atascadero** State Hospital shall file with this court a written report within 90 days setting forth a report and opinion concerning the mental competency of defendant and his/her ability to understand the nature and purpose of the proceedings pending against defendant, with follow-up reports at six-month intervals thereafter.

The defendant, **Michael Wayne Wilkerson Aka Roy Dean/Roy King/Mike W. Wilkerson/Michael Wayne Wilmerson**, is remanded to the custody of the Sheriff of Fresno County to be delivered into the custody of the Director of **Atascadero** State Hospital, **Atascadero**, California. Upon receipt of a copy of the Certificate of Restoration (Penal Code section 1372) or recommendation for placement on a Murphy Conservatorship (Welfare and Institutions Code section 5008(h)(1)(b)) from the state hospital or treatment facility, the Fresno County Sheriff shall return the defendant to the court without further order of the court.

Pursuant to Penal Code section 1370/ Penal Code section 1370.01, the Medical Director of **Atascadero** State Hospital is authorized to apply medications in a safe and effective manner if needed to regain and maintain competence of the **Maximum Term of Confinement:**
4 years

Time Credits:   281                                          actual days

Date:  7/10/06                                    _____
                                                Judge of the Superior Court

**CERTIFICATION**                                      **RECEIVED**

I hereby certify that the foregoing is a correct copy of the original on file in my office.

Seal

AUG 10 2006

Dated: 7/24/06          Clerk, by _____          H LRMD   Deputy

TCR-48  R08-05          ORDER FOR COMMITMENT AND DELIVERY TO STATE HOSPITAL          Penal Code 1370

Wilkerson
T90727

5/9/2008

Mr. Wilkerson,

I am still waiting for your volumes I and II, of your medical records.  I do have volume III.  I can schedule you to view this file or you can wait for the others to arrive. Thank you for your patience.

Sincerely,

D. Turner
Health Records Staff

Exhibit 8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF FRESNO

THE PEOPLE OF THE STATE OF CALIFORNIA )
)
)  Superior Court Case Nos. F05100406-8
vs. )  CDC No. T90727
)  Hospital Case No.  SVPP-111000460-6
Michael Wayne Wilkerson  (T90727) )
)  **CERTIFICATION OF MENTAL COMPETENCY**
_____ )  **SECTION 1372 PENAL CODE**

TO: The Above-Entitled Court:

The Medical Director of Department of Mental Health (DMH), Salinas Valley Psychiatric Program Hospital (SVPP) hereby renders his report concerning the above-named patient who was committed by your court order under Section 1370 of the Penal Code.

This defendant has been under observation since his admission to this hospital.  He has been examined physically, psychiatrically, psychologically, and by a formal evaluation procedure designed to provide data about his competence.  The documentation of his stay at SVPP for restoration to competency is attached herewith.

His attending physician and staff, and the Medical Director of the hospital, agree that he is now able to understand his charges and the nature of the proceedings being taken against him; he is now fully able to cooperate rationally with his attorney in his defense against the pending charges.

In accordance with Section 1372 of the Penal Code, I hereby certify that said defendant is now competent to stand trial.

Pursuant to Section 1372(e) (Statute of 1981, Chapter 611) of the Penal Code, it is my opinion that this defendant probably **does not** need placement in a psychiatric facility in order to maintain competence to stand trial and can remain in county jail awaiting a conclusion to his Restoration of Competency program.

Pursuant to Section 1372(a)(2) of the Penal Code, no more than ten (10) calendar days following receipt of this Certification, the defendant should be returned to your jurisdiction.  Retention at this hospital beyond ten (10) days will financially obligate your county for hospital care.

Dated:  February 26,2006

JAMES HARRISON, MD
Acting Medical Director
SALINAS VALLEY PSYCHIATRIC PROGRAM
California Department of Mental Health

Attachments
c:  CDCR/SVSP, DMH

(13)

TE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

CEPTION CENTER PHYSICAL EXAMINATION

| TUTION | RJD RC | | DATE APR 30 2003 |

| IENT'S BUILD | HEIGHT 5'8" | WEIGHT 798# | DEFORMITIES |
| SLENDER ☐ AVERAGE ☐ HEAVY ☐ OBESE | | | ☐ NO ☐ YES (EXPLAIN) |
| PERATURE 96² | PULSE | RESPIRATION | BP 140/104 | Latile HBP |

N MARKS, MOLES, TATTOOS, NARCOTIC SCARS (EXPLAIN)

• forehead scars

• L arm tattoo

| ROLOGY | HEMO | PCV | WBC |
| INE | | X-RAY | |
| | SUG | ALB | MICROS | |

| ITANT VISION | | NEAR VISION | | HEARING | | AID USED |
| UNCORRECTED | CORRECTED | UNCORRECTED | CORRECTED | | | |
| GHT 20/ | RIGHT 20/ | ☑ GLASSES | RIGHT J/ | RIGHT J/ | RIGHT WV /15 | ☐ YES |
| FT 20/ | LEFT 20/ | ☐ CONTACT LENSES | LEFT J/ | LEFT J/ | LEFT WV /15 | ☐ NO |
| TH 20/ | BOTH 20/ | | BOTH J/ | BOTH J/ | | |

|  | NORMAL | ABNOR-MAL | DESCRIBE ABNORMALITIES |
| GENERAL APPEARANCE | ☐ | ☐ | |
| HEAD AND NECK | ☐ | ☐ | |
| EYES | ☐ | ☐ | |
| E.N.T. | ☐ | ☐ | |
| CHEST/LUNGS | ☐ | ☐ | |
| HEART | ☐ | ☐ | |
| ABDOMEN-HERNIA | ☐ | ☐ | |
| GENITO-URINARY | ☐ | ☐ | |
| ORTHOPEDICS (EXTREMITIES, SPINE, MUSC. SKEL) | ☐ | ☐ | |
| LYMPH NODES | ☐ | ☐ | |
| NEUROLOGICAL | ☐ | ☐ | |
| RECTAL/PELVIC | ☐ | ☐ | NE |
| PSYCHIATRIC (MENTAL STATUS) | ☐ | ☐ | |
| PSYCHIATRIC CONSULT INDICATED | ☐ NO | ☐ YES | |
| OTHER | | | |

ORK RESTRICTIONS

| TREATMENT/INVESTIGATION: | IMPRESSION Athletes feet |
| ECESSARY BPV | HBP |
| Umbilical hernia Refer to Surgery | |
| ELECTIVE Refer to ♀ | |

| COMMENTS | NAME Wilkerson, Michael |
| | NUMBER T90727 |
| | BIRTHDATE/AGE 9/27/55  48 |
| PHYSICIAN | DATE ADMITTED APR 30 2003 |

CDC 196B (9/92)                    IF MORE SPACE IS NEEDED USE REVERSE SIDE

Exhibit "B3" B3

NOTE: USE BLACK INK ONLY

## A. RECEPTION CENTER DENTAL SCREENING

⊠ Previously Filled Surfaces    ▤ Edentulous    [Z] Missing    ▦ Impacted    [C] Crown    ▭ Pontic

RIGHT

1 2 3 4 5 6 7 8 | 9 10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 | 24 23 22 21 20 19 18 17

LEFT

**EXISTING DENTURE**
☐ F ☐ P
UPPER

**EXISTING DENTURE**
☐ F ☐ P
LOWER

| CIRCLE ONE | | | |
|---|---|---|---|
| Calculus: | Light | Moderate | Severe |
| Gingivitis: | Light | Moderate | Severe |
| Periodontitis: | Light | Moderate | Severe |
| Caries: | Mild | Moderate | Severe |

## B. DENTAL CLASSIFICATION

Use (X)

[ 1 ]    [ 2 ]    [ 3 ]    [ 4 ]    [ 5 ]

## C. SPECIAL NOTES

OPER ___    PERIO ___
SURG ___    PROS ___
SCAL ___    ENDO ___

PRINT OR STAMP DENTIST'S NAME: BENJAMIN S. ANTKOWIAK DDS
CHIEF DENTAL OFFICER

DENTIST'S SIGNATURE

COMPLETION DATE (MM/DD/YY)
APR 30 2003

INSTITUTION

CDC NUMBER, NAME ( LAST, FIRST, MI), AND DATE OF BIRTH

T90727
Wilkerson, Michael
9/27/55

**DENTAL SCREENING**
**RECEPTION CENTER**
**CDC 237A (Rev 1/00)**

STATE OF CALIFORNIA      DEPARTMENT OF CORRECTIONS

ATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
ECEPTION CENTER PHYSICAL EXAMINATION

| STITUTION | | DATE |
|---|---|---|
| RJD RC | | APR 30 2003 |

TIENT'S BUILD

[ ] SLENDER  [ ] AVERAGE  [ ] HEAVY  [ ] OBESE    HEIGHT 5'8"    WEIGHT 198#    DEFORMITIES [ ] NO  [ ] YES (EXPLAIN)

IMPERATURE 96²    PULSE    RESPIRATION    BP 140/104    Latile HBP

IIN MARKS, MOLES, TATTOOS, NARCOTIC SCARS (EXPLAIN)
• forehead scars
• L arm tatooe

| EROLOGY | HEMO | PCV | WBC |
|---|---|---|---|

| RINE! | | X-RAY |
|---|---|---|
| G        SUG        ALB        MICROS | | |

| ISTANT VISION | | NEAR VISION | | HEARING | AID USED |
|---|---|---|---|---|---|
| UNCORRECTED | CORRECTED | UNCORRECTED | CORRECTED | RIGHT WV /15 | [ ] YES |
| IGHT 20/ | RIGHT 20/ [✓] GLASSES | RIGHT J/ | RIGHT J/ | LEFT WV /15 | [ ] NO |
| EFT 20/ | LEFT 20/ [ ] CONTACT LENSES | LEFT J/ | LEFT J/ | | |
| OTH 20/ | BOTH 20/ | BOTH J/ | BOTH J/ | | |

| | NORMAL | ABNOR-MAL | DESCRIBE ABNORMALITIES |
|---|---|---|---|
| 1. GENERAL APPEARANCE | [ ] | [ ] | |
| 2. HEAD AND NECK | [ ] | [ ] | |
| 3. EYES | [ ] | [ ] | |
| 4. E.N.T. | [ ] | [ ] | |
| 5. CHEST/LUNGS | [ ] | [ ] | |
| 6. HEART | [ ] | [ ] | |
| 7. ABDOMEN-HERNIA | [ ] | [ ] | |
| 8. GENITO-URINARY | [ ] | [ ] | |
| 9. ORTHOPEDICS (EXTREMITIES, SPINE, MUSC. SKEL) | [ ] | [ ] | |
| 10. LYMPH NODES | [ ] | [ ] | |
| 11. NEUROLOGICAL | [ ] | [ ] | |
| 12. RECTAL/PELVIC | [ ] | [ ] | NE |
| 13. PSYCHIATRIC (MENTAL STATUS) | [ ] | [ ] | |
| 14. PSYCHIATRIC CONSULT INDICATED | [ ] NO | [ ] YES | |
| 15. OTHER | | | |

WORK RESTRICTIONS

IMPRESSION    Athletes feet
HBP

TREATMENT/INVESTIGATION!

NECESSARY    BPL
Umbilical hernia Refer to Surgery

ELECTIVE    Refer to ∅

COMMENTS

| NAME | Wilkerson, Michael |
|---|---|
| NUMBER | T90727 |
| BIRTHDATE/AGE | 9/27/55   48 |
| DATE ADMITTED | APR 30 2003 |

PHYSICIAN

CDC 196B (8/82)        IF MORE SPACE IS NEEDED USE REVERSE SIDE

Ms. Rebecca Jones,

I sincerely hope these few...& choice few words... reaches you in the best of health and happiness

Myself, contenting with my conditions my condition petitions... Yes my conditions petition me to do certain things... if I don't identify sufficiently certain occurrences... That have transpired in my life... that may tend to make... what I prefer to you or what you convey for me... be regarded as not credible evidence... or in the light most favorable to the prosecution.

I now would like to present a set of questions to you... that are legitiment... for me to ask.

① Are you affiliated with any serorities? If so... going against... some your members that broke the rules of society "as well as you serority" that you may be affilitsated with would that tend to stand in your way of representing me?

② I would like to know... if you worked for that agency that assisted before P.M.B. was created that handled "appeals"... before your agency was in existance?

③ I have a case that is very much a emotional case if you let other tell it. (after dealing with the emotional side... can you the attorney deal with facts... that can't be denied!

④ Did you call the F.B.I. about the Crown Point Drive incident? If yes what was the result?

⑤ Will you have a problem going against leading city counsel? o D.A. police ... sheriff ... as well as some guards? Will you sway!... if

your "audited"... you are going come against people who are desparated... who don't care the less about... destroying you.

A lots has came out... but... thanks to God there's so much more that will come out! to confound those that think they know everything every day so much is coming to mind... of "past" events. I need to see you... under the condition I suggested... as soon as possible... I can't take the chance of what I say may be... shared with some one else. if you choose to make the decision to continue with my case.

Please send me some writing paper... and call (858) 272 0676 and (619) 575 0664 to reach "Brett Hictman" the (858) number is his work and the other number is his home... please tell him for me... that I need him to send me some money as soon as possible... and tell him I said thanks.

Thank you to for your time and consideration... What's your chance of finding a "publisher"... for me? One other thing if the jury foreman was arrest at location or given a citation... for weed... and he says its like mind is that a mistrial? Because that's what happen! Get his name and you will find he was given the citation on Orange and Estrella He went to "drug diversion" for the citation!! He has a "twin Brother"... I was not able to place him at the time of the trial! I told the judge after the trial... I thought he was a police I now know he had said at the time of the citation he was in the "academy"! that's least of the reason I need to explay to you for a appeal... I also want to get you to send me the address of F.B.I.        Thank You

Exhibit "A 31" A 31

### NOTE: USE BLACK INK ONLY

## A. RECEPTION CENTER DENTAL SCREENING

⊠ Previously Filled Surfaces    ▤ Edentulous    Z Missing    ▦ Impacted    C Crown    ▭ Pontic

RIGHT
1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17
LEFT

**EXISTING DENTURE**
☐ F   ☐ P
UPPER

**EXISTING DENTURE**
☐ F   ☐ P
LOWER

| CIRCLE ONE | | | |
|---|---|---|---|
| Calculus: | Light | Moderate | Severe |
| Gingivitis: | Light | Moderate | Severe |
| Periodontitis: | Light | Moderate | Severe |
| Caries: | Mild | Moderate | Severe |

## B. DENTAL CLASSIFICATION

Use (X)

| 1 | 2 | 3 | 4 | 5 |

## C. SPECIAL NOTES

OPER ___    PERIO ___
SURG ___    PROS ___
SCAL ___    ENDO ___

PRINT OR STAMP DENTIST'S NAME BENJAMIN S. ANTHONY, DDS
CHIEF DENTAL OFFICER

DENTIST'S SIGNATURE

COMPLETION DATE (MM/DD/YY)
APR 3 0 2003

INSTITUTION

CDC NUMBER, NAME ( LAST, FIRST, MI), AND DATE OF BIRTH

T90727
Wilkerson, Michael
9/27/55

**DENTAL SCREENING**
**RECEPTION CENTER**
**CDC 237A (Rev 1/00)**

STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS

# MEDICAL HISTORY

Institution

Name: *Wilkerson, Michael D.*    No. *T90727*    Date: **APR 30 2003**

Age: *48*    Birthdate: *9/27/55*    Race: *B*    Birthplace: *Bakersfield Ca*

Usual Occupation: *Carpenter*    Marital Status: S (M) W D    No. of Children: *2*

Previous CDC No.

**A.** Describe any illnesses, injuries, conditions, or disabilities requiring medical attention.

*Memory deficit, diag. ≈ '95*

*athletes foot*

**B.** What physical or mental illnesses, injuries, or conditions (including those in military service) have you had? Name condition, give year, name of hospital, and complications or resulting disability.

*T11 / T12 smashd*

*tailbone problem*    *No Hep A, B, C.*

**C.** Have you any:

Allergies: *N.O.N.E.*

Medicine Sensitivities: *PCN*

Present Medications: *NONE    med for back,    med for high B.P.*

**D.** Have you used:

Narcotics

Drugs

Alcohol to excess: (Yes) No

How long?  Narc

Name of drug or narcotic:

*Cocaine*

Drugs: *Sevmos*    Alc.

**E.** State age and health of immediate family. If deceased, give age at time of death and cause.

Father: *Cancer '85*

Mother: *Cancer '95*

Brothers: *2*

Sisters: *3*

Wife or Husband: *0*

Children: *2*

Physician's Comments:

Physician's Signature

*INSTRUCTIONS:* Fill out sections A thru E and encircle appropriate items in sections F thru V (back of page). The physician will review the encircled items and make appropriate entries in space at bottom of each section.

*(See Reverse Side)*

CDC-106-A (9/83)

6-30-08.

To whom this may concern. I
inmate Wilkerson T-90727 re-
turned from the out side ——
hospitail on 6-29-08 because of
my high blood pressure which
lead to a blood transfusion. My
brain is now in pain. plus P.B.S.P
was notified of my situation with
my hand injury which is left with
little feeling because of the
numbness. ~~I will have not get~~
~~xxxxxx xxx xxxxxxxx xxx~~
~~xxxxxxxx xxx xx xxxxxx~~  ⌣

Michael W, Wilkerson T-90727

## REASONS FOR GRANTING THE PETITION

"child molester" his place was burned. I can place George Steven at the time of his death...and his so called step son who Killed him. He was the task master! They all were in the "gay gang" There are at less 5 police, 3 Sheriff and two police that I was present when they died...other people were there as well...officer Heartless was one of San Diego Calif he wore "white T Shirt" the night he died... the reason I Know I was "did the same way"...as before ... he was left in a "back seat" of a car... with plastic over him... I was in a "fross" state "not able to move"... I was in-jected with some Kind of drug... where the car was parked... ▨▨ was a old man Black man Killed..."they said he had a heart attack" but if he didn't was induced" the man was murdered That's why the petition sould be granted because the plot and plan against society..far outweight the alledge crime that has become a threat to society. Plaintiff will submitt to a "lie detector test" and "drugging"so long as it done by "supervision of your court! no one else!...even in this town "the Diamond Boys" robbed and the same thing...Ted Richard, had most of the money and jewels...he has involve ment as strong as any of these people...I will be more than willing to give your court all it needs to expose these people all I ask is you see if you can make sure my children are taken care of if possible and I can get you tapes C,Ds and micro films, I want immunity for a FBI officer "some past FBI officers" Sheriff officers Police officers... California Department of Corrections officers, all the alledge victims, in the case that has me incarserated and the wittnesses, for both

**REASONS FOR GRANTING THE PETITION**

The "Horton Plaza"... a shopper center in downtown SanDiego California... was done the same way store by store. quest what was the result... the "national gaurd" was called out to pretect the shopping area... then George Stevenson the City Coulsel Leader Later determine it was n't a group of Kids... because they could n't Fine any one to support the alledgers story. The man in Sam Goode record store... retracted his story "he first told."... because "Ericka had perform oral sex on me" in the store... I had been ambushed by the taskmaster of the of group wielding a gun to my head first... then after the forced holding of me... I was enjected with a subtance in a needle. there was a numerous "then" sexually assaults taking place that "was n't sexual assault" at "but a performance" to make the "store owner" retract their orginal story! Pearl Belgrove alledge victim did the same thing in a store... because I could not remember what happen... the store owner "balked at" the extortion a result... she was taken to her house or juvenile store owner was later found dead... this all happen in "Hortan Plaza" downtown SanDiego California.

George Steven Later made public admitting that when the "crime world" asks him to do something "who can" turn them down... and he is a "preacher." The first Psychiatric I went to see... when I felt something was wrong... told me knew "what was wrong with me"... "I would n't understand" then but would later... he agreed to "help me" with meditation... I went to see him at his office he "was killed" said he ran off with money "as all way"... and

It is plan to see   in each of the murders the murderer was always set free by psychiatric help, criminal minded doctors, wrongly accessing the insanity defense.

Because psychi doctors are straining, twisting and deleting imformation plaintiff has either wrote on paper and gave them or conveyed to them. Plaintiff decisions of what he says is not being regarded and so the psychi doctors are beiing contary to court Law. The court noted, for exsample that the decision maker is for all Legal purpose the decision of the patient himself [79 F.3d, at 832, n 120.] When ever I talk to a California department of Correction and rehap psychiatric Doctor, it becomes a much broader License... To embellish what Im saying here and now. It has become extremily difficult to have even a rudimentary watch with what they are seeking to say. Let alone contain what they are saying about "what I write to them" or the truth about what has happen or done to me. So I refuse to speak to them.. At all.! because they all contenue to Lie except for a few, but those they Keep me a way fraid to support the prior doctor story.! and when first two doctors eleleted actaul writings off

It is plain to see in each of these murders the murder was always set free by psychiatric help the murder had doctor accessing the insanity defense plaintiff in this case, seek exactly the opposite

Because psychi doctors are straining, twisting and deleting imformation, plaintiff has has either wrote on paper and gave them. or conveyed to them. Take for exsample Many times Ms Olden would actaully have sex right in front of appellant with the assalutant steve. In the Van Camper, the same one that chased around where they found the two surviors, that I believe was killed at 1007 9th St. Imperial Beach California. The same day we Ericka Garcia, LaKiah.O, and Pearl Belgrove was there before the Same day those two gays were killed

Now that Im am able to think more clearer... I remember a youth that said" I should be "speaking of them" way up there. They were speaking of a point system. it's backed up gays or those who choose to side with gay rights, the youth are being forced into that right Large number of the murders in San Diego are gay enforced.

does so at an equal status, [Level] the established face value

Paradox  A seemingly contradictory statement that may none the Less be true

The U.S. Supreme Court has said that the a plot and Saeme against the society U.S. far out weigh the substantial crime,because it stand that these individual will go on to

acting with excessive haste and impulse
Early in devopment or maturity esp in mental aptitude and and urge
causing to form an opinion of l        1 before hand.
Precondition  A prerequisite to condition, train or accustom in advance... the criminality wrongfulness of his conduct
stopping and hasting the ability to conform his conduct to the requirements of Law

A person is not responsible for criminal wrongfulness of his conduct if at the time of such conduct as a result of mental and emotional defect. The defect could had effected any lay man. This defect is brought about by the alledged victums and some witnesses in plaintiffs case here at had [Which means that it is District Attorney Misconduct to put on perjured testimony and attain a conviction from perjured testimony] See Pearl Belgrove had had prior sexaul relation ship with plaintiff...that was un consenting...without plaintiffs agreement or desire to... all of these rape scenes were, glazed with murder and robbery!  See when at these motels, some clerks other than which were brought out in Court...were Killed at the motels, and other businesses, which were black mailed, that they would file suit, for, the rape of Ericka

State of paresis [paralysis]

Counsel failed to explore, investigate and put on as a defense... Organic Brain Syndrome. with alcoholic defence... with a male battered Syndrome... due to post traumatic syndrome, a state of a condition that lasted even after plaintiff was had not drunk... because plaintiff had been forced medicated... in the county gail and donoran State prison... in the San Diego Area. One of the men used as a hit man against plaintiff was a serial child rapper, and was in jail for a multitude multi amount of those chargers, with had been convicted on another prior time of the same thing... he also recieved 10,000 on his account right after the incident... any one who agreed to come forward and complain about abuse was forced medicated then was "gang beat" first, by this man and others! the man recived a ten year deal... plead bargain. for the separate second time deal and conviction of a minor... Judge Tomsom was his gudge in san Diego jail county in California, Also Gudge Tomson, had plaintiff summon to court from prison... on a "Mrster minor" I was attacked as soon as I got there! forced medicated by prisoners, with the cohesion of A deputy Sheriff, a East Coast Gang member. which had pertisapated in a number of assaluts, and murders in an out of jails. as well as rapes and drugging, and of the most importante is a blood tran fusion tranfusion that that that transfer blood from one vessel body to another where the due deteriorating and decaying blood cell, Leave the sick persons body to a large degree and attack the healthy body. The UN outlawed it in other country. It allso is being use in this petition to offer as evidence, as evidence that could allso effect juries and prosecutors decisions making
     A state of stoppage or crippling of activity

① Thus the prosecution must prove that defendant
② charged with resisting arrest know he or she is
③ resisting a Law enforcement officer (People v. Lopez
④ (1986) 188 Cal. App. 3d 592, 599); that a defendant charge
⑤ rd with making a false affidavit know the affidavit
⑥ was false when made (People v. Calban (1978) 65 Cal.
⑦ App. 3d 578, 584-855); and that a defendant charged
⑧ possessing a machine gun know that the weapon
⑨ is a machine gun (Staples v. United States (1994)
⑩ 511 U.S. 600, 619.)
⑪                    In Staples, the Supreme Court noted
⑫ that "The contention that an injury can amount to a
⑬ crime only when inflicted by intention is no provincial
⑭ notion. It is as universal and persistent in mature system
⑮ of Law as belief in freedom of the human will and a
⑯ consequent ability and duty of the normal individual
⑰ to choose between good and evil."
⑱ [Id. at p.605, quoting Morissette v. United States (1952) 342 US
⑲ 246, 250.]

⑳ That is because it is simply unfair to subject a person to a
㉑ Lengthy prison term without proving he knew the facts
㉒ that rendered his conduct illegal.

          The Ninth Circuit has affirmed the federal constitu
㉓
㉔ tional basis for requiring proof of mens rea beyond a
㉕ reasonable doubt. (Keating v. Hood (9th Cir. 1999) 191 F.3d
㉖ 1053, 1061, overruled on another ground by Payton v. Woodford
㉗ (9th Cir. Oct. 20, 2003) 2003 U.S. App. Lexis 21112 [Keating II]
㉘ Instruction that relieves the state of the burden of
㉙ proving men rea beyond a reasonable doubt contradicts
㉚ the presumption of innocence. violating due process."

1. It's plain to see that when Steve Wilkerson also
2. Known by "AKA Michael Wilkerson" actions are
3. "Symbolic Speech" in this case. He has managed
4. to get out of murder after murder. By attacking
5. me. and using hypnosis along with drugs and
6. alcohol on me "against my will". and the "ramming"
7. and "battering" the top of head into a wall.. while
8. attacking me. I would like to put on the record
9. that being raped was my worst fear I know.
10. since I was a child.. until my present age!
11. I had such a fear... I would lose exsistance about
12. my surroundings... if they told me "4 better smile"
13. are they would kill all my family... "I could only
14. hear them"... and have no sense of sight! I would
15. feel so unsafe!  This was done to me when I
16. "could not run" after they kill someone! I have
17. been electricfied with electric currents, with tazers and
18. burnts.. and had illegal operations to cover bullet
19. wounds! and my body is "spreaded with all sort of
20. wounds" that they tried to cover up! which add to
21. "Human right" violations, not just eighth admend
22. -ments violations, but a "human right" indifference
23. I actaully lost my memory... from suffering the
24. likes... if it wasn't for certain officers, I would have
25. been hurt, even more... every since certain murde
26. in and out of prison... I have been tortured, by
27. gourds and people they use! I can prove it with
28. the dead bodys and something I can give to you

hearing of plaintiff case in California because
of the bias way plaintiff rights have not been
protected... the federally protected rights
violations are of a nature that cannot be
eliminated by "defense" against single criminal
prosecution.      Plaintiff put forth that he is
entitled to federal court equitable relief against
prosecution in State Court where injuries
which he face was "not" solely that incidental
to every criminal proceeding... because they
were never brought Lawfully and in good faith.

           First the jury foreman was someone
that got arrest citation... meaning he never
went to aail but got a citation to appear at
court... when he did... he had alledged plaintiff
gave him the marijuana... which he got the
arrest or citation for plus he was in the
same east coast gang... Ericka Carcia
was in, Pearle Belgrove, was in and every
single witness against me in that trial as
well as the witnesses I called but my
attorney refuse to investigate, put on in trial
           Like a person Named Diaz...that
had help commite a murder with that Lead-
-er of that east coast gang... I made a plea
bargain in 1995 and sent to prison because
he said he got the marijuana from plaint

**STATEMENT OF THE CASE**

Plaintiff was arrested for charges against two underage girls that had unconsenting sex with plaintiff... in order to coverup murder robberys and grant theft. Atthe stores and motels where ever he stayed they robbed the place. which all are not include in this writ, but will be in the brief as soon as the court appoints potetitioner a attorney. Most of things plaintiff is able to recall is not what plaintiff remembered during trial Plaintiff had numberious brain operation while in San Diego California gail even before this court case...and while in two different prisons at Less. I woote home Land surcurite, and told them some events I dont Know if they believed me or not, but I can Lead to film untouched of the incident

## Evidentiary Hearing

When Should the Court order an Evidentiary Hearing?

From the beginning, the petitioner and his attorney, if one has been appointed, must determine whether to request an evidentiary hearing. If no evidentiary hearing is to be held, disregard this section and begin with Sec. , infra

The federal district court is required to hold an evidentiary hearing only if there are disputed questions of fact and the petitioner did not receive a fair and fair evidentiary hearing in the state court on the same facts at issue in the federal proceeding and the state trial or appellate court made written finding of fact, or its legal conclusions involved finding of fact. Those findings or determinations are presumed to be correct.[78] However, if petitioner can show one of the following situations, the presumption that the state court finding of facts was correct is overcome and the petitioner should receive an evidentiary hearing in the Federal District Court

(1) The merits of the factual dispute were not resolved in the state court hearing;

(2) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing;

(3) the material facts were not adequately developed at the state court hearing

(4) the state court lacked jurisdiction of the subject matter or over the person;

(5) The state court, in deprivation of his [an indigent applicants constitutional right, failed to appoint counsel to represent him in the state court proceeding

(6) The applicant did not receive a full, fair and adequate hearing in the state court;

(7) The applicant was otherwise denied due process of law in the state court proceeding;

(8) that part of the record of the state Court proceeding in which the determination of such factual issue was made

1 over turned ...  when ... the ... find also one of these ... murders
2 the murderer was always set free by psychiatric
3 help...n Insanity defense...plaintiff in this case
4 seek exactly the opposite

5
6 twisting and ignore plaintiff decisions and that in it                     Because psychi doctors one straining
7 self is contrary to court laws. The court dusted, for
8 example, that the decisions of a duly appointed surgon
9 decision maker is for all legal purposes the decision
10 of the patient himself." 79 F.3d, at -832, n. 120;
11                                                                  when ever I talk to a California
12 department of correction and Rehap. psychiatric doc
13 it become a much broader license...to embellish what
14 I'm saying to them..and extremely difficult to have
15 even a rudimentary watch with what they are trying
16 to say...let alone contain what they are saying about
17 me. they have me listed as some sort of mentally
18 disable person that need a staff assistance...I
19 can talk for myself and comprehend very good.
20 I even had a 12. point grade level "now"...the
21 captain said the psychiatric department said
22 I had a 8.pioint grade level and there's nothing
23 he can do about that! at my commetuy hearring
24 I don't even talk to those people psychiatric department
25 I don't get in trouble ...so what they are saying
26 is too vague and lead to "too much power" being
27 given to psychiatric experts... like it did and resulted
28 in United States V. Brawner, 471 F.2d 969 (1972,) and
29 Durham experiment was abandoned. I ask this ,
30 court to abandone their (psychiatric department in

That particular person... it was needed to, ensure due process... in plaintiffs and others in simular and like situations.

Terry Bolin

That there would be created a irrepairable damage, if plaintiff would first exshaust his adminstrative remedys' first. Utilizing the establisted process.

Infringement of plaintiffs (I) first admendment's' rights... that CDCR has systemat -icly ignored, twisted and covered up plaintiffs so right to acess to the courts. By denying him the right see and have copys' of his full intire medical and health file's'

It also in hibits plaintiffs

first achenendments rights.

See over and over plaintiff has wrote appeals concerning... unapproved and illegal blood transfus, to no avail! they have not been ansrewed in a timily fashion and the Litigation to prove it is been un legally apprehendd See [exhibit][    ] this blood transfusion are not done with out a blood pur dialysis machine... so nothing is deleted going or coming from one body to the next! bad blood cells attack and flow to the good body. Did in a certain way... the ill body ends up with only a small portion of the sick ness if it's done enough... a person needing a new heart, liver or kidney... can live until they get one! Even even the the two reproducive polits on a woman vergina can be replaced sing this blood tranfustion! and this is why gay are to bying body-parts! more than other people! Many is believe that after... that insane guy raped them I might as well be a gay! But what they don't know

This censorry is not limited to the elaboration of constitutional principles: we must also in proper case review the evidence to make certain that those principles have been constitutionally applied

And this is such a case particularly since the question is one of alleged trespass across the line between speech un conditionally guaranteed and speech which may Legitimately be regulated

In case where that line must be drawn the rule is that this court examines for it yourself the statements in issue and the circumstances under which they were made, to see; whether they are of a character which the principles of the first Amendment as adopted by the due process clause of the Fourteenth Amendment, protect This court must "make an independent examination of the whole record". So as to assure it self that the judgment does not constitute a forbidden intrusion on the field of free expression.

TAYLOR, 484 U.S. ~~BROKE~~ AT 417. ALTHOUGH DECLINING TO DRAFT A COMPREHENSIVE SET OF STANDARDS TO GUIDE THE EXPERIENCE OF DISCRETION IN EVERY POSSIBLE CASE. THE COURT ENUMERATED SEVERAL FACTORS THAT THE TRIAL JUDGE SHOULD WEIGH AGAINST THE DEFENDANTS RIGHT TO COMPULSORY PROCESS. Id. AT 414-16.

THESE INCLUDE: THE INTEGRITY OF THE ADVERSARY PROCESS; THE INTEGRITY IN THE FAIR AND EFFICIENT ADMINISTRATION OF JUSTICE; THE POTENTIAL PREJUDICE TO THE TRUTH-DETERMINING FUNCTION OF THE TRIAL PROCESS; THE NATURE OF THE EXPLANATION GIVEN FOR THE PARTY'S FAILURE SEASONABLY TO COMPLY WITH DISCOVERY REQUEST; WILLFULLNESS OF THE CONVICTION; THE RELATIVE SIMPLICITY OF COMPLIANCE; AND WHEATHER OR NOT SOME UNFAIR TACTICAL ADVANTAGE WAS SOUGHT. Id. AT 414-15.

GOVERNMENT OFFICIALS DURING INVESTIGATION OF CRIME ACTED WILLFULLY AND DELIBERATELY BY EXCLUDING AND NOT GATHERING EXCULPATORY EVIDENCE, MOTIVATED BY DESIRE TO OBTAIN A TACTICAL ADVANTAGE, OR SIMPLY PRODUCT OF MERE INADVERTENCE OR GROSS NEGLIGENCE. (TAYLOR, 484 U.S. AT 415)

DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION PROVIDES THAT "NO PERSON SHALL... BE DEPRIVED OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF THE LAW." U.S. CONST. AMED. V.

THE FOURTEENTH AMENDMENT IMPOSES THE IDENTICAL LIMIT ON THE STATES. U.S. CONST. AMEND. XIV.

\* GOVERNMENT STATUTORY DISCLOSURE DUTIES, IN ADDITION TO THE CONSTITUTIONAL DUTIES TO DISCLOSE EXCULPATORY INFORMATION UNDER BRADY V. MARYLAND, RULE 16, 26.2, AND 12.i OF THE FEDERAL RULES OF CRIMINAL PROCEDURE REQUIRE THE FEDERAL GOVERNMENT TO DISCLOSE OTHER IMFORMATION UPON DEFENDANTS REQUEST.

RULE 16 ALLOWS THE DEFENDANT TO DISCOVER FIVE TYPES OF INFORMATION BEFOR TRIAL: 1) DEFENDANTS OWN STATEMENTS; 2) DEFENDANTS PRIOR CRIMINAL RECORD; 3) CERTAIN DOUCUMENTS AND OBJECTS; 4) CERTAIN EXAMINATION AND TEST REPORTS; 5) THE CONTENT AND BASES OF EXPERT TESTIMONY UPON WHICH THE GOVERAMENT INTENDS TO RELY.

THIS PETITION IS BASED ON PETITIONERS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, THE FUNDAMENTAL RIGHT TO PRESENT A DEFENSE UNDER THE 14 AMENDMENT.

WHEN RELEVANT EVIDENCE IS UNIMPEACHABLE CONCERNING THE CHARGED
OFFENSE BECAUSE OF PROSECUTOR FAILURE TO DISCLOSURE THIS VIOLATES THE
DEFENDANTS RIGHT TO FUNDAMENTALLY FAIR TRIAL BASED ON THE PROPOSITION THAT
THE DEFENDANT IS ENTITLED TO A FAIR TRIAL ~~BASED ON THE PROPOSITION~~
~~IS THE DEFENDANT~~ AND AN INTELLIGENT DEFENSE IN LIGHT OF ALL
RELEVANT AND REASONABLY ACCESSABLE INFORMATION.

    HILL V. SUPERIOR COURT, (1974) SUPRA, 10 CAL. 3d ATP. 816

    PITCHESS V. SUPERIOR COURT (1974) 11 C. 3d 531, 535.


       MATTERS OF THIS KIND HAVE BEEN BEFORE THE SUPREME COURT OF
THIS STATE NUMEROUS TIMES IN RECENT YEARS, AND ITS WELL SETTLED THAT
ABSENT SOME GOUERNMENT REQUIREMENT THAT INFORMATION BE KEPT CONFIDENTIAL
FOR THE PURPOSE OF EFFECTIVE LAW ENFORCEMENT, THE STATE HAS NO INTREST
IN DENYING THE ACCUSED ACCESS TO ALL EVIDENCE THAT CAN THROW LIGHT ON
ISSUES IN THE CASE, AND IN PARTICULAR IT HAS NO INTREST IN CONVICTING
ON TESTIMONY OF WITNESSES WHO HAVE NOT BEEN AS RIGOROUSLY CROSS-EXAMINED
AND AS THOROUGHLY IMPEACHED AS THE EVIDENCE PERMITS.

    NORTEN (1959) 173 CAL. APP. 2d 133, 136


      TO DENY FLATLY ANY RIGHT OF PRODUCTION ON GROUND THAT AN
IMBALANCE WOULD BE CREATED BETWEEN THE ADVANTAGES OF PROSECUTION AND
DEFENSE WOULD BE TO LOSE SIGHT OF THE TRUE PURPOSE OF A CRIMINAL
TRIAL, THE ASCERTAINMENT OF THE FACTS

Where prospective prosecution witness was eyewitness to felony charged and apparently the only eye witness other than the alleged perpetrators and where corroboration of his report f crime was not strong, so that his credibility was likely to be critical to the outcome of the trial, there was good cause for inspection by accused of felony conviction record, if any of such witness

West's Ann Evid Code § 788   10. Criminal Law
627.6 (6)

112 California Reporter   10 Cal.3d 812

WHEN RELEVANT EVIDENCE IS UNIMPEACHABLE CONCERNING THE CHARGED OFFENSE BECAUSE OF PROSECUTOR FAILURE TO DISCLOSURE THIS VIOLATES THE DEFENDANTS RIGHT TO FUNDAMENTALLY FAIR TRIAL BASED ON ~~THE~~ PROPOSITION THAT THE DEFENDANT IS ENTITLED TO A FAIR TRIAL ~~BASED ON THE PROPOSITION THAT THE DEFENDANT~~ AND AN INTELLIGENT DEFENSE IN LIGHT OF ALL RELEVANT AND ~~REASONABLE~~ ACCESSABLE INFORMATION.

HILL V. SUPERIOR COURT, (1974) SUPRA, 10 CAL.3d ATP. 816

PITCHESS V. SUPERIOR COURT (1974) 11 C.3d 531, 535.

MATTERS OF THIS KIND HAVE BEEN BEFORE THE SUPREME COURT OF THIS STATE NUMEROUS TIMES IN RECENT YEARS, AND ITS WELL SETTLED THAT ABSENT SOME GOVERNMENT REQUIREMENT THAT INFORMATION BE KEPT CONFIDENTIAL FOR THE PURPOSE OF EFFECTIVE LAW ENFORCEMENT, THE STATE HAS NO INTREST IN DENYING THE ACCUSED ACCESS TO ALL EVIDENCE THAT CAN THROW LIGHT ON ISSUES IN THE CASE, AND IN PARTICULAR IT HAS NO INTREST IN CONVICTING ON TESTIMONY OF WITNESSES WHO HAVE NOT BEEN AS RIGOROUSLY CROSS-EXAMINED AND AS THOROUGHLY IMPEACHED AS THE EVIDENCE PERMITS.

NORTEN (1959) 173 CAL. APP. 2d 133, 136

TO DENY FLATLY ANY RIGHT OF PRODUCTION ON GROUND THAT AN IMBALANCE WOULD BE CREATED BETWEEN THE ADVANTAGES OF PROSECUTION AND DEFENSE WOULD BE TO LOSE SIGHT OF THE TRUE PURPOSE OF A CRIMINAL TRIAL, THE ASCERTAINMENT OF THE FACTS

Where prospective prosecution witness was eyewitness to felony charged and apparently the only eye witness other than the alleged perpetrators and where corroboration of his report of crime was not strong, so that his credibility was likely to be critical to the outcome of the trial, there was good cause for inspection by accused of felony conviction record, if any of such witness

West's Ann Evid Code § 788    10. Criminal Law
⊂⊃ 627.6 (6

112 California Reporter    10 Cal. 3d 812

WHEN RELEVANT EVIDENCE IS UNIMPEACHABLE CONCERNING THE CHARGED OFFENSE BECAUSE OF PROSECUTOR FAILURE TO DISCLOSURE THIS VIOLATES THE DEFENDANTS RIGHT TO FUNDAMENTALLY FAIR TRIAL BASED ON THE PROPOSITION THAT THE DEFENDANT IS ENTITLED TO A FAIR TRIAL ~~BASED ON THE PROPOSITION THAT THE DEFENDANT~~ AND AN INTELLIGENT DEFENSE IN LIGHT OF ALL RELEVANT AND REASONABLY ACCESSABLE INFORMATION.

HILL V. SUPERIOR COURT, (1974) SUPRA, 10 CAL. 3d ATP. 816

PITCHESS V. SUPERIOR COURT (1974) 11 C. 3d 531, 535.

MATTERS OF THIS KIND HAVE BEEN BEFORE THE SUPREME COURT OF THIS STATE NUMEROUS TIMES IN RECENT YEARS, AND ITS WELL SETTLED THAT ABSENT SOME GOVERNMENT REQUIREMENT THAT INFORMATION BE KEPT CONFIDENTIAL FOR THE PURPOSE OF EFFECTIVE LAW ENFORCEMENT, THE STATE HAS NO INTREST IN DENYING THE ACCUSED ACCESS TO ALL EVIDENCE THAT CAN THROW LIGHT ON ISSUES IN THE CASE, AND IN PARTICULAR IT HAS NO INTREST IN CONVICTING ON TESTIMONY OF WITNESSES WHO HAVE NOT BEEN AS RIGOROUSLY CROSS-EXAMINED AND AS THOROUGHLY IMPEACHED AS THE EVIDENCE PERMITS.

NORTEN (1959) 173 CAL. APP. 2d 133, 136

TO DENY FLATLY ANY RIGHT OF PRODUCTION ON GROUND THAT AN IMBALANCE WOULD BE CREATED BETWEEN THE ADVANTAGES OF PROSECUTION AND DEFENSE WOULD BE TO LOSE SIGHT OF THE TRUE PURPOSE OF A CRIMINAL TRIAL, THE ASCERTAINMENT OF THE FACTS

Where prospective prosecution witness was eye witness
to felony charged and apparently the only eye witness other
than the alleged perpetrators and where corroboration of his report
f crime was not strong, so that his credibility was likely to be critical
& the outcome of the trial, there was good cause for inspection by
accused of felony conviction record, if any of such witness

West's Ann Evid Code § 788    10. Criminal Law
627.6 (6

112 California Reporter  10 Cal. 3d 812

WHEN RELEVANT EVIDENCE IS UNIMPEACHABLE CONCERNING THE CHARGED OFFENSE BECAUSE OF PROSECUTOR FAILURE TO DISCLOSURE THIS VIOLATES THE DEFENDANTS RIGHT TO FUNDAMENTALLY FAIR TRIAL BASED ON THE PROPOSITION THAT THE DEFENDANT IS ENTITLED TO A FAIR TRIAL ~~BASED ON THE PROPOSITION THAT THE DEFENDANT~~ AND AN INTELLIGENT DEFENSE IN LIGHT OF ALL RELEVANT AND REASONABLE ACCESSABLE INFORMATION.

    HILL V. SUPERIOR COURT, (1974) SUPRA, 10 CAL.3d ATP. 816

    PITCHESS V. SUPERIOR COURT (1974) 11 C.3d 531, 535.

        MATTERS OF THIS KIND HAVE BEEN BEFORE THE SUPREME COURT OF THIS STATE NUMEROUS TIMES IN RECENT YEARS, AND ITS WELL SETTLED THAT ABSENT SOME GOVERNMENT REQUIREMENT THAT INFORMATION BE KEPT CONFIDENTIAL FOR THE PURPOSE OF EFFECTIVE LAW ENFORCEMENT, THE STATE HAS NO INTREST IN DENYING THE ACCUSED ACCESS TO ALL EVIDENCE THAT CAN THROW LIGHT ON ISSUES IN THE CASE, AND IN PARTICULAR IT HAS NO INTREST IN CONVICTING ON TESTIMONY OF WITNESSES WHO HAVE NOT BEEN AS RIGOROUSLY CROSS-EXAMINED AND AS THOROUGHLY IMPEACHED AS THE EVIDENCE PERMITS.

    NORTEN (1959) 173 CAL. APP. 2d 133, 136

        TO DENY FLATLY ANY RIGHT OF PRODUCTION ON GROUND THAT AN IMBALANCE WOULD BE CREATED BETWEEN THE ADVANTAGES OF PROSECUTION AND DEFENSE WOULD BE TO LOSE SIGHT OF THE TRUE PURPOSE OF A CRIMINAL TRIAL, THE ASCERTAINMENT OF THE FACTS

0

Case 2:06-cv-00057-WGH-RLC Document 1 Filed 07/03/2008 Page 135 of 157

Where prosecution witness was sole witness to felony charged and apparently the only eye witness other than the alleged perpetrators and where corroboration of his report of crime was not strong, so that his credibility was likely to be critical to the outcome of the trial, there was good cause for inspection by accused of felony conviction record, if any of such witness

West's Ann Evid Code § 788    10. Criminal Law
627.6 (6)

112 Califoronia Reporter   10 Cal. 3d 812

The court by banishing federal due process right not to be convicted without proof of mens rea out weighs any possible policy concern of protecting this limited class of minors from from sexual contact with adult.

The court did not consider the policy concern are different, a defendant's federal federal due process right not to be convicted without proof of mens rea out weighs any possible policy concern of protecting this limited class of minors from inappropriate sexual contact with adults

through people who can bring it to the court and I can show you how to track the people down right from your court on computer. I'm not trained in Law...and I get very uncomfortable to write about these issues. I ask only for a immunity agreement for the people I call and their family...so there is no motive to Lie.

It must also be mentioned that California Department of Corrections and Rehab has lost my Legal paper material over and over please see Exhibit "C" then the actions I've started in writs and Certiorari "they can start"...themselfs with falsified court actions...with what they call peace makers! but are really manipulators and con artists.

I ask this court to consider plaintiffs present and future potential hard ship may be considered...by the department of Correction here in California and Rehab. Losing plaintiff material Legal Evidence...and give plaintiff whatever adjustment and safe gaurds it might deem reasonable in these situations of "compelling" examples of unfairness.

I also ask this court if the allegations of being shot...in a Sheriffs car "were the Sheriff died and had his body moved"...and set up another crime scene "is deemed true" in a Level of certainty demonstrated by sufficient evidence...to support plaintiff had been shot while going to trial...plaintiff case set aside

the motels please believe me... I will take
a lie detector and there's a 99 percent
I can get the tapes to most of these
incidents.        Even out of state...this aint
no black or white thing as I had first
thought        It's about trying to take over
the country with gangs...even the mexican
s "corrupt ones" the gangs have took part
in taking property and body parts. Like
I said I know who got them. Even out of
state thats how the companys were took
over.        What they watched done to me
brought terror to the people who seen it.
One particular thing it allways said "you
better run. I don't care if they threaten
to shoot me...and when they shoot me. I
would "not run" even when they beat me in
the head with bats. They would always
use a victum and I would stay with the
victum because I told them I wouldn't
Leave them... I would say if anything
happen to you they will have to get both
of us. I've been burned, electrified to near
electrocution...as a form of torture...both
in jail and out on the streets. All ways that
one guy was around... I'm not going to keep
go though I could...for the sake of time

in this class...beyond your...court and...in a evidentiary hearing go by a neutral psychiatric expert from your court... with the open door to all I've said to you through letters... and record! If he or they say that I am not crazy then lets go from there. I am not a idiot or lunatic... abuse with the help of corrupt psychiatrist... and their aids was how that man and his gang was able to attack me! they never should had took him off meds... and sould had never had him around me! after any event. Not that I can't defend myself. But they the doctors kept medicating plaintiff and not the attacker. Second the immunity agreement... would in "some cases" deny other plaintiff from equal protection of the law. Because some wittnesses had not had the access to this immunity agreement at the time of their arrest and trial... so some plaintiff that are called notes and given this agreed immunity. would be denied the same agreement... because they were arrested... and convicted... than the same crime that these wittnesses were never caught for... but recieved recieved immunity for. The purpose for these people given immunity was to obtain to truth testimony.

① I would like to end this about the doctors until
② Im called to court in a evidentry hearing
③ to present more evidence on this issue.
④ of doctors   Please view every exhibit
⑤ to see that and get a good idea of my
⑥ Situation be aware it's no way these events
⑦ Could had occurred. just one way, they had
⑧ to be people teaming together.! even though

⑨ I might describe only certain events Like for
⑩ example Exhibit [A]  Social Security
⑪ Administration Print out from: Ms Karen Kelly
   addressed; at 560 E Hoover Ave, Crescent City
California 95531.  Phone (707) (465-5943)
Fax (707) 465-5415

children being killed trying to ran and get help! When these incidents took place what other reason could be? Other than CDCR doctors have a vested interest in what plaintiff is seeking to perfen... they are hiding "the written details" because they "own money interests" in some of the places plaintiff wrote about... just like other "corrupt" CDCR workers.

California Role does "not" allow it to prohibit words or some expressions and naither conduct of appealing their fraud statements... so long as the man is respectful

Many Psychiatric criteria right now look only at diagnosising people without depressive disorder, those who within the last two months suffered the loss of someone they love. But disregard the many people have given their life to help save mine. To me it's just as loved one died. Because they sought to help. these people are not open for discussion to a "CDCR doctor" & will talk to the court and nothing less. I may feel grief after remembering any American citizen, that has help me. especially those who have "given their life" they were not gay either!...

When the amount of defect defense were abolished for defendant in this case. The court did not take adequate account of the incapacitating effects of the mental defitic plaintiff was experencing. Some mental defective defendants like defendant may be said to have intended to do what they did that their technical guilt can be established

the defendant and others in simular and like situations none the less have been so severly disturbed im the situation of the alledge circumstances of the krime, that they were unable to appreciate the significance of their actions... I wrote the California Supreme Court in a form of Writ of Habeas Corpus ~ statting that.. I had membery deficit from being hit in the head, tortured, with klectiric and etc. they said because I did not have proof of this disability.... my petition was denied. As time went on and on I have started to remember more and more murders of all sart of walks of life, law inforcement "all" branches... I know of some that collected evidence which wont be a topic for California Department of Correction to hear or see. It will be solely for the District Court to see and hear. But back to the defendant not be able to appreciate the significance of his actions. Many times Ms Olden would actually have sex right in front of appellant with the assalutant steve.... Once inside of the "Van camper" that was capable of driving around.. not the camper that Mark lived in... that had no driving ability. The Van Camper was one that steve sold dope and was killing people in... and transporting the dead bodys in There were two surveyor that got killed at that address, a twenty two (22) rifle, a camera with long lens and a few feet stand to stand an there were additional belongings that belong to those guys.

slowed me down. All the while they stole and Robbed the stores, The head of City Council said he called out the national Gaurd. Then he change that no yourth had be involved after I had been beat, drugged and made to seem gay... I had lost the conscience of what had happen to me.

This exhibit to the jury show they no way were afraid, or had been drinking like changed their story to, and the reason for story.

Also there was another Michael Wilkerson his real name not a AKA, they got him by first having an approved non consenoul. Drugged him and then deleted all the money he had in his accout

I don't need to tell you they were underage youths, and that they disappeared or who they were. do I. This evidence show how long these youths have been doing this and at what "young age" they started to pertisapate in this type of fraud. Entropping and conforming a mentally disabled person into "sexaul acts" by first

Wilkerson also seeks having filed a complaint against the department of Correction of California and the San Diego California jail for human rights violations as well as additional civil and judicial Fed violations. Wilkerson believes that such questions are entirely proper because they enable him to decide which officers to depose and that they are thus included within Rule 26.(b)(1) as reasonably calculated to lead to the discovery of admissible evidence. Take for exsample: First, what happens when appellant lacked resource to do adequate discover there was intentionally interfering with treatment once prescribed. There was failure to follow medical orders for postraumatic syndrom. Once again if plaintiff attorney Estelle v. Gamble 429 U.S. at 105 would had persued and investigated/on put on in trial and sentencing Exhibit [A] A Social Security administration printout That was issued by Karen Kelley dated April 1 2008 to plaintiff Michael Wilkerson is a showing of Plaintiff recieved supplemental security income There out it be referred as (SSI) for the disabled. Alleding that beginning July of 1998 and endding in June of 2001 The time reference is incorrect you the court do the math See exhibit [7]

In and about 1999 into 2000 O Shea Gackson (AKA Ice Cube) that was a receiptent of a Large amount of money. The money was transferred from account..Which was said to be spent from some admirer. On Ice Cubes music. It was done through ⌐Sam Goode⌐ Music store or center. In "San Diego California" and On the corner of near. the court house and on Broadway.    The money was transfer to his account... is very "probative" because the persons who tranferred the account... and who were there... was involved in this case... and is mentioned through out this case... and some even have testified through-out this case. white athe that other they have never knew plaintiff before this trial... With exhibit ⌐1 which proves plaintiff was receiptent of Social Security in the time that years and time of 1999 and 2000 It also go to show the truth of the matter...that money belong to U.S. Government. The Owner which was suffering from mental defect of the kind.

Guilty verdict results in a decision that was based on an unreasonable derimination of facts, in light of the evidence presented in the State proceeding.

Had the trial gudge, trial Attorney, or sentencing Attorney and finally the Appellant attorney, investigated prior exculpatory Evidence See Exhibit "A" Social Security Adminstration "Print out" From

Ms Karen Kelly
560 E Hoover Ave
Crescent City, Calif 95531
Phone (707) 465-5943
Fax (707) 465-5415
Office Hours 900 am - 400 pm

It Plainly states that Their computer records do no show the "exact" date plaintiffs number was issued nor do those records show what office recieved plaintiffs application for a number. Imagine that?

it goes on to say that supplemental Security income, which "will be referred to as "SSI" in this writ" from here out was issued starting out beginning July of 1998 and ending at June of 2001. As of this date plaintiff remembers where he recieved his social Security card, the exact office plaintiffs necieved plaintiffs application for a number. He also knows who deleted the office, the card was recieved from, the true date it was issued

It was deleted to cover up a murder that happen at social Security Office

There is a down town Social Security administration representative that was killed and the crime scene was changed, and a innocent person was either blame or took a plea bargain because they had no way of proof of otherwise.

Because the way State has allowed evidence to be either strained, twisted or            which plaintiff has either wrote on paper and gave them or conveyed to them. Plaintiff desire at this present time to "with hold" the names and of victums and those involved...until their is a evidentiary Hearing...So that those solicting false evidence will be caught.

Plus California Department of Correct and Rehab. "In part" and the Department sheriff department of San Diego California... has in the past... been used by constant practice... Letting their Union members Know before there is a investigation... and would therefore put any witnesses that's incarserated in a greater threat of violence and danger... and would also put a sufficent amount of denial of Due process.. plaintiff has asked and offered immunity in this case for thousands a great number of police, sheriff, and California CDCR. So that the departments of the individaul depart--ments will be sanitized...where no one will ever be able to intimidate a defense witness in this case not to testify... the court may require the D.A. to grant the witness immunity or the court can grant an acquittal to the defendant. United States v. Morrison 535 F.2d 223 (3d Cir. 1976)

also plaintiff and lawyers and appeal lawyer fail to raise male battered syndrome... and child batter-ed syndrome... and plaintiff has additional scars on plaintiffs body... that was not accessed on the record. But even to psychiatric "so called experts", that lean their expertise to their special enterest... By deleting the 20 or so written in pencil and ink describe by plaintiff of the events, that plaintiff now perfers to the court... it was the same thang with the judge and attorneys... that sought no compre hessive grasp of what was being said!

in court and to psychiatist    finally after a series of attempts putting on th record, by speaking... of certain events to the Judge and Attorneys and psychiatric "so called experts" there still remains a determinreative question wheather Lawyers gudges, psychiatrists, and prison official breached ethical duties in stances.  Plaintiff voiced that children youths were being use In a sexaul exploitive role to rape him and others, is it a ethical duty, that if refused to do Law enforcement recept against the Law. and does it with hold evidence... and de prive plaintiff of access to the courts? if so it's nature of first admenment rights qualifying for heightened judicial protection in this case  It is also asserted that this category includes those fundamental liberties that are implicit in the concept of "ordered Liberty" such that neither Liberty nor justice would exist, if they were sacrificed.... The Kind that are "deeply rooted in this Nations history and tradition." Wilkerson case now plainly enough reckonizes "illegal conduct" is not always immunized whenever it occurs in a home invasion setting! aimed at the defendant... and Leaves plaintiff unconscious of some sexaul acts, and not conscious of others after the initial break in and other sexaul acts before ... the now charg conviction.

Please look at exhibits... and you can see the only way I am able to write this writ is with the aid of the "State Habeas Corpus procedure: A manuals For California Prisoners which I have sent you a copy. in this writ, so you will Know... Why I've made it this far with this writ. I'm not train in the Law and do need a Lawyer to protect my interest as far as the Law would require.

The district Attorney sought to avoid trial... that he Knew had no way of winning... and to surpress evidence... and Limitation of a witness that Left those involved in a Liability suit. Liable for what had occurred. He had a reason to make plaint -iff insane! when he's not insane. Plaintiff was developementally "disabled at the time of certai events".. because of Human rights violations of being battered, shocked, drugged, and all the thing and offences, plaintiff has wrote you in the Letters I sent you and all contents of this writ. Also there was a time they gave me a blood tranfustion with a mentally retarded or developemental disabled person that Left me disabled "developementally impaired. in a imposition of insanity. vulnerable to the attack of people younger than I. and Plaintiff Lacked substantial capacity to appreciate the wror fulness of his conduct. because they torture pla before. they engaged in sex with plaintiff. An of irresponsible... plaintiffs use of Logic and fr to solve those problems were "not" explored!

And it was deleted to show Ms Ryan was a past conserator of the Defendant and appellant. Ms. Ryan knew of Plaintiffs memory deficit. Ms. Ryan also had a name change    Judge Hayse says on page 1774, sentence 17 thru    I dont believe for one second that you are suddenly having these rerelations and that Bottom line I think you would manipulate this case to stall your sentencing until next January if you thought that would be effective.    But they the Lawyer, the DA and the Judge never investigated to see if plaintiff was recieveing SSI and why? If they did they would had found that plaintiff could had proved a marder with the person that brought Erick a garcia and Lakiah Olden to the Newton Street address... also he could had proved that when Pearl Belgrove said she ran away... on whatever day. Pearl Belgrove had per$isapate in anal sex with the Steve. AKA Michael Wilkerson so had... Lakiah Olden I honestly believe it's to make them forget what had happen... what was done. Pearl Belgrove was a pertiscipant in the murder around the corner of Newton, That's why she couldn't be home as she said she did. She also was at the El Camino motel, when

It is plan to see in each of these murders
the murderer was always set free by psychiatric help
a doctor assessing the insanity defense... plaintiff
in this case seek "exactly" the opposite!

Because psychi doctors are
straining, twisting and deleting information, plaintiff
has either wrote on paper and gave them... or conveyed
to them... plaintiff decisions of what he says is not
being regarded... and so the psychi doctors are being
contary to court Law. The court noted, for ex sample
hat the decision maker is for all Legal purposes the
the decision of the patient himself "79 F. 3d at 832, n 120;
Whenever I talk to a California
department of Correction and re hap. psychiatric Doc
it becomes a much broader License... [to embellish]
what I'm saying here and now! It has become extremily
difficult to have even a rudimentary "watch" with what
they are trying to say! Let alone contain what they are
saying about what I write to them! So I refuse to speak
to them at all... because they all contenue to Lie, to
support the prior doctor story! and the first two
Doctors deleted actoul writing of children being Killed
trying to run and get help when these incidents took
place... what reason could it be? other than CDCR
Doctors have a "vested interest" in what plaintiff is
seeking to perfer. they are hiding the cwitten details
because they "own money interests" in some of the places
places plaintiff wrote about. Just like other CDCR work

Page ①

California role does not allow it to prohibit words or some
1  expression, and neither expressive conduct critical of its
2
3  misdiagnosing.
                        Psychiatric criteria right now excludes
4
5  from diagnosis with depressive disorder, those who
6  within the "Last two months suffered the Loss" of
7  Someone they Love. But disregard the many people
8  who have "been in my Life" that died "trying to help
9  me". I don't care, if I Know them or not! It's "just as"
10 a Love one died! Because they saught to help! and
11  it's not open for discussion...to a CDCR doctor, any
12  more"... I will talk to the court...and court appointed
13  doctors.
14
                        "I may feel grief after remembering"
15  any American citizen, that has help me...especially
16  those who have "given their life". Some had been treated
17  "so bad" they would had died...than Live! They were
18  not gay!... I would like to end this and be called
19  to court in a evidentry hearing to present my
20  evidence.  Please view every exhibit so you may get
21  a idea of my situation. and be aware it's "no one way"
22  these events have occurred! even though I might
23  describe only "certain events". I have "some how" Lost
24  a document. but I can have different people! Fax it
25  to your court. Please enclude all the, letters I wrote
26 to you "with this writ" and I believe, with my teeth grinde
27 down to enemel and bullet wounds, I've made my cas
28 to start...a court hearing.

Page ②

Plaintiffs Lawyer failed to explore, investigate and then put on in trial...the record of plaintiffs "Social Security income record...therefore failed to seek a motion to compel the court for discovery of the social security mental health record.

It's farther offed that had plaintiff Lawyer investigated...the documents retrieved and substain from the Social Security department...would had open a whole new area for the defence.... See plaintiff had told his attorney that he had been hypnotized and beat and drugged at the social
2 security department, plaintiff even wrote these
3 allegations down in notes...and even tried to get
4 the judge to read..to try and get a comprehensive
5 grasp of appellants version and facts of his case
6 no one understood! Plaintiff has since contacted
17 the social security...see Exhibit [A ] that show
18 that no one knows "who" or "where" and "when"
19 plaintiff got that social security card...but
20 "plaintiff" That is to escape "a Law suit" now you
21 see why I must have a immunity agreement
22 to all withesses...nothing they can have done can
23 be brought up against them for "truthful testimoni"
24 See at that office. some one was killed and com-
25 mandeared by the killer. the body was taken
26 out side and made to look like some one else
27 did the killing. This brings into question a Evidentior
28 Hearing...where plaintiff will be required to be presen

Page ③

7. Ground 2 or Ground **2**   (if applicable):

That the fact finding procedure employed by the State Court was not adequate to afford a "full" and fair hearing and that material facts were not adequately developed at the State court hearing.

a. Supporting facts:

While at the San Diego Jail plaintiff had illegal operations on plaintiff to cover up a wound illegally recieved that was covered up! and a plastic surgeon can access plaintiffs body and tell if this is true! plaintiff asks that this be done in a evidentiary hearing. Plaintiff asking this court accept jurisdiction over this case Because it has been covered up, more than one prison Plaintiff ask this court require the respondents to answer the allegations in This Petition and hold such evidentary hearing as this court may deem necessary or appropiate and issue an "order" that This Court will grant a Writ of Habeas Corpus unless the State holds a new trial within a specified time. Because no way did plaintiff recieve a fare and impartail trial with in the condition and more! It is also alledge plaintiff will not get a fair hearing if plaintiff wans to be heard in San Diego County. and people may not want to bring evidence to that county! you can hold the hearing Here if you want.

b. Supporting bases, rules, or other authority:

United States V. Browner, 471 F 2d 969 (1972) that rule proved that Durham V. United States, 214 F. 2d 862 1954 to be too vague and Led to too much power being given psychiatric experts As a result in United State V. Browner, 471 F2d 969 (1972) the Durham experiment was abandoned as plaintiff asks the court to do with doctor's options in this case

RECEIVED
NOV 2 0 2007
OFFICE OF THE CLERK
SUPREME COURT, U.S.

# Proof Of Service By Mail

I, Michael Wilkerson, declare that I am 18 years of age and a party to the attached here in cause of action, that I reside at Mule Creek State Prison in the County of Ione, California, 95640

My mailing address is Mule Creek State Prison, P.O. Box 409060, Ione California, 95640

On 11/12/2007 I delivered to prison officials for mailing, at the above address, the attached: Letter for in Support of "seek to file a Extraordinary writ... to get "the record, certification" of the "Lower Court opinion's" of California Supreme Court, and the habeas corpus proceedings opinion's" relating to those court case's"

I have within the last month wrote the California Supreme Court and recieved a response letter directing "petitioner" to write to the California Archives, which I followed your "or "seek to follow "your request" to get the Lower Court opinions, as your court requested me of and the direction of "California Supreme Court" on how I can get those records, "not" even a answer was ever sent, I wrote more than twice... so I am now asking, if I may mail a request to "your court clerk" to mail from the clerks Office, to show proof of Service So I can preceed within "a Lotted" time, if petitioner gets no answer... with a request that goes through your "court" So I can file a writ for Certiorari, with additional imformation

MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO

—

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



☐ SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000

—

☐ LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570

## Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

October 17, 2007

Michael Wilkerson # T-90727
Mule Creek State Prison
P.O. Box 409099
Ione, Ca  95640

Re:    **S130349 / Michael Wilkerson requesting copy of petiton**

Dear Mr. Wilkerson:

I received your letter requesting a copy of the Petition for Review you filed on January 4, 2005.  Please be advised that the file is now in our State Archives.  The California State Archives is located at **1020 "O" Street, Sacramento, California 95814.  (916) 653-2246 or (916) 653-7363.** When contacting them please give them this information **List 46, Box 67** which will assist them locating your files.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By:  Robert R. Toy, Deputy Clerk

Enclosure

# INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE WILKERSON, T90727                    Date: December 11, 2006
Current Housing: ~~B/13~~

From: **INMATE APPEALS OFFICE**

Re: APPEAL LOG NUMBER:  SVSP-B-06-03785

ASSIGNED STAFF REVIEWER:  **COR APPEALS**
APPEAL ISSUE:  PROPERTY

## DUE DATE:  01/24/2007

Inmate WILKERSON, this acts as a notice to you that your appeal has been sent
to the above staff for FIRST level response.  If you have any questions, contact the
above staff member. If dissatisfied, you have 15 days from the receipt of the
response to forward your appeal for SECOND level review.

T. VARIZ, CC-II / E. MEDINA CC-II
Appeals Coordinators
Salinas Valley State Prison

*1:06 pm*

*AB Property Room*

*559-992-8800   CO EVANS*

*DID NOT FIND ANY PROPERTY*

(5)